**CHALOS O'CONNOR LLP**
Eugene J. O'Connor
Timothy Semenoro
Robert O'Connor
366 Main Street
Port Washington, New York 11050
Tel.   (516) 767-3600
Fax.   (516) 767-3605

# 12 CV 8892

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------- X
IN THE MATTER OF THE COMPLAINT OF
CONTI 11. CONTAINER SCHIFFAHRTS-GMBH
& CO. KG MS "MSC FLAMINIA,"
AS OWNER, AND NSB NIEDERELBE
SCHIFFAHRTSGESELLSCHAFT MBH & CO. KG,
AS OPERATOR, OF THE MSC FLAMINIA FOR
EXONERATION FROM OR LIMITATION OF
LIABILITY

                               Plaintiffs.

-------------------------------------------------------------- X

**Civil Action No.:**

**COMPLAINT**
**FOR EXONERATION**
**FROM OR LIMITATION**
**OF LIABILITY**

RECEIVED
DEC 0 7 2012
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiffs CONTI 11. CONTAINER SCHIFFAHRTS-GMBH & CO. KG MS "MSC

FLAMINIA" (hereinafter "Conti"), as owner, and NSB NIEDERELBE

SCHIFFAHRTSGESELLSCHAFT MBH & CO. KG (hereinafter "NSB"), as operator, of the

vessel MSC FLAMINIA, by their attorneys, CHALOS O'CONNOR LLP, complain for

exoneration from or limitation of liability pursuant to the Limitation Act, 46 U.S.C. §§ 30501, *et*

*seq.*, and allege upon information and belief as follows:

1) This is a case involving a federal statute and subject to the jurisdiction of this court pursuant

   to 28 U.S.C. § 1331, and this case is also an admiralty and maritime jurisdiction within the

   meaning of 28 U.S.C. § 1333, Rule 9(h) of the Federal Rules of Civil Procedure, and Rule F

   of the Supplemental Rules for Certain Admiralty and Maritime Claims.

2) Venue is proper pursuant to Rule F(9) of the Supplemental Rules for Certain Admiralty and Maritime Claims because legal actions have been commenced against Plaintiffs Conti and NSB with respect to the casualty in the United States District Court for the Southern District of New York.

3) At all relevant times mentioned herein, Plaintiff Conti was a corporation organized under the laws of Germany, and the registered owner of the MSC FLAMINIA.

4) At all relevant times mentioned herein, Plaintiff NSB was a corporation organized under the laws of Germany, and the operator, responsible among other things for the manning, stores, maintenance, and repairs of the MSC FLAMINIA.

5) The MSC FLAMINIA, Daewoo Hull Number 4073, IMO Number 9225615, is a German-flagged, self-propelled seagoing container vessel with gross tonnage of 75,590 including space for the use of seamen.

6) Prior to and at all relevant times mentioned herein, Plaintiffs Conti and NSB exercised due diligence to make and maintain the MSC FLAMINIA in all respects seaworthy, and the vessel was, in fact, tight, staunch, and strong, and fully and properly manned, equipped, and supplied, and in all respects fit and proper for the service in which the vessel was engaged.

7) On or about July 14, 2012, the MSC FLAMINIA was underway from Charleston, United States, to Antwerp, Belgium in accordance with directions issued by its time charterer, MSC MEDITERRANEAN SHIPPING COMPANY, S.A. (hereinafter "MSC").

8) On or about July 14, 2012, a fire and explosion occurred in the MSC FLAMINIA's number 4 cargo hold and, after attempting to fight the fire and explosion, the crew abandoned the vessel in the Atlantic Ocean approximately 1,000 nautical miles from nearest land (hereinafter the "casualty").

9) Several crew members were injured and, as of October 7, 2012, three crew members died from injuries sustained during the casualty.

10) Despite the firefighting efforts of the officers and crew, the MSC FLAMINIA suffered significant damage and many containers, particularly those in or on the numbers 4, 5, and 6 cargo holds, were severely damaged and/or lost during the casualty.

11) On or about July 17, 2012, salvors reached the MSC FLAMINIA.

12) On or about September 9, 2012, the vessel arrived and was re-delivered by salvors to Plaintiffs Conti and NSB at Wilhelmshaven, Germany, where cargo is being discharged and the cause of the fire and explosions is being investigated.

13) At present, two civil actions have been filed against Plaintiffs Conti and NSB, and against the MSC FLAMINIA, in the United States District Court for the Southern District of New York:

   a) *Trouw Nutrition USA, LLC v. M/V "MSC FLAMINIA", her engines, boilers, etc. in rem; Conti 11 Container Schiffahrts-GmbH & Co. KG MS "MSC FLAMINIA"; Mediterranean Shipping Compoany S.A.; NSB Niederelbe Schiffahrts Gesellschaft mbh & Co. KG and Sea Shipping Line, in personam* - Civil Number 12 Civ. 6349 (TPG) seeking damages to cargo in the amount of USD 13,068.00; and

   b) *Eagle Paper International, Inc. v. M/V "MSC FLAMINIA", her engines, boilers, etc. in rem, Conti 11 Container Schiffahrts-GmbH & Co. KG MS "MSC FLAMINIA", Mediterranean Shipping Company S.A., and NSB Niederelbe Schiffahrts Gesellshaft mbh & Co. KG* – Civil Number 12 Civ. 6904 (TPG) seeking damages to cargo in the amount of USD 45,000.00.

14) Both of these legal actions were recently consolidated before the Honorable Judge Griesa as related.

15) The casualty, and the losses, damages, injuries, and destruction resulting therefrom were not caused or contributed to by any fault, neglect, or want of care or design on the part of the MSC FLAMINIA or those in charge of her, or by Plaintiffs Conti and NSB, or anyone for whom Plaintiffs may be responsible.

3

16) The casualty, and the losses, damages, injuries, and destruction resulting therefrom for which claims have been or may be made against Plaintiffs Conti and NSB, and the MSC FLAMINIA, and all other damages in any manner arising out of said fire, were occasioned and incurred without the privity or knowledge of Plaintiffs Conti and NSB, or any of their directors, officers, stockholders, or agents, and without the privity or knowledge of the Master of the MSC FLAMINIA, the superintendent, or managing agent of Plaintiffs Conti and NSB at or prior to the commencement of the voyage.

17) The total amount of the claims which have been made and those which may be made in the future is not presently known; however, Plaintiffs Conti and NSB reasonably anticipate and believe that civil actions and claims will be asserted against them in an amount exceeding the total amount for which Plaintiffs and the vessel may be legally responsible for pursuant to 46 U.S.C. §§ 30501 *et seq.*, Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims, and 28 U.S.C. §§ 1300 *et seq.* (the Carriage of Goods by Sea Act).

18) Plaintiffs Conti and NSB believe and therefore allege that the value of MSC FLAMINIA, immediately before the casualty, does not exceed US $26,000,000.

19) Plaintiffs Conti and NSB believe and therefore allege that the amount of pending freight at the time of the casualty was US $737,695.85.

20) Plaintiffs Conti and NSB believe and therefore allege that the estimated cost of repairs for the damages as a result of the casualty is US $31,596,698.10.

21) Plaintiffs Conti and NSB believe and therefore allege that the ownership interests of the MSC FLAMINIA will be responsible for a salvage contribution on the order of US $5,000,000 to US $35,000,000.

22) Plaintiffs Conti and NSB attach hereto as "Exhibit 1" an Ad Interim Stipulation of Value setting forth the exact basis upon which the limitation fund for the MSC FLAMINIA was calculated to be US $0.00 (United States zero dollars) for all cargo claims.

23) Plaintiffs Conti and NSB reserve the right to revise and/or amend the basis for calculating the limitation fund and the corresponding Ad Interim Stipulation of Value as additional information relating to the cost of repair and/or the salvage of the vessel becomes available in the future.

24) This Complaint for Exoneration from or Limitation of Liability is filed within 6 months after Plaintiffs Conti and/or NSB received written notice of a claim.

25) For the foregoing reasons, Plaintiffs Conti and NSB, as owner and operator, respectively, of the MSC FLAMINIA and while denying liability to any and all claimants, potential or otherwise, is entitled to, among other defenses, the benefit of limitation of liability, including the fire defense, as provided in 46 U.S.C. § 30501, *et seq.*, and all laws supplemental thereto, and Rule F of the Supplemental Rule for Certain Admiralty and Maritime Claims as the casualty was occasioned and occurred without their privity or knowledge.

26) Plaintiffs Conti and NSB reserve the right to raise certain claims and defenses without prejudice and that include, but are not limited to, *forum non-conveniens*, forum selection clause(s) / improper forum, covenant not to sue, the fire defense in the Limitation Act, and those defenses allowed under U.S. COGSA, Hague / Hague-Visby Rules, and/or applicable law.

**WHEREFORE**, Plaintiffs Conti and NSB pray that:

A.      This Honorable Court approve the attached Ad Interim Stipulation of Value setting

forth the basis by which the limitation fund was calculated to be zero dollars;

B.      This Honorable Court issue notice to any and all persons asserting claims with respect

to which this Complaint for Exoneration from or Limitation of Liability seeks

exoneration and limitation to file their respective claims with the Clerk of the Court

and to serve on the attorneys for Plaintiffs Conti and NSB a copy thereof on or before

a date to be stated in the notice, and that if any such claimants desire to contest the

Plaintiffs' claim that they are not liable, or their right to limitation of liability, each

such claimant shall also file and serve on the attorney for Plaintiffs an Answer on or

before a date to be stated in the notice;

C.      This Honorable Court enjoin the further prosecution of any and all actions, suits, or

proceedings already commenced as well as the commencement or prosecution of any

and all future action, suits, or proceedings, of any nature or description whatsoever in

any jurisdiction, against the Plaintiffs and the MSC FLAMINIA, and the agents,

representatives, employees, or insurers of the Plaintiffs, and/or against any property

of the Plaintiffs except in this action, to recover damages for or with respect to injury,

death, loss, and damage caused by or resulting from the casualty;

D.      This Honorable Court adjudge that Plaintiffs are not liable and are exonerated with

respect to any loses, damages, injuries, or deaths arising from this casualty;

E.      This Honorable Court orders such other and further relief as may be just.

Dated: December 7, 2012
Port Washington, NY

Respectfully submitted,

CHALOS O'CONNOR LLP

Eugene J. O'Connor
Timothy Semenoro
Robert O'Connor
366 Main Street
Port Washington, New York 11050
Tel.   (516) 767-3600
Fax.   (516) 767-3605
*Attorneys for CONTI 11. CONTAINER SCHIFFAHRTS-
GMBH & CO. KG MS "MSC FLAMINIA" and NSB
NIEDERELBE SCHIFFAHRTSGESELLSCHAFT MBH &
CO. KG*

# EXHIBIT "1"

**CHALOS O'CONNOR LLP**
Eugene J. O'Connor
Timothy Semenoro
Robert O'Connor
366 Main Street
Port Washington, New York 11050
Tel.   (516) 767-3600
Fax.   (516) 767-3605

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------ X
IN THE MATTER OF THE COMPLAINT OF                Civil Action No.:
CONTI 11. CONTAINER SCHIFFAHRTS-GMBH
& CO. KG MS "MSC FLAMINIA,"
AS OWNER, AND NSB NIEDERELBE                     **AD INTERIM**
SCHIFFAHRTSGESELLSCHAFT MBH & CO. KG,            **STIPULATION**
AS OPERATOR, OF THE MSC FLAMINIA FOR             **FOR VALUE**
EXONERATION FROM OR LIMITATION OF
LIABILITY

                          Plaintiffs.

------------------------------------------------------------ X

    **WHEREAS,** Plaintiffs have or will be instituting proceedings in this Court, pursuant to

46 U.S.C. §§ 30501, *et seq.,* with respect to all injury, death, loss, or damage arising out of an

incident occurring on or about July 14, 2012 during a voyage of the MSC FLAMINIA, the facts

of which are more particularly set forth in the accompanying Complaint filed herein, or for any

other matter arising during the voyage on which the MSC FLAMINIA was then engaged, in

which proceedings Plaintiffs pray, among other things, that the Court issue a Notice to all

persons asserting claims with respect to which the Complaint herein has been filed, notifying

them to file their respective claims with the Clerk of this Court and to serve on Plaintiffs'

attorneys a copy thereof, and that an injunction issue restraining commencement and further

prosecution of all claims and proceedings against Plaintiffs, the MSC FLAMINIA, and/or the

agents, representatives or insurers of Plaintiffs or the MSC FLAMINIA, with respect to the

matter in question, except in accordance with the provisions of the Notice to be issued herein; and

**WHEREAS**, Plaintiffs wish, except in accordance with the provisions of the Notice to be issued herein, to prevent the commencement or prosecution hereafter of any and all suits, actions, or legal proceedings of any nature or description whatsoever in any and all courts against Plaintiffs and/or the MSC FLAMINIA, except before this Court herein, as aforesaid, or against other property of Plaintiffs or the agents, representatives, or insurers of Plaintiffs, or the MSC FLAMINIA, and also wish to provide an Ad Interim Stipulation for Value, subject to such due appraisement of the amount or value of the interest of Plaintiffs in the MSC FLAMINIA and her pending freight as the Court hereafter may Order;

I, Eugene J. O'Connor, Esq., as a member of the firm Chalos O'Connor, LLP, attorneys for Plaintiffs CONTI 11. CONTAINER SCHIFFAHRTS-GMBH & CO. KG MS "MSC FLAMINIA" (hereinafter "Conti"), as owner, and NSB NIEDERELBE SCHIFFAHRTSGESELLSCHAFT MBH & CO. KG (hereinafter "NSB"), as operator, of the vessel MSC FLAMINIA, declare as follows:

1.     The value of the MSC FLAMINIA prior to the casualty on or about July 14, 2012 was US $26,000,000.00.  A true and accurate copy of London Shipbroker Arrow Evaluations evaluation letter, dated November 20, 2012, for the MSC FLAMINIA in her pre-casualty condition is annexed hereto as Exhibit A.

2.      For the subject voyage, the value of the MSC FLAMINIA's pending freight is based on the corresponding voyage, numbered 1225R, commencing at Vera Cruz, Mexico, on June 25, 2012, and to be completed at Antwerp, Belgium, on or about July 17, 2012, i.e., 23 days, at a daily hire rate of US $15,275.00 plus EUR 12,975.00 (converted at a rate of EUR 1.2947 to US $1.00) per day, for a total of US $737,695.85.

3.      As near as can now be determined, the cost to repair the hull of the MSC FLAMINIA is estimated to be US $23,024,271.00.  A true and accurate copy of a Daewoo Mangalia Heavy Industries faxed letter with enclosures, dated November 21, 2012, is annexed hereto as Exhibit B.

4.      Additional estimated costs relating to the repair of the MSC FLAMINIA, include US $2,000,000.00 for necessary towage to the contemplated repair yard in Romania; US $1,000,000.00 for the repair of the auxiliary engines; US $500,000.00 for the repair of the bridge equipment; US $1,000,000.00 for the repair of the emergency generator; US $200,000.00 for various repairs to the accommodations portion of the vessel; US $1,000,000.00 for pilotage fees, agency fees, Bosporus passage fee, Classification Society Surveyor fees, Classification Society costs and fees, and Towage Certificate fee; and a 10% margin for unforeseen costs.  In total, the estimated cost to repair the MSC FLAMINIA will be US $31,596,698.10.

5.      Although General Average has not yet been calculated, it is expected that the ownership interests of the MSC FLAMINIA will be responsible for a salvage contribution on the order of US $5,000,000.00 to US $35,000,000.00, depending on such factors as the ultimate amount of the award to the salvors and owners' proportionate share of the property salved, which have not yet been determined.

6.      As the estimated cost of repairs and expected minimum salvage contribution of the ownership interests of the MSC FLAMINIA significantly exceed the sum of the pre-casualty value of the vessel plus pending freight for the subject voyage, the limitation fund for the MSC FLAMINIA should be US $0.00 (United States zero dollars) for all cargo claims.

7.      I reserve the right to revise and/or amend the basis for calculating the limitation fund in the event that additional information relating to the cost of repair and/or the salvage of the vessel becomes available in the future.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Port Washington, NY
       December 7, 2012

Eugene D. O'Connor
Attorney-in-fact for Plaintiffs

4

# EXHIBIT "A"



# ARROW
VALUATIONS

2nd Floor, Harbour House, Chelsea Harbour, London SW10 0XE
Telephone: 020 7973 8939  Facsimile: 020 7973 8938  mail@arrowsale.co.uk

**PRIVATE & CONFIDENTIAL**

The Swedish Club
Box 171
401 22 Gothenburg
Sweden

Dear Sirs

### M/V "MSC FLAMINIA"
(German flag)

IMO No.: 9225615
About 85,823 dwt on about 14.5m draft
Built: 2001 by Daewoo Shipbuilding, Japan
Class: GR
Dimensions: 300m LOA x 40m breadth
TEU: 6732
Main engine:  B&W (10K98MC-C)
                        77,633 BHP

In accordance with your request, we have made an assessment of the vessel's particulars and, following our appraisal, we are able to state that in our opinion the approximate value of the vessel, as at 11th September 2012, between a "willing Seller and a willing Buyer" is **US$26,000,000 (TWENTY SIX MILLION UNITED STATES DOLLARS).**

This opinion is arrived at on the understanding that the vessel would be in a position to give early delivery, within an acceptable area, free of charter or any contract of employment, for cash payment on normal sale terms.  We have presumed that the Sellers could give delivery of the vessel free from all registered encumbrances, maritime liens and all debts.

A Division of Arrow Research Ltd
Registered Office  2nd Floor, Harbour House, Chelsea Harbour, London SW10 0XE   Registered in England 265 1856   VAT Registration 629 3993 00

We have not made a physical inspection nor have we inspected the classification records of the vessel but, for the purpose of this valuation, it has been presumed that the vessel has been maintained to standards expected for a ship of her age and type.

Furthermore, it has been presumed that the vessel fully complies with latest IMO/MARPOL/SOLAS requirements, is in a sound trading condition, being fully classed to the requirements of her Classification Society, is free of recommendations and has clean and valid trading certificates, conforming in all respects with the requirements of the appropriate Registry.

It is to be appreciated that this valuation represents a statement of opinion only and is not representative of fact or the correctness of the particulars shown above.  In this respect, it is to be noted that these particulars are compiled from information made available to us and other such data that we have been able to obtain from the relevant works of reference in our possession.  Whilst all due care has been taken in the preparation of this statement, we are not able to accept any responsibility for the accuracy of the particulars or the assumptions, contained herein, upon which our opinion is based.

This valuation is given solely for the private use of the person to whom it is addressed and is not for publication or circulation without our prior written permission.  We wish it to be understood that this valuation is given solely for your information but if you, or any other party, intend to act upon this statement then verification should be obtained, by inspection of the vessel or by any other appropriate means, that the particulars given herein are correct.

It must be appreciated that the current financial turmoil has made the assessment of values uncertain.  Information on comparable transactions and market demand has, where available, been very limited.  These circumstances mean any valuation is a mere assessment made without reference to supporting sales and the existence of an actual market is accordingly uncertain.  This fact should be considered by anyone contemplating entering a transaction.

This valuation is made as of the date specified and no assurance can be given that such value can be sustained or is realisable in actual transaction.

This valuation is given in good faith but neither the Company nor its directors or employees shall be liable in any way whatsoever for any error or omission.

For and on behalf of
ARROW VALUATIONS

Dated London:         20th November 2012                    ARVAL- 1112514

# EXHIBIT "B"



**DAEWOO MANGALIA
HEAVY INDUSTRIES**

1 Portului Street, 905500, MANGALIA, ROMANIA
Tel.: (+40) 372 41 1201 Fax: (+40) 241 756054
E-mail: rmd@dmhi.ct.ro / rmo@dmhi.ct.ro
Web: www.dmhi.ct.ro



| TELEFAX   MESSAGE | |
|---|---|
| **To** : NSB Niederelbe  Schiffahrtsgesellschaft mbH & Co. KG | **From:** Daewoo Mangalia Heavy Industries S.A. |
| **Attn:** Mr. Bozidar Petrovic - Vicepresident | **Date** : Wednesday, 21st of November 2012 |
| **E-mail :** BPetrovic@reederei-nsb.com | **Ref. No.:** 13024-CD-1893 |
| **Subject:** MSC FLAMINIA (the "Vessel") – DMHI Revised Offer | |

*We are sending you 35 (thirty-five) page(s) including this cover page*

Dear Mr. Petrovic,

We acknowledge with many thanks receiving your inquiry and now we are submitting to you our Revised Offer based on "As built drawings (Finished Plan)" of DSME (the "Builder Yard") HN. 4073, as follows:

1. DMHI's facilities are available on 2013, subject to prior sales/commitments and DMHI acceptance on Owner's firm order.
   The Vessel's draft should not exceed 6.2 meters for entrance in DMHI premises. The Owner shall take the following measures:
   - to dispose before Vessel's arrival at DMHI all fire fighting polluted water and a certain quantity of scrap containers in order to keep the mentioned draft level;
   - to arrive in DMHI with a minimum quantity of fuels in way of affected part of the Vessel in order to minimize the cleaning volume before scrapping.
   - the Vessel should arrive in DMHI free of dangerous cargo/debris.
   Nevertheless, the Owner will inform DMHI with 30 days prior Vessel's arrival at DMHI, about remaining quantity of scrap containers, fuels in way of affected part of the Vessel and remaining waste on tank top of the Vessel for DMHI proper arrangement of collection, disposal and neutralization in accordance with European standards.

2. Works Scope:
   - Rebuild Vessel's Body Section between predefined cutting lines at Fr. 56-700 mm and Fr. 96-700 mm.
   - Refurbishing (Repair) Works aft of predefined cutting lines at Fr. 56-700 mm and forward of Fr. 96-700 mm, as per attached Refurbishing (Repair) Revised Offer;

a) Total Estimated Price is USD 23,024,271 (United States Dollars twenty-three million twenty four thousand two hundred seventy one) for the above mentioned Work Scope, including the followings subtotals:
   a) Rebuild Price of the Vessel's Body Section between predefined cutting lines at Fr. 56-700 mm and Fr. 96-700 mm is USD 21,550,000, includes the followings subtotals which are subject to below "Notes (i) to (vi)":

*To be continued.../*                      Page 1 of 4



 1 Portului Street, 905500, MANGALIA, ROMANIA
Tel.: (+40) 372 41 1201 Fax: (+40) 241 756054
E-mail: rmd@dmhi.ct.ro / rmo@dmhi.ct.ro
**DAEWOO MANGALIA**   Web: www.dmhi.ct.ro
**HEAVY INDUSTRIES**



- USD 16,270,870 for renewal of steel net weight of 8,701 tons on bottom plate, tank top, side shell, longitudinal / transversal bulkheads, main deck, hatch coamings and its internals/externals structures, hatch covers and cell guides;
- USD 5,279,130 for the following categories:
  - Supply and application of JOTUN paint system, as per Owner request on 19 November 2012.
  - Supply and installation anodes in water ballast tanks;
  - Supply and installation of fittings of hatch covers;
  - Supply and installation of equipment for cargo hold and deck, excepting container loose fittings which are Owner supply;
  - Supply and installation ventilation equipment;
  - Supply and installation of fixed mooring equipment;
  - Supply and installation of life saving and loose firefighting equipment;
  - Supply and installation of traffic fittings;
  - Supply and installation of pilot door and accessories, pilot rope ladder and accessories;
  - Supply and installation pipe systems (ballast, heeling, bilge, scupper drainage, FO filling/overflow, $CO_2$ fire extinguishing & smoke detection, fire and wash down, air vent system, sounding pipe, remote level and draft gauging, steam/condensate, deck service air, deck service fresh water);
  - Supply and installation valve remote control system *plus the electrical cabinets of valve remote control system for the entire length of the passage way*;
  - Supply and installation sensors / fittings / electrical cabinets of remote level and draft gauging system *plus the electrical cabinets of remote level and draft gauging system for the entire length of the passage way*;
  - Supply and installation automation for machinery;
  - Supply and installation of electrical and lighting systems;
  - Supply and installation electrical cables *plus the electrical cables for the entire length of the passage way*;
  - Tests, deadweight measurement, trials
- b) Estimated Refurbishing (Repair) Price is USD 1,474,271 based on the DMHI assumption works as per attached Refurbishing (Repair) Revised Offer, subject to the attached Terms and Conditions. Nevertheless, the final invoice amount of Refurbishing (Repair) Works shall be determined based on the work scope agreed between Owner and DMHI during the common inspection on board of the Vessel in accordance with the attached Refurbishing (Repair) Revised Offer.

**Notes**:

(i) The cutting lines shall be clearly defined upon Contract Award and the above mentioned Rebuild Price shall be subject to upward and downward adjustment at the rate of USD 1.87 / kg as a result of the difference between the Initial Steel Net Weight of 8,701 tons for bottom plate, tank top, side shell, longitudinal / transversal bulkheads, main deck, hatch coamings and its internals/externals structures, hatch covers and cell guides between predefined cutting lines at Fr. 56-700 mm and Fr. 96-700 mm, which are



 **DAEWOO MANGALIA HEAVY INDUSTRIES**

1 Portului Street, 905500, MANGALIA, ROMANIA
Tel.: (+40) 372 41 1201 Fax: (+40) 241 756054
E-mail: rmd@dmhi.ct.ro / rmo@dmhi.ct.ro
Web: www.dmhi.ct.ro

 GL Systems Certification

included in the above Rebuild Price and the Final Steel Net Weight to be defined upon Contract Award following any modification of predefined cutting lines.

(ii) DSME (the "Builder Yard") HN. 4073 rules and regulations are applied. Any additional design/modification required by Owner and Class, as well as any updates of other rules, regulation and requirements of regulatory bodies are not included. Thus, the Rebuild Price is subject to upward and downward adjustment for modification of any part of the construction of the new Vessel's Body Section, due to alteration of the regulation and/or drawings. Any such price/time adjustment shall be determined by mutual agreement.

(iii) Engineering fee in connection with the workshop drawings which will be developed based on electronically format of "As built drawings (Finished Plan)" is included in Rebuild Price. Taking into consideration the Builder Yard's availability of "As built drawings (Finished Plan)", the list and delivery dates of Owner's "As built drawings (Finished Plan)" shall be mutually agreed between parties before Contract Award and will form an integral part of the Contract.

(iv) The following costs are in Owner's account:
- Class fee for approval of drawings, supervision of works and Vessel's certification upon Vessel's redelivery;
- Consumables (fuels, lub. oils, food, etc) for tests/trials.
- Modifications of systems caused by lack of supply by the maker of the Original Type Equipment.
- Any upward or downward cost (and time) incurred with the New Type Equipment ordered with Owner's acceptance from other maker instead of Original Equipment will be applied accordingly.

(v) All steel scrap and scraped equipment are DMHI property.

(vi) DMHI does not guarantee stability and performance of the Vessel.

b) Contractual Period and Leading time
Contractual Period is two hundred seventy three (273) running days from Contract Award until Vessel's Re-delivery, including seventy-three (73) running days of leading time before starting of steel cutting, as per attached Master Schedule.

c) Payment Terms
- 20% of Total Estimated Price upon Contract Award;
- 20% of Total Estimated Price on Steel Cutting;
- 20% of Total Estimated Price on Starting Block's Erection in dry-dock;
- 20% of Total Estimated Price on Vessel's Launching;
- Balance of Total Final Price on Vessel's Re-delivery.

d) Penalty / bonus for every day of late / in advance delivery of the Vessel: USD 8,000 (USD eight thousand) per day with thirty (30) days of grace, limited to 5% from Total Final Price.

e) Validity of Revised Offer: 30 November 2012.

*To be continued.../*                 Page 3 of 4                 



**DMHI**
DAEWOO MANGALIA
HEAVY INDUSTRIES

1 Portului Street, 905500, MANGALIA, ROMANIA
Tel.: (+40) 372 41 1201 Fax: (+40) 241 756054
E-mail: rmd@dmhi.ct.ro / rmo@dmhi.ct.ro
Web: www.dmhi.ct.ro



f)   Others:
The DMHI method for rebuilding and refurbishing works (Work Execution Plan) is hereby attached.

We hope that you will find our offer suited in every way for your requirements.

Best regards,

Dan Marin / Head of
Marketing & Contract Management Division

Attached herewith:
1. Work Execution Plan, dated 16 November 2012 – 9 pages;
2. Master Schedule, dated 16 November 2012 – 1 page;
3. Refurbishing (Repair) Revised Offer – 16 pages;
4. Terms and Conditions, dated 16 November 2012 – 5 pages.

**Contact persons:**

Mr. **DAN MARIN** Division Head
Mobile: +40 722 69 72 18

Mr. **POMPILIU TOADER** Senior Manager
Mobile: +40 726 25 52 65



# Work Execution Plan

## CARGO HOLD AREA RECONSTRUCTION
### FOR
### MSC FLAMINIA 6750 TEU

16-11-2012

Daewoo Mangalia Heavy Industries

# Table of Contents

1. Block Division

2. Erection Sequence - description

3. Keel block arr't – Aft/Middle/Fwd

4. Block Division – Block list

5. Work Allocation Plan

**DMHI** DAEWOO MANGALIA
HEAVY INDUSTRIES

# 1. Block Division – Profile and Upper deck plan

SHIP NO : DSME 4073 FLAMINIA 6,750 TEU CONTAINER SHIP



PROFILE

UPPER DECK PLAN

* RECONSTRUCTION WILL BE DONE PLATE BY PLATE AT POSITION



**DMHI** DAEWOO MANGALIA
HEAVY INDUSTRIES

# 2. Erection Sequence - description

* Erection of the blocks will be block by block starting from aft part to fwd



PROFILE

* REGISTRATION WILL BE DONE PLATE BY PLATE AT POSITION

4/21

**DMHI** DAEWOO MANGALIA
HEAVY INDUSTRIES



## 3.1 Keel block arr't – Aft part

**DMHI** DAEWOO MANGALIA HEAVY INDUSTRIES

## 3.2. Keel block arr't – Middle part



# 3.3. Keel block arr't – Fwd part



**DMHI** DAEWOO MANGALIA
HEAVY INDUSTRIES

# 4. Block Division – Block List

✓ Block List

| STR.UCT. | BLK. | SIZE (M) L | B | H | W.T (TON) | WORK SHOP | REMARK |
|---|---|---|---|---|---|---|---|
| DOUBLE BOTTOM | 221 | 4.5 | 13 | 2.1 | 47 | PBS | * |
| | 281 | 4.5 | 14.6 | 7.8 | 20 | NGA | * |
| | 271 | 4.5 | 15 | 7.8 | 20 | PBS | |
| | 222 | 20.4 | 16.8 | 2.1 | 210 | PBS | |
| | 232 | 20.4 | 18.8 | 2.1 | 220 | PBS | |
| | 223 | 21.6 | 19 | 4.7 | 240 | PBS | |
| | 233 | 21.6 | 20.1 | 4.7 | 250 | PBS | |
| | 224 | 19.5 | 19 | 4.7 | 220 | PBS | |
| | 234 | 19.5 | 20.1 | 4.7 | 230 | PBS | |
| | 235 | 19.8 | 16 | 2.1 | 220 | PBS | |
| | 236 | 19.8 | 18 | 2.1 | 170 | NGA | |
| | 226 | 14.9 | 12.8 | 2.1 | 70 | NGA | |
| | 266 | 14.9 | 12.9 | 8 | 70 | NGA | |
| | 295 | 14.9 | 14.8 | 8.1 | 180 | PBS | |
| | 236 | 14.9 | 13 | 8 | 70 | PBS | |
| | 227 | 14.5 | 14.9 | 2.1 | 147 | PBS | |
| | 237 | 14.5 | 14.5 | 2.1 | 147 | PBS | |
| | 267 | 14.5 | 12.9 | 8 | 59 | NGA | |
| | BLK.NO. 20 | | | W.T. | 2829 | | |
| TRANS. BULKHEAD | 423 | 24 | 16.7 | 1.9 | 110 | NGA | |
| | 433 | 24 | 15.2 | 1.9 | 95 | NGA | |
| | 424 | 24 | 16.7 | 1.9 | 135 | NGA | |
| | 434 | 24 | 16.7 | 1.9 | 120 | NGA | |
| | 425 | 24 | 16.7 | 1.9 | 120 | NGA | |
| | 435 | 24 | 15.2 | 1.9 | 105 | NGA | |
| | 436 | 24 | 16.7 | 1.9 | 140 | PBS | |
| | 426 | 24 | 16.7 | 1.9 | 125 | PBS | |
| | 427 | 24 | 16.7 | 1.9 | 120 | NGA | |
| | 437 | 24 | 15.2 | 1.9 | 105 | PBS | |
| | 438 | 24 | 16.7 | 1.9 | 135 | PBS | |
| | 428 | 24 | 16.7 | 1.9 | 120 | NGA | |
| | 429 | 24 | 16.7 | 1.9 | 105 | NGA | |
| | 499 | 24 | 15.2 | 1.9 | 90 | NGA | |
| | 451 | 18.8 | 16.7 | 1.9 | 120 | PBS | |
| | 441 | 18.8 | 15.2 | 1.9 | 105 | PBS | |
| | BLK.NO. 16 | | | W.T. | 1850 | | |
| LASHING BRIDGE | 327/337 | 5 | 40 | 2 | 41.5 | OHS | |
| | 328/338 | 5 | 40 | 2 | 41.5 | OHS | |
| | 329/339 | 5 | 40 | 2 | 41.5 | OHS | |
| | 341/351 | 5 | 40 | 2 | 41.5 | OHS | |
| | 342/352 | 5 | 40 | 2 | 41.5 | OHS | |
| | 343/353 | 5 | 40 | 2 | 41.5 | OHS | |
| | 344/354 | 5 | 40 | 2 | 41.5 | OHS | |
| | 345/355 | 5 | 40 | 2 | 41.5 | OHS | |
| | BLK.NO. 16 | | | W.T. | 332 | | |

| STR.UCT. | BLK. | SIZE (M) L | B | H | W.T (TON) | WORK SHOP | REMARK |
|---|---|---|---|---|---|---|---|
| SIDE SHELL | 621 | 4.5 | 17 | 4.1 | 56.5 | PBS | * |
| | 622 | 22.1 | 17 | 4.1 | 255 | PBS | |
| | 623 | 21.6 | 19.6 | 4.1 | 300 | PBS | |
| | 624 | 21.6 | 19.6 | 4.1 | 300 | PBS | |
| | 625 | 19.5 | 17 | 4.1 | 240 | PBS | |
| | 626 | 14.9 | 14.3 | 4.1 | 190 | PBS | |
| | 691 | 4.5 | 37 | 4.1 | 56.5 | PBS | * |
| | 692 | 20.1 | 37 | 4.1 | 355 | PBS | |
| | 632 | 21.6 | 19.6 | 4.1 | 300 | PBS | |
| | 634 | 19.5 | 19.6 | 4.1 | 260 | PBS | |
| | 635 | 19.8 | 17 | 2.1 | 220 | PBS | |
| | 636 | 14.9 | 14.3 | 6.3 | 190 | NGA | |
| | 667 | 14.5 | 12.4 | 6.5 | 133 | NGA | |
| | 627 | 14.9 | 9.2 | 4.1 | 110 | PBS | |
| | 677 | 14.5 | 12.4 | 6.8 | 133 | NGA | |
| | 637 | 14.5 | 9.2 | 8 | 70 | NGA | |
| | 227 | 14.5 | 9.2 | 8 | 103 | PBS | |
| | BLK.NO. 16 | | | W.T. | 3022 | | |
| HATCH COVER | 504 | 12.8 | 14.8 | 1 | 39 | OHS | |
| | 505 | 12.8 | 14.8 | 1 | 39 | OHS | |
| | 506 | 12.8 | 14.8 | 1 | 39 | OHS | |
| | 507 | 12.8 | 14.8 | 1 | 39 | OHS | |
| | 508 | 12.8 | 14.8 | 1 | 39 | OHS | |
| | 509 | 12.8 | 14.8 | 1 | 39 | OHS | |
| | 511 | 12.8 | 14.8 | 1 | 39 | OHS | |
| | 512 | 12.8 | 14.8 | 1 | 39 | OHS | |
| | 513 | 12.8 | 14.8 | 1 | 38 | OHS | |
| | 524 | 12.8 | 10.2 | 1 | 38 | OHS | |
| | 525 | 12.8 | 10.2 | 1 | 38 | OHS | |
| | 526 | 12.8 | 10.2 | 1 | 38 | OHS | |
| | 527 | 12.8 | 10.2 | 1 | 38 | OHS | |
| | 528 | 12.8 | 10.2 | 1 | 38 | OHS | |
| | 529 | 12.8 | 10.2 | 1 | 38 | OHS | |
| | 534 | 12.8 | 10.2 | 1 | 38 | OHS | |
| | 535 | 12.8 | 10.2 | 1 | 38 | OHS | |
| | 536 | 12.8 | 10.2 | 1 | 38 | OHS | |
| | 537 | 12.8 | 10.2 | 1 | 38 | OHS | |
| | 538 | 12.8 | 10.2 | 1 | 38 | OHS | |
| | 539 | 12.8 | 10.2 | 1 | 38 | OHS | |
| | 541 | 12.8 | 10.2 | 1 | 38 | OHS | |
| | 542 | 12.8 | 10.2 | 1 | 38 | OHS | |
| | 549 | 12.8 | 10.2 | 1 | 38 | OHS | |
| | 551 | 12.8 | 10.2 | 1 | 38 | OHS | |
| | 552 | 12.8 | 10.2 | 1 | 38 | OHS | |
| | 553 | 12.8 | 10.2 | 1 | 38 | OHS | |
| | BLK.NO. 27 | | | W.T. | 1035 | | |

| TOTAL ESTIMATION | BLK.NO. | 95 | W.T. | 9078 |
|---|---|---|---|---|

DMHI  DAEWOO MANGALIA HEAVY INDUSTRIES

# 5. Work Allocation Plan

✓ . Lay-Out of DMHI



**DMHI, Romania (DSME Subsidiary)**

Black-sea

10. Scrap unloading area

2. Outfitting & Hull Shop (OHS)

9. Scrap buffer area

6.Pre-erection area DD2

7. DD2 - Repair

8. QUAY "C" Finalizing works

1.Steel stock area

5.Blast/painting shop

2.Cutting & Ass'y Shop (CAS)

4.Pre-outfitting area

3.Panel Block Shop (PBS) ASS'Y

MANGALIA LAKE

MANGALIA CITY

**DMHI : Daewoo Mangalia Heavy Industry**

**DMHI** DAEWOO MANGALIA
HEAVY INDUSTRIES

