Raymond P. Hayden
Thomas E. Willoughby
John Eric Olson
Anthony J. Pruzinsky
Lauren E. Komsa
Hill Rivkins LLP
Attorneys for Claimants
45 Broadway, Suite 1500
New York, NY 10006

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF CONTI 11.CONTAINER SCHIFFAHRTS-GMBH & CO. KG MS "MSC FLAMINIA", AS OWNER, AND NSB NIEDERELBE SCHIFFAHRTSGESELLSCHAFT MBH & CO. KG, AS OPERATOR, OF THE MSC FLAMINIA FOR EXONERATION FROM LIMITATION OF LIABILITY<br><br>Plaintiffs, | Index No.:<br>12-Civ.-08892 (TPG)<br><br>REPLY TO CONTI'S MEMORANDUM OF LAW IN OPPOSITION TO ORDER TO SHOW CAUSE |

On February 7, 2013, this Honorable Court issued an Order to Show Cause directing the Plaintiff, Conti 11.Container Schiffahrts-GmbH & Co KG MS "MSC FLAMINIA" (hereinafter "Conti" or "Owners") to show cause why it should not release Cargo Claimants' cargo upon the posting of reasonable security upon the forms which were annexed to the Affidavit of Richard P. Carney as Exhibits 3 and 4, which offered security on the following standard terms:

1

1.      Posting security for 100% of the invoice value of the cargo, net of any payment to salvors, with an agreement that the General Average adjustment would be complete in two years, thereby limiting the total exposure of the cargo to 114% of its invoice value;[1] and

2.      Payment on account based upon what is legally due. This allows cargo interests to maintain all defenses which are available at law.

As evidenced by the Memorandum of Law and Declaration submitted by Conti, it has failed to show cause why the posting of security on these terms is not objectively acceptable.

## I.
## THIS COURT HAS JURISDICTION TO ORDER CONTI TO ACCEPT THE SUGGESTED SECURITY FROM CARGO CLAIMANTS

**A.**    **In Accordance With Conti's Request, this Court Has Issued an Order Requiring All Issues Relating to the MSC FLAMINIA Casualty to Be Heard Before This Court**

On January 25, 2013, this Court issued an Order which, inter alia, provided:

> IT IS FURTHER ORDERED that the further prosecution of any and all actions, suits, and proceedings of any nature, and description whatsoever in any Court of any jurisdiction, or otherwise, against the Plaintiffs and/or the MSC FLAMINIA, and the taking of any steps and the making of any motion in such actions, suits or proceedings except in this action, to recover damages for or in respect to the aforesaid casualty as more fully described in the Complaint be and they hereby are restrained, stayed, and enjoined until the hearing and determination of this action, and all warrants of arrests and/or attachment issued or sought in such other suits, actions, or legal proceedings be and the same are hereby dissolved and further warrants of arrest and/or attachment are hereby prohibited. (Docket No. 10).

Per this Order, the present dispute is properly before this Court.

---

[1] Under the applicable ocean bills of lading issued by Mediterranean Shipping Company ("MSC"), General Average is to be adjusted according to York - Antwerp Rules 1994. (Ex. A to Komsa Decl. in Support of Order to Show Cause) The York-Antwerp Rules 1994 allow for an Average Adjuster to collect 7% per annum on all expenditures, sacrifices and allowances in general average. As such, because general average adjustments could take several years to finalize, parties generally agree to a reasonable period of time in which the interest on the General Average is to run.

B.  **The Relief Sought Does Not Relate to the Adjustment of General Average**

In support of its position that the issue regarding security should be decided in London, Conti cites to language in both the time charter (as between Conti and MSC Mediterranean Shipping Company, S.A) and the MSC bill of lading which requires General Average to be "adjusted, stated, and settled at any port or place at the Carrier's option according to York-Antwerp Rules 1994. . ." Conspicuously absent from this language is a requirement that issues relating to General Average *security* be decided in London, or in any other location. The issue of general average security is separate and distinct from the general average adjustment. There exists no contractual agreement which requires the issue of general average security to be decided in London. As set forth above, the only authority which speaks to the proper forum for the issue of security to be decided is this Court's January 25, 2013 Order.

C.  **As the Plaintiff, Conti is Estopped From Arguing *Forum Non Conveniens***

Conti goes on to argue that United States District Court for the Southern District of New York is an inconvenient forum to decide the issue of security. In support of its position, it cites to several cases which purport to buttress its argument. However, in each of the cited cases, the Defendant sought dismissal of the Plaintiff's action on the basis of forum non conveniens. This is quite different than the case *sub judice*. Here, Conti *is* the Plaintiff. It is estopped from arguing that this Court is an inconvenient forum for determining issues in an action that it has commenced.

## II.
## CONTI HAS NOT DEMONSTRATED WHY THE POSTING OF 114% SECURITY BY CARGO CLAIMANTS IS UNREASONABLE TO SECURE RELEASE OF THE CARGO

Conti devotes the majority of its Opposition attempting to divert attention from the only issue before the Court: that it has failed to release Cargo Claimants' cargo upon the offer to

tender reasonable GA security.  Rather, Conti endeavors to create confusion by discussing the issue of salvage security.   Cargo Claimants do not contest that a London arbitrator has issued an Order that salvage security in the amount of 65% of the CIF value of the cargo be posted.  Conti attempts to make much of the fact that Cargo Claimants have not yet posted salvage security in accordance with the arbitrator's findings.  What Conti fails to disclose is that Cargo Claimants were required to provide salvage security only upon a determination of the condition of their cargo (i.e whether a benefit been conferred and was the cargo salved). This was not known until well after the salvage security deadline and indeed in some cases Cargo Claimants still do not know.  Additionally, there have been ongoing negotiations amongst concerned London solicitors for all parties (including Conti, salvors, and Cargo Claimants) including not simply the provision of salvage security, but in fact a possible early payment of the ultimate salvage claim.[2] Notwithstanding, the issue of the salvage security itself is not at issue before the Court, and does not justify Conti's continual demands for unreasonable security.

What is at issue in the present proceeding is the percentage of GA security that Conti is demanding of the Cargo Claimants.  That is, Conti is demanding that Cargo Claimants post security in the amount of 100% of cargo value, over and above the 65% salvage security, for a total of 165% of the value of the cargo.  What Cargo Claimants seek is an Order of the Court that all security be capped at 114%, with 65% to go to salvors per the Arbitrator's Order, and the remaining 49% to go to GA.  In addition, it should also be noted that under Rule VI of the York-Antwerp 1994 Rules, salvage is an integral part of General Average:

> Rule VI- Salvage Remuneration
>
> (a) Expenditure incurred by the parties to the adventure in the nature of salvage, whether under contract or otherwise, shall be allowed in general average provided

---

[2] To this end, it is worth noting that for this very reason, Conti itself has similarly not yet posted salvage security.

4

> that the salvage operations were carried out for the purpose of preserving from
> peril the property involved in the common maritime adventure.
> Expenditure allowed in general a verage shall include any salvage remuneration
> in which the skill and efforts of the salvors in preventing or minimizing damage to
> the environment such as is referred to in Article 13 Paragraph 1(b) of the
> International Convention on Salvage, 1989 have been taken into account.

Notably, Conti has not cited any authority to suggest that limiting security to 100%, (let alone the 114% which is what Cargo Claimants are herein offering) of the sound cargo value is unreasonable or in any way insufficient to secure the release of cargo. Similarly, Conti has not cited to any general average proceeding in which security in excess of 100% of value had been sought or posted. Ironically, the commentary cited in the Declaration of James Gosling actually supports cargo's position in this matter:

> Can any party to the adventure be legally required to pay a general average
> contribution in excess of 100 per cent of the contributory value of their property? .
> . . Ordinary common sense and commercial logic dictates that the answer must be
> "No," for the owner of that property would clearly prefer that his property had
> been totally lost, rather than that he should be "taxed" with a liability in excess of
> its value. (Gosling Dec. ¶ 29).

Indeed, it is not only inequitable, but defies logic to require a party to secure its cargo above and beyond what it is actually worth.

Finally, Conti does not provide any explanation as to why the payment on account provision in the GA guarantee proffered by Cargo Claimants would be insufficient or otherwise unsatisfactory. Conti cites to no authority which would allow it or its GA adjuster the unbridled discretion to demand payment on account once the GA has been finally adjusted and stated, a condition which it has continually demanded. It is well established that, "in the absence of an agreement to the contrary, a statement of general average is without legal effect and is not conclusive on cargo's liability to contribute." Buglass, <u>Marine Insurance and General Average in the United States</u>, 3rd Ed. 1999. As such, Cargo Claimants are entitled to a payment on

5

account clause which allows them to maintain all defenses at law, and the right to challenge the GA Adjustment in the event that it is deemed incorrect.

## CONCLUSION

For all of the foregoing reasons, Respondent Cargo Claimants respectfully request that the Court issue the Proposed Order, ordering the Plaintiff, Conti 11.Container Schiffahrts-GmbH & Co. KG "MSC FLAMINIA" to release Cargo Claimants' cargo upon the posting of reasonable security in the form attached the Affidavit of Richard P. Carney as Exhibits 3 and 4.

Dated: February 13, 2013

Respectfully submitted.

        HILL RIVKINS LLP
        Attorneys for Defendant
        Cargo Claimants

By: _____
        Raymond P. Hayden
        Thomas E. Willoughby, Jr.
        John E. Olson
        Anthony J. Pruzinsky
        Lauren E. Komsa
        45 Broadway, Suite 1500
        New York, New York 10006
        (212) 669-0645