BROWN GAVALAS & FROMM LLP
Attorneys for Claimant-Crossclaimant
NACA LOGISTICS (USA) INC.
355 Lexington Avenue
New York, New York 10017
212-983-8500

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X

| | |
|---|---|
| In the Matter of the Complaint of: | Case No.: 12 Civ. 8892 (TPG) |
| CONTI 11. CONTAINER SCHIFFAHRTS-GMBH & CO. KG MSC "FLAMINIA," AS OWNER, AND NSB NIEDERELBE SCHIFFAHRTSGESELLSCHAFT MBH & CO. KG, AS OPERATOR, OF THE MSC FLAMINIA FOR EXONERATION FROM OR LIMITATION OF LIABILITY. | **AMENDED CROSSCLAIMS OF NACA LOGISTICS (USA) INC. AGAINST DELTECH CORPORATION AND STOLT TANK CONTAINERS BV** |

---------------------------------------------------------X

Claimant NACA LOGISTICS (USA) INC. d/b/a VANGUARD LOGISTICS SERVICES d/b/a DIRECT CONTAINER LINE, CONTERM CONSOLIDATION SERVICES, and BRENNAN INTERNATIONAL TRANSPORT ("NACA"), by its attorneys, Brown Gavalas & Fromm LLP, in addition to the claims previously asserted by NACA against MSC Mediterranean Shipping Company, S.A. ("MSC") and plaintiffs in this action, hereby amends its crossclaims against claimants Deltech Corporation ("Deltech") and Stolt Tank Containers B.V. ("Stolt") upon information and belief and by incorporation of relevant allegations contained in MSC's May 29, 2013 crossclaims and plaintiffs' May 29, 2013 counterclaims.

1.      This Court has subject matter jurisdiction under 28 U.S.C. § 1333 and Rule 9(h) of the Fed. R. Civ. P.

2.      NACA is a foreign corporation organized and existing under the laws of the State of California with a principal place of business in California.

3. Stolt at all relevant times was a business entity organized and existing under the laws the Netherlands with an office and place of business in Houston, Texas, and is the manufacturer, shipper, owner, consignee, seller, and/or buyer of certain cargoes of Divinylbenzene 80% ("DVB") that were carried aboard the M/V MSC FLAMINIA.

4. Deltech at all relevant times was a business entity organized and existing under the laws of one of the United States with an office and place of business in Baton Rouge, Louisiana, USA, and is the manufacturer, shipper, owner and/or seller of certain cargoes of DVB that were carried aboard the M/V MSC FLAMINIA.

5. As a non-vessel operating common carrier, NACA issued 17 bills of lading for a number of containers and other cargoes that were aboard the Vessel at the time of the accident. Copies of these bills of lading are annexed hereto as Exhibit "A". The owners of the cargoes shipped under these bills may assert claims against NACA for damage, loss, non-delivery, and/or delay to these cargoes, including general average and/or salvage contributions. At this time, the amount of the potential claim for which NACA may be entitled to indemnity or contribution, and/or will be liable for general average or salvage contributions is unknown, and NACA reserves the right to amend its crossclaim as this information becomes available.

## FIRST CAUSE OF ACTION

6. NACA repeats and realleges each and every allegation set forth above with the same force and effect as if herein set forth at length.

7. Stolt was, and is, the shipper and consignee under MSC bills of lading numbered MSCUOE640393, MSCUOE640450, and MSCUOE640351, all issued on July 1, 2012 (hereinafter "the MSC Bills of Lading"), for the carriage of three 20' tank containers (nos. UTCU4733737, UTCU4597013, and UTCU4615210, respectively) said to contain

2

DVB from New Orleans to Antwerp, Belgium, aboard the M/V MSC FLAMINIA (the "DVB cargoes").

8. Deltech was, and is, the designer, manufacturer, commercial supplier, tester, packer, stuffer, seller, packager, labeler, land transporter, owner, shipper, and exporter of the DVB, which Deltech and/or its agents tendered to the M/V MSC FLAMINIA and/or MSC for carriage to Antwerp on the subject voyage pursuant to the terms and conditions of the MSC Bills of Lading.

9. Stolt acted as a non-vessel operating common carrier with respect to the DVB cargoes on behalf of Deltech when booking the subject shipments with MSC.

10. Stolt owned, leased, and/or controlled the tank containers in which the DVB was loaded for the subject voyage.

11. Deltech and/or its agents loaded the DVB into the tank containers.

12. Stolt and/or its agents arranged for the inland storage and transportation of the subject shipments of the DVB prior to their being loaded aboard the M/V MSC FLAMINIA.

13. Stolt issued their own bills of lading to Deltech with respect to the subject shipments of the DVB.

14. During the subject voyage, the DVB shipped by Stolt and/or Deltech underwent polymerization and self-heating, leading to the emission of flammable vapors. These processes culminated in an explosion, which caused a massive fire aboard the M/V MSC FLAMINIA with resultant severe damage to the M/V MSC FLAMINIA, injury and death to members of the crew, and damage to other property and certain cargo on the M/V MSC FLAMINIA including, but not limited to, the cargoes described above.

15. By reason of the explosion and/or fire caused by the DVB, NACA has suffered direct and indirect damage in the form of exposure to third-party claims for damage to cargo and salvage and/or General Average expenses, all in amounts not yet quantified and Stolt and/or Deltech are liable to NACA for any liability, losses, and damages arising therefrom.

16. Stolt and/or Deltech possessed a superior knowledge of the nature, properties, and qualities of the subject DVB and failed to notify MSC, vessel personnel, or anyone else of the chemical's true dangerous, polymerization, incendiary, and explosive qualities, of which Stolt and/or Deltech were or should have been aware.

17. The explosion and/or fire and all of NACA's damages and losses as aforesaid are directly attributable to and caused by the aforesaid liability producing-conduct of Stolt and/or Deltech and/or their respective agents without any fault of NACA or its agents contributing thereto and, therefore, Stolt and/or Deltech should be held liable to all parties who have made claims or who might make claims against NACA herein.

18. Therefore, to the extent that NACA has liability, whether by judgment or settlement, on the claims and potential claims described above, then NACA is entitled to be fully indemnified by Stolt and/or Deltech for such liability plus the attorneys' fees and costs incurred by NACA in defending against such claims and potential claims, and NACA is also entitled to indemnity with respect to any liabilities or expenses that might be incurred relating to General Average and/or salvage.

## SECOND CAUSE OF ACTION

19. NACA repeats and realleges each and every allegation set forth above with the same force and effect as if set forth at length herein.

20. The DVB cargoes constituted goods of an inflammable, explosive, or dangerous nature.

21. Stolt and/or Deltech failed to provide MSC with accurate information and warnings regarding the DVB cargoes, including but not limited to the relevant marks, labeling, number, quantity, and weight.

22. The explosion and/or fire aboard the M/V MSC FLAMINIA and all of NACA's damages, losses, and expenses as aforesaid were directly attributable to and caused by the aforesaid negligence and failure to provide accurate information and warnings on the part of Stolt and/or Deltech and/or their respective agents without any fault of NACA or its agents contributing thereto, and therefore, Stolt and/or Deltech should be held liable to all parties who may make claims against NACA herein

23. Therefore, to the extent that NACA has liability, whether by judgment or settlement, on the claims described above, then NACA is entitled to be fully indemnified by Stolt and/or Deltech for such liability plus the attorneys' fees and costs incurred by NACA in defending against such claims and potential claims, and NACA is also entitled to indemnity with respect to any liabilities or expenses that might be incurred relating to General Average and/or salvage.

### THIRD CAUSE OF ACTION

24. NACA repeats and realleges each and every allegation set forth above with the same force and effect as if herein set forth at length.

25. The DVB manufactured, packaged, shipped, and put into the stream of commerce by Stolt and/or Deltech was unsafe and unreasonably dangerous and the cause of the casualty aboard the M/V MSC FLAMINIA.

26. Stolt and/or Deltech's carelessness, negligence, fault, willful conduct, recklessness, and strict liability producing-conduct consisted of, *inter alia*:

   a. Designing, testing, manufacturing, assembling, delivering, packaging, packing, stuffing, labeling, and/or supplying the DVB in a defective, unsafe, unreasonably dangerous, and volatile condition which caused and/or precipitated the casualty aboard the Vessel;

   b. Failing to design, manufacture, assemble, stuff, label, and package the DVB in such a way so as to prevent spontaneous combustion, polymerization, and/or explosion;

   c. Creating unreasonably dangerous conditions as referenced herein which presented a serious risk of harm to others and their property, such as NACA;

   d. Failing to adequately and properly test the DVB in question;

   e. Failing to ensure that the DVB in question was not contaminated;

   f. Failing to provide suitable tank containers for the safe carriage of the DVB in question;

   g. Failing to adequately warn individuals of the unsafe, volatile, unstable, and defective condition of the DVB in question;

   h. Failing to ensure that the DVB in question was safe for shipment aboard an ocean-going vessel;

   i. Failing to properly package the DVB in question; and

   j. Any other strict liability producing conduct.

27. The explosion and/or fire and all of NACA's damages and losses as aforesaid are directly attributable to and caused by the aforesaid liability producing-conduct of Stolt and/or

Deltech and/or their respective agents without any fault of NACA or its agents contributing thereto and, therefore, Stolt and/or Deltech should be held liable to all parties who have made claims or who might make claims against NACA herein.

28. Therefore, to the extent that NACA has liability, whether by judgment or settlement, on the claims described above, then NACA is entitled to be fully indemnified by Stolt and/or Deltech for such liability plus the attorneys' fees and costs incurred by NACA in defending against such claims and potential claims, and NACA is also entitled to indemnity with respect to any liabilities or expenses that might be incurred relating to General Average and/or salvage.

## FOURTH CAUSE OF ACTION

29. NACA repeats and realleges each and every allegation set forth above with the same force and effect as if herein set forth at length.

30. Stolt and/or Deltech owed a duty of care to the M/V MSC FLAMINIA, her owners, charterers and non-vessel operating common carriers, and everyone involved in the venture to act with reasonable care in connection with the shipment of the DVB cargoes.

31. The explosion and/or fire aboard the M/V MSC FLAMINIA was caused by Stolt and/or Deltech's carelessness, negligence, recklessness in, *inter alia*:

    a. Designing, testing, manufacturing, assembling, delivering, packaging, packing, stuffing, labeling, and/or supplying the DVB in a defective, unsafe, unreasonably dangerous, and volatile condition which caused and/or precipitated the casualty aboard the Vessel;

    b. Failing to design, manufacture, assemble, stuff, label, and package the DVB in such a way so as to prevent spontaneous combustion, polymerization, and/or explosion;

      c.     Creating unreasonably dangerous conditions as referenced herein which presented a serious risk of harm to others and their property, such as NACA;

      d.     Failing to adequately and properly test the DVB in question;

      e.     Failing to ensure that the DVB in question was not contaminated;

      f.     Failing to provide suitable tank containers for the safe carriage of the DVB in question;

      g.     Failing to adequately warn individuals of the unsafe, volatile, unstable, and defective condition of the DVB in question;

      h.     Failing to ensure that the DVB in question was safe for shipment aboard an ocean-going vessel;

      i.     Failing to properly package the DVB in question; and

      j.     Any other careless, negligent, reckless, and unreasonable conduct.

32.     The explosion and/or fire and all of NACA's damages and losses as aforesaid are directly attributable to and caused by the aforesaid liability producing-conduct of Stolt and/or Deltech and/or their respective agents without any fault of NACA or its agents contributing thereto and, therefore, Stolt and/or Deltech should be held liable to all parties who have made claims or who might make claims against NACA herein.

33.     Therefore, to the extent that NACA has liability, whether by judgment or settlement, on the claims described above, then NACA is entitled to be fully indemnified by Stolt and/or Deltech for such liability plus the attorneys' fees and costs incurred by NACA in defending against such claims and potential claims, and NACA is also entitled to indemnity with respect to any liabilities or expenses that might be incurred relating to General Average and/or salvage.

**FIFTH CAUSE OF ACTION**

34. NACA repeats and realleges each and every allegation set forth above with the same force and effect as if herein set forth at length.

35. Stolt and/or Deltech negligently misrepresented the quality, flash point, propensities, stability, packing, testing, packaging, chemical make-up, and dangers of the DVB in question without due care to ascertain the truth or accuracy of the statements, in that they represented to the public that the DVB was safe for shipment in accordance with the IMDG Code aboard an ocean-going vessel.

36. Stolt and/or Deltech knew or should have known that others in the shipping industry would believe such representations to be true and would act in reliance thereupon.

37. The explosion and/or fire aboard the M/V MSC FLAMINIA and all of NACA's losses, damages, and expenses as aforesaid were caused by Stolt and/or Deltech's negligent misrepresentations.

38. The explosion and/or fire and all of NACA's damages and losses as aforesaid are directly attributable to and caused by the aforesaid liability producing conduct of Stolt and/or Deltech and/or their respective agents without any fault of NACA or its agents contributing thereto and, therefore, Stolt and/or Deltech should be held liable to all parties who have made claims or who might make claims against NACA herein.

39. Therefore, to the extent that NACA has liability, whether by judgment or settlement, on the claims and potential claims described above, then NACA is entitled to be fully indemnified by Stolt and/or Deltech for such liability plus the attorneys' fees and costs incurred by NACA in defending against such claims and potential claims, and NACA is also entitled to

indemnity with respect to any liabilities or expenses that might be incurred relating to General Average and/or salvage.

WHEREFORE, NACA respectfully requests that:

(a) The Court grant judgment in favor of NACA and against Stolt and/or Deltech on the crossclaims;

(b) The Court award NACA all costs and attorneys' fees of this action; and

(c) The Court grant such other and further relief as it deems just and proper.

Dated: New York, New York
October 4, 2013

        Respectfully submitted,

        BROWN GAVALAS & FROMM LLP
        Attorneys for Claimant-Crossclaimant
        NACA LOGISTICS (USA) INC.

By: s/ Peter Skoufalos
    Peter Skoufalos (PS-0105)
    Patrick R. O'Mea (PO-0424)
    355 Lexington Avenue
    New York, New York 10017
    212-983-8500

To: Counsel of Record