Eugene J. O'Connor
Timothy Semenoro
Robert O'Connor
**CHALOS O'CONNOR LLP**
366 Main Street
Port Washington, New York 11050
Tel.     (516) 767-3600
Fax.     (516) 767-3605

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------- X

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF CONTI 11. CONTAINER SCHIFFAHRTS-GMBH & CO. KG MS "MSC FLAMINIA," AS OWNER, AND NSB NIEDERELBE SCHIFFAHRTSGESELLSCHAFT MBH & CO. KG, AS OPERATOR, OF THE MSC FLAMINIA FOR EXONERATION FROM OR LIMITATION OF LIABILITY | **Civil Action No.**: **12 Civ. 8892 (TPG)**  **CONTI AND NSB'S COUNTERCLAIMS AGAINST CHEMTURA AND THE BULKHAUL COMPANIES** |

Plaintiffs.

------------------------------------------------------------- X

       Plaintiffs CONTI 11. CONTAINER SCHIFFAHRTS-GMBH & CO. KG MS "MSC FLAMINIA" ("Conti"), as owner, and NSB NIEDERELBE SCHIFFAHRTSGESELLSCHAFT MBH & CO. KG ("NSB"), as operator, of the vessel MSC FLAMINIA, by their attorneys, CHALOS O'CONNOR LLP, counterclaim against Claimants Chemtura Corporation ("Chemtura"), Bulkhaul (USA) Inc., and Bulkhaul Limited (collectively, "Bulkhaul"), and allege upon information and belief as follows:

<u>**JURISDICTION, THE PARTIES, AND VENUE**</u>

1)  This is a case involving a federal statute and subject to the jurisdiction of this court pursuant to 28 U.S.C. § 1331. This is also a case of admiralty and maritime jurisdiction within the meaning of 28 U.S.C. § 1333, Rule 9(h) of the Federal Rules of Civil Procedure, and Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims.

2) At all relevant times mentioned herein, Plaintiff Conti was and still is a corporation organized and existing under the laws of Germany with a place of business in Germany, and the registered owner of the MSC FLAMINIA.

3) At all relevant times mentioned herein, Plaintiff NSB was and still is a corporation organized and existing under the laws of Germany with a place of business in Germany, and the operator, responsible for among other things the manning, stores, maintenance, and repairs, of the MSC FLAMINIA.

4) At all relevant times mentioned herein, Claimant Chemtura was and still is a corporation organized and existing under the laws of one of the States of the United States with a place of business in Philadelphia, Pennsylvania, USA, and the manufacturer, shipper, owner and/or seller of certain cargoes of Diphenylamine (hereinafter "DPA") that were carried aboard the MSC FLAMINIA.

5) At all relevant times mentioned herein, Claimant Bulkhaul (USA) Inc. was and still is a corporation organized and existing under the laws of Delaware with a place of business in Cranford, New Jersey, USA, and the manufacturer, shipper, owner, consignee, seller, and/or buyer of certain cargoes of DPA that were carried aboard the MSC FLAMINIA.

6) At all relevant times mentioned herein, Claimant Bulkhaul Limited was and still is a corporation organized and existing under the laws of a foreign country with a place of business in Middlesbrough, UK, and the manufacturer, shipper, owner, consignee, seller, and/or buyer of certain cargoes of DPA that were carried aboard the MSC FLAMINIA.

7) Venue is proper and this Court has jurisdiction over the Claimants on the basis of their systematic and continuous business contacts and presence in the United States and this district, presence of an agent for service of process in this district, and the fact that they voluntarily filed suit against Plaintiffs Conti and NSB with respect to the subject casualty in this pending action in this district.

## FACTS

8) On or about July 14, 2012, an explosion and fire occurred in the MSC FLAMINIA's number 4 cargo hold and, after attempting to fight the fire and explosion, the crew evacuated the vessel in the Atlantic Ocean approximately 1,000 nautical miles from Land's End, England (hereinafter the "casualty").

9) Several crew members were injured and, three crew members died from injuries sustained during the casualty.

10) Despite the firefighting efforts of the officers and crew, the MSC FLAMINIA suffered significant damage and many containers, were severely damaged and/or lost during the casualty.

11) On or about July 17, 2012, salvors reached the MSC FLAMINIA.

12) General Average was declared on or about August 8, 2012.

13) On or about September 9, 2012, the vessel arrived and was re-delivered by salvors to Plaintiffs Conti and NSB at Wilhelmshaven, Germany, where certain cargo was discharged and the cause of the explosion and fire is being investigated.

14) At present, the MSC FLAMINIA is in Romania awaiting further investigations, inspections and repairs.

15) The casualty, and the losses, damages, injuries, and destruction resulting therefrom were not caused or contributed to by any fault, neglect, or want of care or design on the part of the MSC FLAMINIA or those in charge of her, or by Plaintiffs Conti and NSB, or anyone for whom Plaintiffs may be responsible.

16) The casualty, and the losses, damages, injuries, and destruction resulting therefrom for which claims have been or may be made against Plaintiffs Conti and NSB, and the MSC FLAMINIA, and all other damages in any manner arising out of said explosion and fire, were occasioned and incurred without the privity or knowledge of Plaintiffs Conti and NSB, or any of their directors, officers, stockholders, or agents, and without the privity or knowledge of the Master of the MSC FLAMINIA, the superintendent, or managing agent of Plaintiffs Conti and NSB at or prior to the commencement of the voyage.

17) Based on the current evidence, it is believed that certain cargoes of DPA, which were produced, shipped, owned, sold, and/or bought by Claimants Chemtura and Bulkhaul are responsible for the explosion and fire that occurred on or about July 14, 2012 on board the MSC FLAMINIA and all of the resulting damages and losses.

## FIRST COUNTERCLAIM – Strict Liability Failure to Warn

18) Plaintiffs Conti and NSB reiterate, repeat and reallege the foregoing paragraphs numbered 1 through 17, inclusive, with the same force and effect as if fully set forth herein.

19) Claimants Chemtura and Bulkhaul, as producers, shippers, owners, sellers and/or buyers, respectively of the DPA cargos, were obligated to adequately warn and/or inform Plaintiffs Conti and NSB as to the inherently dangerous nature, including but not limited to the high shipping temperature, of the DPA cargo.

20) Claimants Chemtura and Bulkhaul' failure to adequately warn and/or inform Plaintiffs Conti and NSB, as the carrier and/or its subcontractors, of the inherently dangerous nature, including but not limited to the high shipping temperature, of the cargo makes Claimants Chemtura and Bulkhaul strictly liable for all of the damages and expenses, directly or indirectly, arising out of or resulting from such shipment pursuant to 46 U.S.C. §30701 note §4(6) (formerly, 46 U.S.C. § 1304(6)) and any and all other applicable law.

21) As a result of Claimants Chemtura and Bulkhaul's failure to adequately warn and/or inform Plaintiffs Conti and NSB, as the carrier or its subcontractors, of the inherently dangerous nature, including but not limited to the high shipping temperature, of the DPA cargo, the DPA was loaded aboard the MSC FLAMINIA, caused a fire that resulted in an explosion, and damaged the MSC FLAMINIA, her cargo, and her crew on or about July 14, 2012.

22) By reason of the premises, Plaintiffs Conti and NSB have sustained damages as nearly as can now be estimated, no part of which has been paid, although duly demanded, in an amount in excess of US $100 million.

## SECOND COUNTERCLAIM – Negligent Failure to Warn

23) Plaintiffs Conti and NSB reiterate, repeat and reallege the foregoing paragraphs numbered 1 through 22, inclusive, with the same force and effect as if fully set forth herein.

24) Claimants Chemtura and Bulkhaul, as producers, shippers, owners, sellers and/or buyers, respectively, were aware, or should have been aware, of the specific, inherent dangerous nature, including but not limited to the high shipping temperature, of the DPA cargo prior to delivery of the DPA cargo to Plaintiffs Conti and NSB.

25) Claimants Chemtura and Bulkhaul had a duty to warn Plaintiffs Conti and NSB because Plaintiffs Conti and NSB could not reasonably have known about the specific, inherent dangerous nature and/or dangerously high shipping temperature of the DPA cargo.

26) As a result of the Claimants Chemtura and Bulkhaul's failure to warn and/or inform Plaintiffs Conti and NSB of the specific, inherently dangerous nature, including but not limited to a high shipping temperature, of the DPA cargo, Plaintiffs Conti and NSB had no opportunity to act differently and the DPA cargo caused an explosion and fire, and damaged the MSC FLAMINIA, her cargo, and her crew on or about July 14, 2012.

27) By reason of the premises, Plaintiffs Conti and NSB have sustained damages as nearly as can now be estimated, no part of which has been paid, although duly demanded, in an amount in excess of US $100 million.

## THIRD COUNTERCLAIM – General Negligence

28) Plaintiffs Conti and NSB reiterate, repeat and reallege the foregoing paragraphs numbered 1 through 27, inclusive, with the same force and effect as if fully set forth herein.

29) Claimants Chemtura and Bulkhaul were obligated and duty-bound, regardless of knowledge, to properly produce, test, package, brace, stow, insulate, and store the DPA cargo prior to carriage.

30) Plaintiffs Conti and NSB could not, with the exercise of reasonable care, have perceived this inherent dangerous nature, including but not limited to the high shipping temperature, or improper production, testing, packaging, bracing, stowage, insulation, or storage prior to carriage.

31) As a result of the Claimants Chemtura and Bulkhaul's failure to ensure that the DPA cargo was properly produced, tested,  packaged, braced, stowed, insulated, and stored, and

Claimants Chemtura and Bulkhaul's own negligence, the DPA cargo caused an explosion and fire, and damaged the MSC FLAMINIA, her cargo, and her crew on or about July 14, 2012.

32) By reason of the premises, Plaintiffs Conti and NSB have sustained damages as nearly as can now be estimated, no part of which has been paid, although duly demanded, in an amount in excess of US $100 million.

## <u>FOURTH COUNTERCLAIM – Breach of Contract</u>

33) Plaintiffs Conti and NSB reiterate, repeat and reallege the foregoing paragraphs numbered 1 through 32, inclusive, with the same force and effect as if fully set forth herein.

34) Claimants Chemtura and Bulkhaul's DPA cargo was transported aboard the MSC FLAMINIA pursuant to contracts of carriage evidenced by certain bills of lading.

35) Pursuant to these bills of lading, Claimants Chemtura and Bulkhaul were required to fully inform the Carrier in writing of the precise and accurate details of goods with a dangerous or hazardous nature, including but not limited to high shipping temperatures, such as DPA, and of any special precautions or handling required for such goods.

36) In addition, under these bills of lading, Claimants Chemtura and Bulkhaul shall be fully liable for and shall indemnify, hold harmless, and defend the Carrier, its servants and agents, and subcontractors, including Plaintiffs Conti and NSB, and any third-party for all loss, damage, delay, personal injury, death or expenses including fines and penalties, and all reasonable legal expenses and costs caused to the Plaintiffs Conti and NSB, the vessel, any cargo, and other property on board or ashore, arising from the DPA cargo and or for failure to provide adequate information about the inherent dangerous nature, including but not limited to the high shipping temperature, of the DPA cargo, whether or not Claimants

Chemtura and Bulkhaul were aware of such inherent dangerous nature, including but not limited to the high shipping temperature, of the DPA cargo or not.

37) In breach of said bill of lading terms, Claimants Chemtura and Bulkhaul failed to adequately identify and inform Plaintiffs Conti and NSB of the inherently dangerous nature, including but not limited to a high shipping temperature, of the DPA cargo.

38) As a result of the Claimants Chemtura and Bulkhaul's breach of the express terms of the subject bills of lading the DPA cargo caused an explosion and fire and damaged the MSC FLAMINIA, her cargo, and her crew on or about July 14, 2012.

39) By reason of the premises, Plaintiffs Conti and NSB have sustained damages as nearly as can now be estimated, no part of which has been paid, although duly demanded, in an amount in excess of US $100 million.

## FIFTH COUNTERCLAIM – Negligent Misrepresentation

40) Plaintiffs Conti and NSB reiterate, repeat and reallege the foregoing paragraphs numbered 1 through 40, inclusive, with the same force and effect as if fully set forth herein.

41) In accepting and transporting the DPA cargo, Plaintiffs Conti and NSB relied upon certain express statements made by Claimants Chemtura and Bulkhaul, including but not limited to the associated UN Identification Number 3082, IMDG Class 9 hazardous cargo designation and corresponding Category A Stowage and Segregation designation (allowing above or below deck stowage) and without any indication of the high shipping temperature of the cargo.

42) Claimants Chemtura and Bulkhaul provided this information to guide Plaintiffs Conti and NSB; failed to use reasonable care in doing so; and knew or should have known that

Plaintiffs Conti and NSB would rely on this information for particular purposes, including whether to accept the cargo and how to stow the cargo on board the MSC FLAMINIA.

43) Moreover, by acting on the information contained in these express statements, the DPA cargo caused an explosion and fire and damaged the MSC FLAMINIA, her cargo, and her crew on or about July 14, 2012.

44) By reason of the premises, Plaintiffs Conti and NSB have sustained damages as nearly as can now be estimated, no part of which has been paid, although duly demanded, in an amount in excess of US $100 million.

## SIXTH COUNTERCLAIM – Indemnity

45) Plaintiffs Conti and NSB reiterate, repeat and reallege the foregoing paragraphs numbered 1 through 45, inclusive, with the same force and effect as if fully set forth herein.

46) The explosion and fire aboard the MSC FLAMINIA was due to the wrongful acts or omissions, including breach of contract, breach of express or implied warranty, etc., or other misconduct of Claimants Chemtura and Bulkhaul.

47) The explosion and fire aboard the MSC FLAMINIA was not caused or contributed to by any fault or neglect on the part of the Plaintiffs Conti or NSB and/or its agents, servants, or employees.

48) By reason of the explosion and fire aboard the MSC FLAMINIA, Plaintiffs Conti and NSB has suffered damages and exposure to third-party claims, including damage to cargo, property, salvage claims, personal injury, wrongful death and survivorship claims; General Average expenses; and claims for indemnity and contribution from other parties to this lawsuit, in an estimated aggregate amount in excess of US $100 million.

49) As such, the fire and explosion and all of Plaintiffs Conti and NSB's damages and losses as aforesaid are directly attributable to and caused by the aforesaid wrongful acts or omissions or other misconduct of Claimants Chemtura and Bulkhaul and/or their agents, without any fault of Plaintiffs Conti and NSB or its agents contributing thereto, and, therefore, Claimants Chemtura and Bulkhaul should be held solely and/or jointly liable to Plaintiffs Conti and NSB and/or all parties who have made claims against Plaintiffs Conti and NSB for all liability, losses, and damages arising therefrom, including legal fees and disbursements incurred in defense of third-party claims.

50) In the event that Plaintiffs Conti and NSB are nevertheless held liable to any party to this action, or any other party to any other proceeding in the United States or abroad arising out of or relating to the subject casualty, said liability being expressly denied by Plaintiffs Conti and NSB, then such liability derives in whole or in part from the aforesaid wrongful acts or omissions or other misconduct of Claimants Chemtura and Bulkhaul, their officers, agents, servants, and employees and, therefore, Plaintiffs Conti and NSB should be granted full recovery over and against, and be indemnified by, or secure contribution from, Claimants Chemtura and Bulkhaul for all sums so recovered against Plaintiffs Conti and NSB, including attorneys' fees, expenses, interest, and costs.

**SEVENTH COUNTERCLAIM by Conti only – General Average**

51) Plaintiff Conti  reiterates, repeats and realleges the foregoing paragraphs numbered 1 through 50, inclusive, with the same force and effect as if fully set forth herein.

52) The Claimants Chemtura and Bulkhaul's DPA cargo was transported aboard the MSC FLAMINIA pursuant to contracts of carriage evidenced by certain bills of lading.

53) Pursuant to these bills of lading, in the event of an accident, danger, damage or disaster that prevents the voyage from being completed, Claimants Chemtura and Bulkhaul are obligated to, joint and severally, contribute to the payment of any sacrifices, losses or expenses in General Average as determined by the appointed General Average Adjuster.

54) In addition, General Average is to be adjusted in London pursuant to the York-Antwerp Rules of 1974, as amended in 1990.

55) On or about July 14, 2012, the MSC FLAMINIA suffered an explosion and fire, the vessel was salvaged, and eventually arrived in Germany, where certain cargoes were discharged.

56) As a result of this casualty, the MSC FLAMINIA was heavily damaged and large sums of money were expended in the salvage of the vessel and her cargo.

57) Pursuant to the contracts of carriage and applicable general maritime law, General Average was declared and various parties, including the owners of certain cargoes, are now obligated to contribute in General Average.

58) By reason of the premises, Plaintiff Conti requests a declaration that it is entitled to General Average contributions from those cargo claimants who are parties to this action and will be identified in the General Average Adjustment to owe Conti in the amount to be determined by said Adjuster.

**WHEREFORE**, Plaintiffs Conti and NSB pray that:

A.      judgment be entered in favor of Plaintiffs Conti and NSB and against Claimants Chemtura and Bulkhaul for an award for damages to the Plaintiffs Conti and NSB, herein together with the costs and disbursements of this action;

B.      the Claimants Chemtura and Bulkhaul be ordered to indemnify and/or contribute to any third-party claims against Plaintiffs Conti and NSB, including legal fees and disbursements incurred in defense of third-party claims; and

C.      that judgment be entered in favor of Plaintiffs Conti and NSB for such other and further relief as this Court deems just and proper.

Dated: October 25, 2013
        Port Washington, NY

CHALOS O'CONNOR LLP

*/s / Eugene J. O'Connor*
_____

Eugene J. O'Connor
Timothy Semenoro
Robert O'Connor
366 Main Street
Port Washington, New York 11050
Tel: (516) 767-3600 / Fax: (516) 767-3605

James E. Ryan
DOUGHERTY, RYAN, GIUFFRA,
ZAMBITO & HESSION
250 Park Avenue,  Floor
New York, New York 10177
Tel: (212) 889-2300 / Fax: (646) 485-5630

*Attorneys for CONTI 11. CONTAINER SCHIFFAHRTS-GMBH & CO. KG MS "MSC FLAMINIA" and NSB NIEDERELBE SCHIFFAHRTSGESELLSCHAFT MBH & CO. KG*