Joseph J. Perrone
Giuliano McDonnell & Perrone, LLP
*Attorneys for DELTECH CORPORATION*
494 Eighth Avenue, 7th Floor
New York, New York 10001
Telephone: (646) 328-0120
Fascimile:  (646) 328-0121

- and -

Charles E. Schmidt
Kennedy Lillis Schmidt & English
*Attorneys for DELTECH EUROPE, LTD.*
  *& NATIONAL FIRE UNION INS. CO. OF PITTS. PA.*
  *a/s/o DELTECH CORPORATION*
75 Maiden Lane, Suite 402
New York, New York 10038-4816
Telephone: (212) 430-0800
Facsimile:  (212) 430-08510

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF CONTI 11. CONTAINER SCHIFFAHRTS-GMBH & CO. KG MS "MSC FLAMINIA", AS OWNER, AND NSB NIEDERELBER SCHIFFAHRTSGESELLSCHAFT MBH & CO. KG, AS OPERATOR, OF THE MSC FLAMINIA FOR EXONERATION FROM LIMITATION OF LIABILITY<br><br>                              Plaintiffs. | 12 Civ. 8892 (AJN)<br>and consolidated actions<br><br>**CROSS CLAIMS**<br>**OF DELTECH CORPORATION**<br>**AGAINST CHEMTURA CORPORATION,**<br>**BULKHAUL LTD., and**<br><u>**BULKHAUL USA INC.**</u> |

DELTECH CORPORATION, by its attorneys, Giuliano McDonnell & Perrone, LLP, and DELTECH EUROPE, LTD. & NATIONAL FIRE UNION INSURANCE CO. OF PITTSBURGH, PA, in its capacity as subrogated insurer, by their attorneys Kennedy Lillis Schmidt & English (collectively referred to herein solely for purposes of this pleading, "Deltech") as and for their cross claims against claimants Chemtura Corporation and Chemtura

Italy S.R.L. ("collectively, Chemtura") and Bulkhaul UK Ltd. and Bulkhaul USA, Inc. (collectively, "Bulkhaul") alleges upon information and belief as follows:

### JURISDICTION, PARTIES AND VENUE

1. This court has admiralty and maritime subject matter jurisdiction pursuant to 28 U.S.C. § 1333, Rule 9(h) the Federal Rules of the Civil Procedure and Rule F of the Supplemental Rules for certain admiralty in maritime claims.

2. At all times relevant hereto, Deltech Corporation was and still is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 11911 Scenic Highway, Baton Rouge, Louisiana, USA.

3. At all times relevant hereto, National Union Fire Insurance Company of Pittsburgh, PA was and still is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with an office and place of business at c/o AI Marine Adjusters, 175 Maiden Lane, New York, NY., and is the subrogated transit insurer of the cargoes shipped by Deltech as more specifically enumerated below.

4. At all times relevant hereto, Chemtura Corporation was and still is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 1818 Market Street, Philadelphia, Pennsylvania, USA.

5. At all times relevant hereto, Chemtura Italy S.R.L. was and still is a corporation or other legal entity organized and existing under foreign law with its principal place of business in Latina Scalo, Italy.

6. At all times relevant hereto, Bulkhaul UK Ltd. was and still is a business entity organized and existing under the laws of United Kingdom with its principal place of business at Brignell Road, Riverside Park Industrial State, Middlesbrough, TS2 1PS, England.

7.      At all times relevant hereto, Bulkhaul USA, Inc. was and still is a corporation organized and existing under the laws of the State of New Jersey with a principal office and place of business at 6 Commerce Drive, Cranford, New Jersey, USA.  Upon information and belief, Bulkhaul USA, Inc. is a wholly owned subsidiary of Bulkhaul Ltd.

8.      These cross claims are part of the larger proceeding under Civil Action No. 12 Civ. 8892 and, as such, venue is proper within the United States District Court for the Southern District of New York.

## FIRST CAUSE OF ACTION - NEGLIGENCE

9.      Deltech was the shipper, consignee and owner of three (3) shipments of Divinylbenzene ("DVB") that were shipped under Stolt bill of lading 18314233312 and others and MSC bills of lading MSCUOE640393, MSCUOE640450, and MSCUOE640351, in three (3) twenty-foot (20') insulated containers numbered UTCU459701-3, UTCU461521-0, and UTCU473373-7 for carriage aboard the MV MSC Flaminia.

10.     Deltech was also the shipper of two (2) shipments of tertiary butyl styrene ("TBS") that were shipped under Newport bills of lading 56190594 and 56190604 and MSC bills of lading MSCUOE641037 and MSCUOE641078, in two (2) twenty-foot (20') containers numbered GESU 801685-7 and GESU 802272-0 for carriage aboard the MV MSC Flaminia (the DVB and TSB shipments, collectively, "Deltech's cargoes").

11.     DVB is a chemical product that requires special handling, including that it must be kept from sources of heat.  Deltech provided very specific instructions to Stolt, and upon information and belief, Stolt provided these instructions to the ocean carriers, including Plaintiffs and Mediterranean Shipping Company ("MSC") who were responsible for safety of the MV

3

MSC Flaminia. These instructions required MSC to stow the DVB on deck and away from heat sources. These instructions were not followed.

12. Chemtura produces Diphenylamine ("DPA"), a product when shipped as a liquid is known as "DPA liquid." For DPA liquid to remain in liquid form during transit, it must be kept hot.

13. In or around June 2012, Chemtura shipped ten (10) containers of DPA liquid that were carried aboard the MV MSC Flaminia.

14. Chemtura's ten (10) tank containers of DPA liquid were carried pursuant to bills of lading issued by Bulkhaul, which was operating as an NVOCC with respect to this shipment.

15. Chemtura and/or Bulkhaul, in preparing their transportation documents, including the Bulkhaul bills of lading, failed to disclose to the carriers that the DPA liquid cargo was a heated or "HOT" cargo, as it was being shipped at an elevated temperature.

16. The ten (10) containers of DPA liquid were stored in hold number four aft in the MV MSC Flaminia and surrounded Deltech's DVB cargo.

17. The stowage by the owners, operators, charters and agents of the MV MSC Flaminia of the ten (10) containers of hot DPA liquid in close proximity to Deltech's DVB cargo directly contradicted and violated Deltech's specific instructions to store the DVB on deck and away from heat sources. Chemtura's and/or Bulkhaul's failure to properly, accurately and sufficiently describe the hot DPA liquid in the shipping documents, including the bills of lading, constitutes negligence that caused or contributed to causing plaintiffs' and claimants' losses and damages.

18. Had Chemtura and/or Bulkhaul properly identified, labeled and/or prepared the bills of lading and ten (10) tank of containers of DPA liquid cargo that reflected its elevated

temperature, the MV MSC Flaminia's owners, operators, charters would not or should not have stored the "HOT" DPA liquid near or around Deltech's DVB cargo.

19.     On or about July 14, 2012, a fire and explosion occurred aboard the MV MSC Flaminia. It is alleged that the fire and explosion started in the vessel's hold number 4, where Deltech's DVB cargo and Chemtura's DPA liquid cargo, along with approximately 300 other cargo containers, were stored by the owners/operators/charters of the vessel.

20.     The destruction of Deltech's cargoes in the fire and explosion resulted in damages to Deltech, Deltech Europe, Ltd. & National Fire Union Insurance Co. Of Pittsburgh, PA in the amount of $586,998.52, as nearly as same can now be computed.

21.     The Plaintiffs and Claimants in this proceeding have asserted in pleadings that the cause of the fire and/or explosion was the "polymerization and self-heating of the DVB." While those allegations have been and continue to be denied by Deltech, if Deltech's DVB did undergo polymerization, as alleged, and played any role in causing the fire and/or explosions aboard the vessel, such polymerization would not have occurred had the DVB been stored on deck, as Deltech instructed, or not been subjected to heating by Chemtura's hot DPA liquid cargo, and/or other cargoes, during the course of the voyage.

22.     Chemtura's and/or Bulkhaul's failure to properly describe and identify the dangerous characteristics of the DPA cargo, including that it was being shipped at an elevated temperature and therefore was a risk to temperature sensitive cargo, such as DVB, constitute negligent acts and omissions. In the event that Deltech's DVB cargo polymerized and contributed to causing the explosion and/or fire on board the MV MSC Flaminia, as alleged, Chemtura's and/or Bulkhaul's negligent acts and omissions directly caused this event and all of the resulting damages. Accordingly, Chemtura and/or Bulkhaul are liable to Deltech for the loss

of its DVB cargo for any losses or damages that Deltech has or will suffer in the form of exposure to the claims and counter-claims asserted against Deltech in this litigation and related litigation by the plaintiffs, cargo claimants, salvage claimants and claims for general average.

23. Chemtura and/or Bulkhaul possessed superior knowledge of the nature, properties and qualities of their DPA liquid cargo, especially the dangers that it would cause to other heat sensitive cargoes, and yet negligently failed to disclose this information to plaintiffs, MSC, vessel personnel, Deltech and others.

24. The fire and explosion aboard the MV MSC Flaminia occurred without any fault or responsibility of Deltech or its agents.

25. Wherefore, Deltech is entitled to judgment on its affirmative claims for the loss of its cargoes against Chemtura and Bulkhaul; to judgment as against Chemtura and Bulkhaul on the claims asserted and potential claims which may be asserted by plaintiffs, MSC and cargo claimants herein; and is entitled to be fully indemnified by Chemtura and/or Bulkhaul for such liability, and for the attorneys' fees and costs incurred by Deltech in defending such claims; and further, Deltech is also entitled to indemnity and/or contribution with respect to any liabilities or expenses that might be incurred or imposed relating to salvage and/or general average.

## SECOND CAUSE OF ACTION – FAILURE TO WARN

26. Deltech repeats and realleges each and every allegation set forth above with the same force and effect as if set forth herein in full.

27. The DPA liquid cargo posed a direct danger to other cargo and to the vessel if not handled properly and stored separately from heat-sensitive cargo such as DVB.

28. Chemtura and/or Bulkhaul failed to provide MSC with accurate information, including the elevated temperature of the DPA cargo, and other warnings and risks regarding the

6

DPA cargo.  Additionally, Chemtura and/or Bulkhaul failed to properly mark, label, categorize and provide instructions for the safe carriage of the DPA liquid cargo.

29. The explosion and/or fire aboard the MV MSC Flaminia and all of the resulting losses, damages and expenses were directly caused and attributable to Chemtura's and/or Bulkhaul's failure to provide accurate and complete information and warnings as to the nature and characteristics of the DPA and, therefore, Chemtura and/or Bulkhaul are liable to all parties, including Deltech, who have asserted claims in this litigation.

30. Wherefore, Deltech is entitled to judgment on its affirmative claims for damage to its cargoes against Chemtura and Bulkhaul; Deltech is also entitled to judgment as against Chemtura and Bulkhaul on the claims asserted and potential claims which may be asserted by plaintiffs, MSC and cargo claimants herein; and is entitled to be fully indemnified by Chemtura and/or Bulkhaul for such liability and for the attorneys' fees and costs incurred by Deltech in defending such claims, and for any liabilities or expenses that Deltech may incur or be imposed relating to the salvage and/or general average claims.

**THIRD CAUSE OF ACTION – STRICT LIABILITY**

31. Deltech repeats and realleges each and every allegation set forth above with the same force and effect as if set forth herein at full.

32. The DPA cargo was manufactured, packaged, prepared, shipped and placed into the stream of commerce by Chemtura and was unsafe and unreasonably dangerous and was the direct and proximate cause of the casualty aboard the MV MSC Flaminia described above.

33. Chemtura and Bulkhaul, acting as Chemtura's agent, were careless, negligent, reckless and are subject to strict liability for conduct that consisted of: (a) creating,

7

manufacturing, packaging, loading, labeling and/or supplying the DPA in a defective, unsafe and unreasonably dangerous condition which caused or was the catalyst that caused the casualty aboard the MV MSC Flaminia; (b) in failing to manufacture, package, ship and label the DPA in such a way as to prevent its heat from escaping its packaging; (c) by creating an unreasonably dangerous condition as referred to herein, including the serious risk of harm it posed to other cargo aboard the vessel, including Deltech's DVB; (d) in failing to adequately and properly warn the carrier of the potential hazards posed by the DPA liquid cargo; (e) in failing to provide suitable tank and containers for the safe carriage of the DPA liquid cargo; (f) in failing to warn individuals and the carriers of the unsafe and defective nature of the DPA liquid cargo; (g) in failing to ensure the packaging of the DPA liquid cargo was properly identified on the containers' placards and bills of lading that it was being shipped at an elevated temperature and, therefore, posed a risk to other cargoes and the vessel if not properly stored; and (h) any other strict liability producing conduct whether by omission or commission engaged in by Chemtura and/or Bulkhaul.

34. The explosion and/or fire aboard the MV MSC Flaminia and all of the resulting losses, damages and expenses were directly caused by the aforesaid failures of Chemtura and/or Bulkhaul to provide accurate and complete information and warnings as to the nature and characteristics of the DPA and, therefore, Chemtura and/or Bulkhaul should be held liable to all parties who have made claims against Deltech in this litigation.

35. Wherefore, Deltech is entitled to judgment on its affirmative claims for the loss of its cargoes against Chemtura and Bulkhaul; to judgment as against Chemtura and Bulkhaul on the claims asserted and potential claims which may be asserted by plaintiffs, MSC and cargo claimants herein; and is entitled to be fully indemnified by Chemtura and/or Bulkhaul for such

liability, and for the attorneys' fees and costs incurred by Deltech in defending such claims; and further, Deltech is also entitled to indemnity and/or contribution with respect to any liabilities or expenses that might be incurred or imposed relating to salvage and/or general average.

## FOURTH CAUSE OF ACTION

36. Deltech repeats and realleges each and every allegation set forth above with the same force and effect as if set forth herein in full.

37. Chemtura and/or Bulkhaul owed a duty to the MV MSC Flaminia, her owners, charterers, other carriers, plaintiffs, MSC, Deltech and other cargo owners to act with reasonable care in connection with its shipping of the DPA liquid cargoes.

38. Chemtura and/or Bulkhaul, acting as Chemtura's agent, were careless, negligent and reckless and are, therefore, subject to strict liability for conduct that consisted of: (a) creating, manufacturing, packaging, loading, labeling and/or supplying the DPA liquid in a defective, unsafe and unreasonably dangerous condition which caused or was the catalyst that caused the casualty aboard the MV MSC Flaminia; (b) in failing to manufacture, package, ship and label the DPA in such a way as to prevent its heat from escaping its packaging; (c) by creating an unreasonably dangerous condition as referred to herein, including the serious risk of harm it posed to other cargo aboard the vessel, including Deltech's DVB; (d) in failing to adequately and properly warn the carrier of the potential hazards posed by the DPA liquid cargo; (e) in failing to provide suitable tank and containers for the safe carriage of the DPA liquid cargo; (f) in failing to warn individuals and the carriers of the unsafe and defective nature of the DPA liquid cargo; (g) in failing to ensure that the DPA liquid cargo was properly marked and identified on its containers' placards and noted in the bills of lading that it was being shipped at

an elevated temperature and, therefore, posed a risk to other cargoes and the vessel if not properly stored; and (h) any other strict liability producing conduct whether by omission or commission engaged in by Chemtura and/or Bulkhaul.

39.     The explosion and/or fire aboard the MV MSC Flaminia and all of the resulting losses, damages and expenses were directly caused by the aforesaid failures of Chemtura and/or Bulkhaul to provide accurate and complete information and warnings as to the nature and characteristics of the DPA and, therefore, Chemtura and/or Bulkhaul should be held liable to all parties who have made claims against Deltech in this litigation.

40.     Wherefore, Deltech is entitled to judgment on its affirmative claims for the loss of its cargoes against Chemtura and Bulkhaul; to judgment as against Chemtura and Bulkhaul on the claims asserted and potential claims which may be asserted by plaintiffs, MSC and cargo claimants herein; and is entitled to be fully indemnified by Chemtura and/or Bulkhaul for such liability, and for the attorneys' fees and costs incurred by Deltech in defending such claims; and further, Deltech is also entitled to indemnity and/or contribution with respect to any liabilities or expenses that might be incurred or imposed relating to salvage and/or general average.

## FIFTH CAUSE OF ACTION

41.     Deltech repeats and realleges each and every allegation set forth above with the same force and effect as if set forth herein in full.

42.     Chemtura and/or Bulkhaul breached their implied and/or express contractual warranties in that the DPA liquid in question was defective, improperly packaged or stored, improperly heated, improperly labeled, labeled with inadequate warnings and/or inaccurate representations and otherwise unreasonably dangerous. Further, the DPA liquid was improperly loaded into the shipping containers, loaded into improper shipping containers for cargo as

10

prepared, shipped with improper, incomplete or erroneous instructions and was generally unfit for its intended purpose or carriage aboard the MV MSC Flaminia.

43.     Chemtura and/or Bulkhaul breached their warranty of fitness for a particular purpose by negligently preparing its DPA liquid cargo for shipment aboard the MV MSC FLAMINIA in that the DPA liquid was loaded and shipped at an unreasonably high temperature thereby creating a safety risk to vessel and its cargo.

44.     Chemtura and/or Bulkhaul were at all times material hereto obligated to exercise due diligence and proper care in the performance of their business operations and services and to perform said operations in a safe, skillful and workman like manner.

45.     The events aboard the MV MSC Flaminia in July 2012 and the losses and damages resulting therefrom were caused by Chemtura's and/or Bulkhaul's breaches of their express and implied warranties of workman-like performance related to the services provided by Chemtura and/or Bulkhaul and owed to the MV MSC Flaminia, its owners and charterers, and to the owners of the cargo aboard the vessel.

46.     The explosion and/or fire aboard the MV MSC Flaminia and all of the resulting losses, damages and expenses aforesaid were directly caused or attributable to the aforesaid failures of Chemtura and/or Bulkhaul to provide accurate and complete information and warnings as to the nature and characteristics of the DPA and, therefore, Chemtura and/or Bulkhaul should be held liable to all parties who have made claims against Deltech in this litigation.

47.     Wherefore, Deltech is entitled to judgment on its affirmative claims for the loss of its cargoes against Chemtura and Bulkhaul; to judgment as against Chemtura and Bulkhaul on the claims asserted and potential claims which may be asserted by plaintiffs, MSC and cargo

claimants herein; and is entitled to be fully indemnified by Chemtura and/or Bulkhaul for such liability, and for the attorneys' fees and costs incurred by Deltech in defending such claims; and further, Deltech is also entitled to indemnity and/or contribution with respect to any liabilities or expenses that might be incurred or imposed relating to salvage and/or general average.

## SIXTH CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION

48. Deltech repeats and realleges each and every allegation set forth above with the same force and effect as if set forth herein in full.

49. Chemtura and/or Bulkhaul, acting as its agent, negligently misrepresented the qualities, propensities, flashpoint, loading and packaging requirements, chemical makeup, dangers posed to other cargoes, and other characteristics of the DPA liquid in question. They further represented to the parties herein and the public that the DPA liquid was safe for shipment in accordance with the IMDG code and the labeling it affixed to its product and that it would cause no danger to the MV MSC Flaminia or any of its cargoes.

50. Chemtura and/or Bulkhaul knew or should have known that the MV MSC Flaminia, its owners, charterers, operators and agents would rely upon their representations regarding the nature of the DPA liquid and how it should be properly handled and stored aboard the vessel.

51. The July 2012 incident aboard the MV MSC Flaminia and the losses and damages resulting therefrom were caused by Chemtura and/or Bulkhaul's misrepresentations and other parties' reliance upon those misrepresentations.

52. The explosion and/or fire aboard the MV MSC Flaminia and all of the resulting losses, damages and expenses aforesaid were directly caused or attributable to the aforesaid

failures of Chemtura and/or Bulkhaul to provide accurate and complete information and warnings as to the nature and characteristics of the DPA and, therefore, Chemtura and/or Bulkhaul should be held liable to all parties who have made claims against Deltech in this litigation.

     53.    Wherefore, Deltech is entitled to judgment on its affirmative claims for the loss of its cargoes against Chemtura and Bulkhaul; to judgment as against Chemtura and Bulkhaul on the claims asserted and potential claims which may be asserted by plaintiffs, MSC and cargo claimants herein; and is entitled to be fully indemnified by Chemtura and/or Bulkhaul for such liability, and for the attorneys' fees and costs incurred by Deltech in defending such claims; and further, Deltech is also entitled to indemnity and/or contribution with respect to any liabilities or expenses that might be incurred or imposed relating to salvage and/or general average.

WHEREFORE, Deltech respectfully request that:

    I.    This Court grant judgment in favor of Deltech and against Chemtura and Bulkhaul on these cross-claims;

    II.    This Court award Deltech all costs, expenses and attorneys' fees incurred by Deltech in this action; and

    III.    This Court award judgment in favor of National Union Fire Insurance Company of Pittsburg PA in the sum of $586,998.52 for the loss of Deltech's cargoes, plus interest and costs;

    IV.    This Court grant such other, further and different relief as it deems just, proper and equitable.

Dated: October 28, 2013
       New York, New York

RESPECTFULLY SUBMITTED,

GIULIANO MCDONNELL & PERRONE, LLP
*Attorneys for Claimant*
DELTECH CORPORATION

By: *Joseph J. Perrone*
    Joseph J. Perrone, Esq.

- and -

Charles E. Schmidt
KENNEDY LILLIS SCHMIDT & ENGLISH
Attorneys for Claimant
DELTECH EUROPE, LTD.
& NATIONAL FIRE UNION INS. CO.
OF PITTSBURGH PA. a/s/o DELTECH
CORPORATION

By: *Charles E. Schmidt*
    Charles E. Schmidt, Esq.

TO:    ALL COUNSEL OF RECORD.

S:\Files\5765_MSC_FLAMINIA\LEGAL+DISCOVERY\Deltech CrossClaims (final draft)-10 25 13(CES).docx