BROWN GAVALAS & FROMM LLP
Attorneys for Claimants-Crossclaimants
BULKHAUL LTD. and BULKHAUL (USA) INC.
355 Lexington Avenue
New York, New York 10017
212-983-8500

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In the Matter of the Complaint of:

CONTI 11. CONTAINER SCHIFFAHRTS-
GMBH & CO. KG MSC "FLAMINIA," AS
OWNER, AND NSB NIEDERELBE
SCHIFFAHRTSGESELLSCHAFT MBH &
CO. KG, AS OPERATOR, OF THE MSC
FLAMINIA FOR EXONERATION FROM OR
LIMITATION OF LIABILITY.
---------------------------------------------------------X

Case No.: 12 Civ. 8892 (AJN)

**CROSSCLAIMS OF BULKHAUL
LTD. AND BULKHAUL (USA) INC.
AGAINST CHEMTURA CORP.,
CHEMTURA ITALY S.R.L.,
HUNTSMAN CORPORATION,
AND PANALPINA, INC.**

Claimants BULKHAUL LTD. and BULKHAUL (USA) INC. (together, "Bulkhaul"), by their attorneys, Brown Gavalas & Fromm LLP, in addition to the claims previously asserted by Bulkhaul against MSC Mediterranean Shipping Company, S.A. ("MSC"), Deltech Corporation ("Deltech"), Stolt Tank Containers B.V. ("Stolt"), and plaintiffs in this action, hereby crossclaim against claimants Chemtura Corp. ("Chemtura"), Chemtura Italy S.r.l. ("Chemtura Italy"), Huntsman Corporation ("Huntsman"), and Panalpina, Inc. ("Panalpina") and, upon information and belief, allege as follows:

1. This Court has subject matter jurisdiction under 28 U.S.C. 1333 and Rule 9(h) of the Federal Rules of Civil Procedure.

2. Bulkhaul Ltd. is a foreign corporation existing under and by virtue of the laws of a foreign country with a place of business in a foreign country.

3. Bulkhaul (USA) Inc. is a foreign corporation existing under and by virtue of the laws of the state of Delaware with a place of business in the State of New Jersey.

4. Chemtura at all relevant times was a business entity organized and existing under the laws of Delaware with an office and place of business in Middlebury, Connecticut, and the manufacturer, shipper, owner, consignee, seller, and/or buyer of certain cargoes of Diphenylamine ("DPA") that were carried aboard the vessel M/V MSC FLAMINIA (the "Vessel").

5. Chemtura Italy at all relevant times was a business entity organized and existing under the laws of a foreign country with an office and place of business in Latina, Italy, and the manufacturer, shipper, owner, consignee, seller, and/or buyer of certain cargoes of DPA that were carried aboard the Vessel.

6. Huntsman at all relevant times was a business entity organized and existing under the laws of the state of Delaware with an office and place of business in Geismar, Louisiana, and the manufacturer, shipper, owner, consignee, seller, and/or buyer of certain cargoes of DPA that were carried aboard the Vessel.

7. Panalpina at all relevant times was a business entity organized and existing under the laws of a foreign country with an office and place of business in New Orleans, Louisiana, and was the forwarder of certain cargoes of Divinylbenzene ("DVB") that were carried aboard the Vessel.

8. Upon information and belief, on or about July 14, 2012, an explosion and/or fire occurred aboard the Vessel that caused damage to certain containers, tanktainers, and cargo then on board (the "Incident"). As a result of the Incident, the Vessel was delayed and re-routed and did not arrive at its intended destination.

9. Bulkhaul was owner of approximately 38 tanktainers that were aboard the Vessel and which are believed to be damaged or destroyed as a result of the Incident. Bulkhaul may

also be required to pay general average and/or salvage contributions with respect to any tanktainers that are salvaged.

10. As non-vessel operating common carrier, Bulkhaul issued bills of lading for 26 tanktainers that were aboard the Vessel at the time of the Incident, and the owners of the cargo carried in these tanktainers may assert claims against Bulkhaul for damage, loss, non-delivery, and/or delay to the contents of the tanktainers, including these cargo owners' contributions to general average and/or salvage. A description of the cargo carried in tanktainers for which Bulkhaul issued bills of lading is attached hereto as Exhibit "A".

11. On or about July 1, 2012, Bulkhaul issued three bills of lading, numbered R12NWO747799, R12NWO748796, and R12NWO749889, for ten tanktainers said to contain DPA. The shipper named on each bill of lading is Chemtura. The consignee on each of these bills of lading is Chemtura Italy or the Chemtura Group.

12. The DPA was supplied and loaded into tanktainers by or on behalf of Huntsman, and/or its agents.

13. Various parties to the proceedings for Exoneration From or Limitation of Liability filed by Plaintiffs have alleged that the cargo of DPA individually, or because of its proximity to other cargoes aboard the Vessel, caused the Incident aboard the Vessel and the ensuing damage alleged to have occurred to the Vessel and other property aboard the Vessel and injury and death.

14. Bulkhaul denies any liability with respect to, arising out of, arising from, and or/in connection with the Incident and, therefore denies any liability for the Incident, but may face claims from various parties simply as the owner of the tanktainers in which the DPA was transported or as a non-vessel operating common carrier.

## AS AND FOR A FIRST CROSSCLAIM AGAINST
## CHEMTURA, CHEMTURA ITALY, AND HUNTSMAN

15. Bulkhaul repeats and realleges each and every allegation set forth above with the same force and effect as if herein set forth at length.

16. Chemtura, Chemtura Italy, and Huntsman were, and are, the designers, manufacturers, commercial suppliers, testers, packers, sellers, packagers, labelers, owners, shippers, and exporters of the DPA, which Chemtura, Chemtura Italy, and Huntsman, and/or their agents tendered for shipment aboard the Vessel pursuant to certain terms and conditions.

17. Chemtura, Chemtura Italy, and Huntsman possessed a superior knowledge of the nature, properties, and qualities of the subject DPA and failed to notify Bulkhaul, vessel personnel, or anyone else of the chemical's true dangerous, incendiary and explosive qualities, of which Chemtura, Chemtura Italy, and Huntsman should have been aware.

18. During the subject voyage, the DPA shipped and owned by Chemtura, Chemtura Italy, and Huntsman caused and/or contributed to an explosion and/or fire aboard the Vessel, with resultant damage to the Vessel, injury and death to members of the crew, and damage to other property and certain cargo on the Vessel.

19. By reason of the explosion and/or fire caused by the DPA, Bulkhaul has suffered direct and indirect damage in the form of damage and/and or loss of its tanktainers, exposure to third-party claims for damage to the Vessel and cargo and salvage and/or General Average expenses, all in amounts not yet quantified and Chemtura, Chemtura Italy, and Huntsman are liable to Bulkhaul for any liability, losses, and damages arising therefrom.

20. The explosion and/or fire and all of Bulkhaul's damages and losses as aforesaid are directly attributable to and caused by the aforesaid liability-producing conduct of Chemtura, Chemtura Italy, and Huntsman, and/or their respective agents, without any fault of Bulkhaul or

4

its agents contributing thereto and, therefore, Chemtura, Chemtura Italy, and Huntsman should be held liable to all parties who have made claims or who might make claims against Bulkhaul herein.

21.     Therefore, to the extent that Bulkhaul may be found liable, whether by judgment or settlement, on the claims and potential claims arising from the Incident, said liability derives in whole or in part from the negligence, fault, neglect, want of due care, wrongful acts or omissions or other misconduct of Chemtura, Chemtura Italy, and Huntsman and, therefore, Bulkhaul is entitled to be fully indemnified by Chemtura, Chemtura Italy, and Huntsman for such liability, plus the attorneys' fees and costs incurred by Bulkhaul in defending against such claims and potential claims, and Bulkhaul is also entitled to indemnity with respect to any liabilities or expenses that might be incurred relating to General Average and/or salvage.

22.     Furthermore, Chemtura, Chemtura Italy, and Huntsman are liable to Bulkhaul for any damage to or loss of tanktainers owned by Bulkhaul by reason of the negligence, fault, neglect, want of due care, wrongful acts or omissions or other misconduct of Chemtura, Chemtura Italy, and Huntsman.

### AS AND FOR A SECOND CROSSCLAIM AGAINST CHEMTURA, CHEMTURA ITALY, AND HUNTSMAN

23.     Bulkhaul repeats and realleges each and every allegation set forth above with the same force and effect as if herein set forth at length.

24.     The DPA cargoes constituted goods of an inflammable, explosive, or dangerous nature.

25.     Chemtura, Chemtura Italy, and Huntsman failed to provide Bulkhaul, Vessel personnel or anyone else with accurate information and warnings regarding the DPA cargoes.

26. The Incident aboard the M/V MSC FLAMINIA and all of Bulkhaul's damages, losses, and expenses as aforesaid were directly attributable to and caused by the aforesaid negligence and failure to provide accurate information and warnings on the part of Chemtura, Chemtura Italy, and Huntsman and/or their respective agents without any fault of Bulkhaul or its agents contributing thereto and, therefore, Chemtura, Chemtura Italy, and Huntsman should be held liable to all parties who may make claims against Bulkhaul herein

27. Therefore, to the extent that Bulkhaul may be found liable, whether by judgment or settlement, on the claims and potential claims arising from the Incident, said liability derives in whole or in part from the negligence, fault, neglect, want of due care, wrongful acts or omissions or other misconduct of Chemtura, Chemtura Italy, and Huntsman and, therefore, Bulkhaul is entitled to be fully indemnified by Chemtura, Chemtura Italy, and Huntsman for such liability, plus the attorneys' fees and costs incurred by Bulkhaul in defending against such claims and potential claims, and Bulkhaul is also entitled to indemnity with respect to any liabilities or expenses that might be incurred relating to General Average and/or salvage.

28. Furthermore, Chemtura, Chemtura Italy, and Huntsman are liable to Bulkhaul for any damage to or loss of tanktainers owned by Bulkhaul by reason of the negligence, fault, neglect, want of due care, wrongful acts or omissions or other misconduct of Chemtura, Chemtura Italy, and Huntsman.

**AS AND FOR A THIRD CROSSCLAIM AGAINST<br>
<u>CHEMTURA, CHEMTURA ITALY, AND HUNTSMAN</u>**

29. Bulkhaul repeats and realleges each and every allegation set forth above with the same force and effect as if herein set forth at length.

30. The DPA manufactured, packaged, shipped, and put into the stream of commerce by Chemtura, Chemtura Italy, and Huntsman was unsafe and unreasonably dangerous.

31. Chemtura, Chemtura Italy, and Huntsman's carelessness, negligence, fault, willful conduct, recklessness, and strict liability-producing conduct concerning, *inter alia*, the design, testing, manufacture, assembly, labeling and/or supplying of the DPA in a defective, unsafe and volatile condition, caused the Incident aboard the Vessel.

32. The explosion and/or fire and all of Bulkhaul's damages and losses as aforesaid are directly attributable to and caused by the aforesaid liability-producing conduct of Chemtura, Chemtura Italy, Huntsman, and/or their respective agents without any fault of Bulkhaul or its agents contributing thereto and, therefore, Chemtura, Chemtura Italy, and Huntsman should be held liable to all parties who have made claims or who might make claims against Bulkhaul herein.

33. Therefore, to the extent that Bulkhaul may be found liable, whether by judgment or settlement, on the claims and potential claims arising from the Incident, said liability derives in whole or in part from the negligence, fault, neglect, want of due care, wrongful acts or omissions or other misconduct of Chemtura, Chemtura Italy, and Huntsman and, therefore, Bulkhaul is entitled to be fully indemnified by Chemtura, Chemtura Italy, and Huntsman for such liability, plus the attorneys' fees and costs incurred by Bulkhaul in defending against such claims and potential claims, and Bulkhaul is also entitled to indemnity with respect to any liabilities or expenses that might be incurred relating to General Average and/or salvage.

34. Furthermore, Chemtura, Chemtura Italy, and Huntsman are liable to Bulkhaul for any damage to or loss of tanktainers owned by Bulkhaul by reason of the negligence, fault, neglect, want of due care, wrongful acts or omissions or other misconduct of Chemtura, Chemtura Italy, and Huntsman.

## AS AND FOR A FOURTH CROSSCLAIM AGAINST
## CHEMTURA, CHEMTURA ITALY, AND HUNTSMAN

35. Bulkhaul repeats and realleges each and every allegation set forth above with the same force and effect as if herein set forth at length.

36. Chemtura, Chemtura Italy, and Huntsman owed a duty of care to the Vessel, her owners, charterers and non-vessel operating common carriers, and everyone involved in the venture to act with reasonable care in connection with the shipment of the DPA cargoes.

37. The explosion and/or fire aboard the Vessel was caused by Chemtura, Chemtura Italy, and Huntsman's fault, negligence, recklessness, willful conduct and strict liability-producing conduct in, *inter alia*, the design, testing, manufacture, assembly, labeling and/or supplying of the DPA in a defective, unsafe and volatile condition.

38. The explosion and/or fire and all of Bulkhaul's damages and losses as aforesaid are directly attributable to and caused by the aforesaid liability producing conduct of Chemtura, Chemtura Italy, and Huntsman and/or their respective agents without any fault of Bulkhaul or its agents contributing thereto and, therefore, Chemtura, Chemtura Italy, and Huntsman should be held liable to all parties who have made claims or who might make claims against Bulkhaul herein.

39. Therefore, to the extent that Bulkhaul may be found liable, whether by judgment or settlement, on the claims and potential claims arising from the Incident, said liability derives in whole or in part from the negligence, fault, neglect, want of due care, wrongful acts or omissions or other misconduct of Chemtura, Chemtura Italy, and Huntsman and, therefore, Bulkhaul is entitled to be fully indemnified by Chemtura, Chemtura Italy, and Huntsman for such liability, plus the attorneys' fees and costs incurred by Bulkhaul in defending against such

claims and potential claims, and Bulkhaul is also entitled to indemnity with respect to any liabilities or expenses that might be incurred relating to General Average and/or salvage.

40. Furthermore, Chemtura, Chemtura Italy, and Huntsman are liable to Bulkhaul for any damage to or loss of tanktainers owned by Bulkhaul by reason of the negligence, fault, neglect, want of due care, wrongful acts or omissions or other misconduct of Chemtura, Chemtura Italy, and Huntsman.

### AS AND FOR A FIFTH CROSSCLAIM AGAINST CHEMTURA, CHEMTURA ITALY, AND HUNTSMAN

41. Bulkhaul repeats and realleges each and every allegation set forth above with the same force and effect as if herein set forth at length.

42. Chemtura, Chemtura Italy, and Huntsman negligently misrepresented the quality, flash point, propensities, stability, packing, testing, packaging, chemical make-up, characteristics, and dangers of the DPA in question without due care to ascertain the truth or accuracy of the statements, in that they represented to the public that the DPA was safe for shipment aboard an ocean-going vessel.

43. Chemtura, Chemtura Italy, and Huntsman knew or should have known that others in the shipping industry would believe such representations to be true and would act in reliance thereupon.

44. The Incident aboard the M/V MSC FLAMINIA and all of Bulkhaul's losses, damages, and expenses as aforesaid were caused by Chemtura, Chemtura Italy, and Huntsman's negligent misrepresentations.

45. The explosion and/or fire and all of Bulkhaul's damages and losses as aforesaid are directly attributable to and caused by the aforesaid liability producing conduct of Chemtura, Chemtura Italy, and Huntsman, and/or their respective agents without any fault of Bulkhaul or its

agents contributing thereto and, therefore, Chemtura, Chemtura Italy, and Huntsman should be held liable to all parties who have made claims or who might make claims against Bulkhaul herein.

46. Therefore, to the extent that Bulkhaul may be found liable, whether by judgment or settlement, on the claims and potential claims arising from the Incident, said liability derives in whole or in part from the negligence, fault, neglect, want of due care, wrongful acts or omissions or other misconduct of Chemtura, Chemtura Italy, and Huntsman and, therefore, Bulkhaul is entitled to be fully indemnified by Chemtura, Chemtura Italy, and Huntsman for such liability, plus the attorneys' fees and costs incurred by Bulkhaul in defending against such claims and potential claims, and Bulkhaul is also entitled to indemnity with respect to any liabilities or expenses that might be incurred relating to General Average and/or salvage.

47. Furthermore, Chemtura, Chemtura Italy, and Huntsman are liable to Bulkhaul for any damage to or loss of tanktainers owned by Bulkhaul by reason of the negligence, fault, neglect, want of due care, wrongful acts or omissions or other misconduct of Chemtura, Chemtura Italy, and Huntsman.

### AS AND FOR A SIXTH CROSSCLAIM AGAINST CHEMTURA AND CHEMTURA ITALY

48. Bulkhaul repeats and realleges each and every allegation set forth above with the same force and effect as if herein set forth at length.

49. Chemtura and Chemtura Italy breached their implied and/or express contractual warranties in that, *inter alia*, the DPA was defective, improperly tested, and generally unfit for its intended purpose. Chemtura and Chemtura Italy breached their warranty of fitness for a particular purpose in that Chemtura and Chemtura Italy knew or had reason to know of the dangerous qualities and nature of the DPA to be shipped and knew or had reason to know that

others relied on their expertise in packing, packaging, container stuffing, labeling, warning, manufacturing, designing, testing, transporting, and shipping DPA, failed to provide DPA that could be safely carried in sealed containers aboard an ocean-going vessel.

50. The Incident aboard the Vessel and the resultant losses and damage were caused by Chemtura and Chemtura Italy's breach of express and implied warranties which Chemtura and Chemtura Italy owed to all carriers and cargo interests.

51. The explosion and/or fire and all of Bulkhaul's damages and losses as aforesaid are directly attributable to and caused by the aforesaid liability-producing conduct of Chemtura and Chemtura Italy and/or their respective agents without any fault of Bulkhaul or its agents contributing thereto and, therefore, Chemtura and Chemtura Italy should be held liable to all parties who have made claims or who might make claims against Bulkhaul herein.

52. Accordingly, Bulkhaul is entitled to be fully indemnified by Chemtura and Chemtura Italy for all attorneys' fees, costs, and expenses incurred by Bulkhaul in this and other matters, as well as for any other liability it may have to any other parties, said liability being specifically denied.

53. Therefore, to the extent that Bulkhaul may be found liable, whether by judgment or settlement, on the claims and potential claims arising from the Incident, said liability derives in whole or in part from the negligence, fault, neglect, want of due care, wrongful acts or omissions or other misconduct of Chemtura and Chemtura Italy and, therefore, Bulkhaul is entitled to be fully indemnified by Chemtura and Chemtura Italy for such liability, plus the attorneys' fees and costs incurred by Bulkhaul in defending against such claims and potential claims, and Bulkhaul is also entitled to indemnity with respect to any liabilities or expenses that might be incurred relating to General Average and/or salvage.

54. Furthermore, Chemtura and Chemtura Italy are liable to Bulkhaul for any damage to or loss of tanktainers owned by Bulkhaul by reason of the negligence, fault, neglect, want of due care, wrongful acts or omissions or other misconduct of Chemtura and Chemtura Italy.

### AS AND FOR A SEVENTH CROSSCLAIM AGAINST CHEMTURA AND CHEMTURA ITALY

55. Bulkhaul repeats and realleges each and every allegation set forth above with the same force and effect as if herein set forth at length.

56. On or about July 1, 2012, Bulkhaul issued three bills of lading to Chemtura and/or Chemtura Italy with respect to the DPA cargo, and each bill of lading was expressly subject to terms and conditions set forth on the reverse.

57. Under the terms of the bills of lading issued by Bulkhaul, Chemtura and Chemtura Italy are required to defend, indemnify and hold harmless Bulkhaul against any claim or liability and any expense arising from the carriage of the DPA, whether such claim or liability arises in contract or tort.

58. Various parties have or will assert claims against Bulkhaul arising from the carriage of DPA on behalf of Chemtura and/or Chemtura Italy, including but not limited to the Counterclaims filed by Plaintiffs herein on October 25, 2013.

59. Therefore, Chemtura and/or Chemtura Italy are required to defend, indemnify, and hold harmless Bulkhaul against any claims and/or liability arising from the carriage of Chemtura and/or Chemtura Italy's DPA.

### AS AND FOR AN EIGHTH CROSSCLAIM AGAINST PANALPINA

60. Bulkhaul repeats and realleges each and every allegation set forth above with the same force and effect as if herein set forth at length.

61.     Upon information and belief, Panalpina acted as freight forwarder for the cargoes of DVB carried on board the Vessel and, as freight forwarder, was responsible for creating, receiving, and/or transmitting safety and handling information and warnings with respect to the DVB cargoes.

62.     The DVB cargoes with respect to which Panalpina acted as freight forwarder constituted goods of an inflammable, explosive, or dangerous nature.

63.     Panalpina had a duty to provide the Vessel, Vessel owners, MSC, NVOCC's or any cargo interest, and/or others, with accurate information and warnings regarding the DVB cargoes, including but not limited to the relevant marks, labeling, number, quantity, and weight.

64.     Panalpina's failure to provide such information and warnings directly lead to the below-deck storage of the DVB cargoes and failure to monitor temperature, which in turn led to the Incident.

65.     The Incident aboard the Vessel and all of Bulkhaul's damages, losses, and expenses as aforesaid were directly attributable to and caused by the aforesaid negligence and failure to provide accurate information and warnings on the part of Panalpina and/or their respective agents without any fault of Bulkhaul or its agents contributing thereto, and therefore, Panalpina should be held liable to all parties who may make claims against Bulkhaul herein

66.     Therefore, to the extent that Bulkhaul has liability, whether by judgment or settlement, Bulkhaul is entitled to be fully indemnified by Panalpina for such liability plus the attorneys' fees and costs incurred by Bulkhaul in defending against such claims and potential claims, and Bulkhaul is also entitled to indemnity with respect to any liabilities or expenses that might be incurred relating to General Average and/or salvage.

67. Furthermore, Panalpina is liable to Bulkhaul for any damage to or loss of tanktainers owned by Bulkhaul by reason of the negligence, fault, neglect, want of due care, wrongful acts or omissions or other misconduct of Panalpina.

**WHEREFORE**, Bulkhaul respectfully requests that:

(a) The Court grant judgment in favor of Bulkhaul and against Chemtura, Chemtura Italy, and/or Huntsman on the crossclaims;

(b) The Court grant judgment in favor of Bulkhaul and against Panalpina on the crossclaims;

(c) The Court grant judgment directing Chemtura and Chemtura Italy to defend and indemnify Bulkhaul against any claims and/or liability;

(d) The Court award Bulkhaul all costs and attorneys' fees of this action; and

(e) The Court grant such other and further relief as it deems just and proper.

Dated: New York, New York
       October 28, 2013

                                                Respectfully submitted,

                                                BROWN GAVALAS & FROMM LLP
                                                Attorneys for Claimants
                                                BULKHAUL LTD. and
                                                BULKHAUL (USA) INC.

                                      By:  s/ Peter Skoufalos
                                                Peter Skoufalos (PS-0105)
                                                Patrick R. O'Mea (PO-0424)
                                                355 Lexington Avenue
                                                New York, New York 10017
                                                212-983-8500

To:   Counsel of Record