John A.V. Nicoletti, Esq.
NICOLETTI HORNIG & SWEENEY
Wall Street Plaza
88 Pine Street, 7th Floor
New York, New York 10005
Telephone:  (212) 220-3830
Facsimile:   (212) 220-3780
E-mail: jnicoletti@nicolettihornig.com
NH&S File No.: 28000040 JAVN

Stephen V. Rible, Esq.
MENDES & MOUNT LLP
750 Seventh Avenue
New York, NY 10019
Tel: (212) 261-8000
Fax: (212) 261-8750
E-mail: Stephen.Rible@mendes.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | | |
|---|---|---|
| IN THE MATTER OF THE COMPLAINT OF CONTI 11.CONTAINER SCHIFFAHRTS-GMBH & CO. KG MS "MSC FLAMINIA," AS OWNER, AND NSB NIEDERELBE SCHIFFAHRTSGESELLSCHAFT MBH & CO. KG, AS OPERATOR, OF THE MSC FLAMINIA FOR EXONERATION FROM OR LIMITATION OF LIABILITY | § § § § § § § § § § § § § | ECF CASE<br><br>IN RE M/V MSC FLAMINA<br>MASTER FILE 12 CIV 8892 (AJN)<br>THIS DOCUMENT RELATES TO:<br>ALL ACTIONS<br><br>**STOLT'S CROSS CLAIMS AGAINST DEFENDANT/ CLAIMANT HUNTSMAN CORPORATION** |
| Plaintiffs. | § § | |

---

Counterclaim and Cross Claim Defendant Stolt Tank Containers BV ("Stolt"), by and through its attorneys, Nicoletti Hornig & Sweeney, and Answering Claimants Stolt Tank Containers B.V., Stolt Tank Containers France SAS, Stolt Nielsen USA, Inc., Stolt Tank Containers Germany GMBH, and National Union Fire Insurance Co. of Pittsburgh, PA, in its capacity as subrogee, as named plaintiffs in 1:13-CV-1610 and as answering claimants in 1:12-

CV-8992 ("Stolt Cargo Interests"-As per Schedule A attached hereto), as and for their cross claims against defendant/claimant Huntsman Corporation (hereinafter, "Huntsman") allege upon information and belief as follows:

1)    At all relevant times mentioned herein, Huntsman was and still is a corporation or other legal entity organized and existing under the laws of the State of Delaware, with its principal place of business in Geismar, Louisiana.

2)    At all relevant times mentioned herein, Stolt was and still is a corporation organized and existing under the laws of The Netherlands with a place of business in Rotterdam, The Netherlands.

3)    This is an action within the admiralty and maritime jurisdiction of this Court pursuant to 28 U.S.C. § 1333 and is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

4)    By virtue of filing Claims and/or Answers to the Complaint for Exoneration From or Limitation of Liability [Docket No. 1] herein, Huntsman is subject to the Court's personal jurisdiction and, therefore, venue is proper in this District.

## BACKGROUND FACTS

5)    Huntsman was the manufacturer, shipper, supplier, owner, consignee, seller, and/or buyer of certain cargoes of Diphenylamine ("DPA") that were carried aboard the M/V MSC FLAMINIA during the subject voyage.

6)    On or about December 7, 2012, Plaintiffs Conti 11.Container Schiffahrts-GMBH & Co. KG MS "MSC FLAMINIA" ("Conti"), as owner, and NSB Niederelbe Schiffahrtsgesellschaft MBH & Co. KG ("NSB"), as operator, of the vessel M/V MSC FLAMINIA, filed a Complaint for Exoneration From or Limitation of Liability [Docket No. 1] in

2

which they alleged that "[o]n or about July 14, 2012, the M/V MSC FLAMINIA was underway from Charleston, United States to Antwerp, Belgium," and that "[o]n or about July 14, 2012, a fire and explosion occurred in the M/V MSC FLAMINIA's number 4 cargo hold" (hereinafter the "Incident").

7) On or about May 29, 2013, Plaintiffs filed counterclaims against, *inter alia*, Stolt [Docket No. 127] alleging that "certain cargoes of DVB [Divinylbenzene] which were produced, shipped, owned, sold, and/or bought by Claimants Deltech and Stolt are responsible for the explosion and fire that occurred on or about July 14, 2012 on board the M/V MSC FLAMINIA and all of the resulting damages and losses."

8) Stolt denies Plaintiffs' allegations against it, denies any liability with respect to, arising out of, arising from, and/or in connection with the Incident and, therefore, denies any liability to Plaintiffs.

9) To date, other parties to this lawsuit and parties to related lawsuits have filed counterclaims, cross claims and/or third-party claims against Stolt which include (but are not limited to) Mediterranean Shipping Company S.A.'s Counterclaims against Stolt [Docket No. 125], Mediterranean Shipping Company, S.A.'s Cross Claims against Stolt [Docket No. 126], Sea Shipping Lines' Cross Claims against Stolt [Docket No. 128], Satellite Logistics Group, Inc.'s Cross Claims against Stolt [Docket No. 129], the cross claims of the parties represented in Docket No. 137, the cross claims of the parties represented in Docket No. 154, the Cross Claims of Bulkhaul Ltd. and Bulkhaul (USA) Inc. against Stolt [Docket No. 158], the Cross Claims of Suttons International Ltd. and Suttons International (N.A.) Inc. against Stolt [Docket No. 160], the Cross Claims of NACA Logistics (USA) Inc. d/b/a Vanguard Logistics Services d/b/a Direct Container Lines against Stolt [Docket No. 161], the Amended Cross Claims of NACA Logistics

(USA) Inc. against Stolt [Docket No. 275], the Cross Claims of Hellmann Worldwide Logistics S.A. de C.V., Hellmann Worldwide Logistics Inc. and Pelorus Ocean Line Ltd. against Stolt [Docket No. 168], Deltech's Cross Claims against Stolt [Docket Nos. 162 and 164], the cross claims of the parties represented in Docket No. 169, the cross claims of Iwona Siuta against Stolt [Docket No. 186], the cross claims of Hartford Fire Insurance Company against Stolt [Docket No. 187], and Mediterranean Shipping Company, S.A.'s third-party claims in a related action pending in the United States District Court for the Southern District of New York bearing civil action no. 13 Civ. 5264, alleging that they sustained losses and/or damages, and/or have been exposed to liability, as a result of the fire and explosion aboard the M/V MSC FLAMINIA and further alleging that Stolt is liable for any such losses and/or damages sustained and/or exposure to liability, all of which Stolt expressly denies, and similar additional claims may be filed in the future.

10) It has also been alleged by, among others, Plaintiffs Conti 11.Container Schiffahrts-GMBH & Co. KG MS "MSC FLAMINIA" ("Conti") and NSC Niederelbe Schiffahrtsgesellschaft MBH & Co. KG ("NSB") in Docket No. 294 that certain cargoes of DPA caused and/or contributed to the fire and/or explosion aboard the M/V MSC FLAMINIA.

### AS AND FOR A FIRST CROSS-CLAIM
### AGAINST HUNTSMAN

11) Stolt repeats and realleges each and every allegation set forth in paragraphs "1" through "10" of the Cross Claims as if set forth herein at length.

12) Huntsman, as carrier, producer, manufacturer, shipper, supplier, owner, seller and/or buyer of certain dangerous cargoes, was obligated to adequately warn and/or inform all interested parties of the inherently dangerous nature of the respective cargoes being shipped including but not limited to the high shipping temperatures of the DPA cargo.

4

13) Huntsman possessed superior knowledge of the nature, properties and qualities of the respective cargoes including but not limited to the high shipping temperatures of the DPA cargo and failed to adequately warn, inform and/or notify MSC, vessel personnel or anyone else of the respective cargoes' true dangerous qualities of which Huntsman was or should have been aware.

14) If, as has been contended, Huntsman's cargoes caused and/or contributed to the fire and/or explosion aboard the M/V MSC FLAMINIA, then to the extent that any party or parties to this lawsuit other than Stolt have sustained losses and/or damages and/or have been exposed to liability, all of which are expressly denied, such losses, damages and/or exposure to liability are directly attributable to and caused by the strict liability conduct, failure to adequately warn or inform, negligence, fault, neglect, want of due care, breach of warranties, express or implied, breach of contract, wrongful acts or omissions or other misconduct and/or liability-producing conduct of Huntsman and/or its officers, agents, servants and/or employees, without any fault on the part of Stolt or its agents contributing thereto, and, therefore, Huntsman should be held solely and/or jointly liable to Stolt and/or to all parties who have made or will make claims against Stolt for all liability, losses and damages arising therefrom, including legal fees and disbursements incurred in defense of third-party claims.

15) In the event Stolt is nevertheless held liable to any party to this action, or to any other party to any other proceeding in the United States or abroad arising out of or relating to the subject Incident, said liability being expressly denied by Stolt, then such liability derives in whole or in part from the strict liability conduct, failure to adequately warn or inform, negligence, fault, neglect, want of due care, breach of warranties, express or implied, breach of contract, wrongful acts or omissions or other misconduct and/or liability-producing conduct of

5

Huntsman and/or its officers, agents, servants and/or employees and, therefore, Stolt is entitled to full recovery over and against, and to be indemnified by, or secure contribution from Huntsman for all sums so recovered against Stolt, including but not limited to attorneys' fees, expenses, interest and costs incurred by Stolt in defending the third-party claims and/or pursuing recovery from Huntsman.

## AS AND FOR A SECOND CROSS-CLAIM
## <u>HUNTSMAN</u>

16) Stolt repeats and realleges each and every allegation set forth in paragraphs "1" through "15" of the Cross Claims as if set forth herein at length.

17) The cargoes manufactured, packaged, shipped, and put into the stream of commerce by Huntsman are alleged to have been unsafe and unreasonably dangerous and the cause of the casualty aboard the M/V MSC FLAMINIA.

18) Huntsman's carelessness, negligence, fault, willful conduct, recklessness, and strict liability producing conduct consisted of, *inter alia*:

    a. Designing, testing, manufacturing, assembling, delivering, cargoes in a defective, unsafe, unreasonably dangerous, and volatile condition which caused and/or precipitated the casualty aboard the Vessel;

    b. Failing to design, manufacture, assemble, stuff, label, insulate, and package the cargoes in such a way so as to prevent spontaneous combustion, high temperatures, polymerization, and/or explosion;

    c. Creating unreasonably dangerous conditions as referenced herein which presented a serious risk of harm to others and their property;

    d. Failing to adequately and properly test the cargoes in question;

    e. Failing to ensure that the cargoes in question were not contaminated;

6

      f.      Failing to provide and/or obtain suitable tank containers for the safe carriage of the cargoes in question;

      g.      Failing to adequately warn individuals of the unsafe, volatile, unstable, and defective condition of the cargoes in question;

      h.      Failing to ensure that the cargoes in question were safe for shipment aboard an ocean-going vessel;

      i.      Failing to properly package the cargoes in question; and

      j.      Any other strict liability-producing conduct.

19)      If, as has been contended, the Huntsman cargoes caused and/or contributed to the fire and/or explosion aboard the M/V MSC FLAMINIA, then to the extent that any party or parties to this lawsuit other than Stolt have sustained losses and/or damages and/or have been exposed to liability, all of which are expressly denied, such losses, damages and/or exposure to liability are directly attributable to and caused by the strict liability conduct, negligence, fault, neglect, want of due care, breach of warranties, express or implied, breach of contract, wrongful acts or omissions or other misconduct and/or liability-producing conduct of Huntsman and/or its officers, agents, servants and/or employees, without any fault on the part of Stolt or its agents contributing thereto, and, therefore, Huntsman should be held solely and/or jointly liable to Stolt and/or to all parties who have made or will make claims against Stolt for all liability, losses and damages arising therefrom, including legal fees and disbursements incurred in defense of third-party claims.

20)      In the event Stolt is nevertheless held liable to any party to this action, or to any other party to any other proceeding in the United States or abroad arising out of or relating to the subject Incident, said liability being expressly denied by Stolt, then such liability derives in whole or in part from the strict liability conduct, negligence, fault, neglect, want of due care,

7

breach of warranties, express or implied, breach of contract, wrongful acts or omissions or other misconduct and/or liability-producing conduct of Huntsman and/or its officers, agents, servants and/or employees and, therefore, Stolt is entitled to full recovery over and against, and to be indemnified by, or secure contribution from Huntsman for all sums so recovered against Stolt, including but not limited to attorneys' fees, expenses, interest and costs incurred by Stolt in defending the third-party claims and/or pursuing recovery from Huntsman.

**AS AND FOR A THIRD CROSS-CLAIM
<u>HUNTSMAN</u>**

21) Stolt repeats and realleges each and every allegation set forth in paragraphs "1" through "20" of the Cross Claims as if set forth herein at length.

22) Huntsman owed a duty of care to the M/V MSC FLAMINIA, her owners, charterers and non-vessel operating common carriers, and everyone involved in the venture to act with reasonable care in connection with the shipment of its cargoes.

23) The fire and/or explosion aboard the M/V MSC FLAMINIA was caused by Huntsman's carelessness, negligence, recklessness in, *inter alia*:

    a. Designing, testing, manufacturing, assembling, delivering, packaging, packing, stuffing, labeling, and/or supplying the cargoes in a defective, unsafe, unreasonably dangerous, and volatile condition which caused and/or precipitated the casualty aboard the Vessel;

    b. Failing to design, manufacture, assemble, stuff, label, insulate, and package the cargoes in such a way so as to prevent spontaneous combustion, high temperatures, polymerization, and/or explosion;

    c. Creating unreasonably dangerous conditions as referenced herein which presented a serious risk of harm to others and their property;

    d. Failing to adequately and properly test the cargoes in question;

8

  e. Failing to ensure that the cargoes in question were not contaminated;

  f. Failing to provide suitable tank containers for the safe carriage of the cargoes in question;

  g. Failing to adequately warn individuals of the unsafe, volatile, unstable, and defective condition of the cargoes in question;

  h. Failing to ensure that the cargoes in question were safe for shipment aboard an ocean-going vessel;

  i. Failing to properly package the cargoes in question; and

  j. Any other careless, negligent, reckless, and unreasonable conduct.

24) If, as has been contended, the Huntsman cargoes caused and/or contributed to the fire and/or explosion aboard the M/V MSC FLAMINIA, then to the extent that any party or parties to this lawsuit other than Stolt have sustained losses and/or damages and/or have been exposed to liability, all of which are expressly denied, such losses, damages and/or exposure to liability are directly attributable to and caused by the strict liability conduct, negligence, fault, neglect, want of due care, breach of warranties, express or implied, breach of contract, wrongful acts or omissions or other misconduct and/or liability-producing conduct of Huntsman and/or its officers, agents, servants and/or employees, without any fault on the part of Stolt or its agents contributing thereto, and, therefore, Huntsman should be held solely and/or jointly liable to Stolt and/or to all parties who have made or will make claims against Stolt for all liability, losses and damages arising therefrom, including legal fees and disbursements incurred in defense of third-party claims.

25) In the event Stolt is nevertheless held liable to any party to this action, or to any other party to any other proceeding in the United States or abroad arising out of or relating to the

subject Incident, said liability being expressly denied by Stolt, then such liability derives in whole or in part from the strict liability conduct, negligence, fault, neglect, want of due care, breach of warranties, express or implied, breach of contract, wrongful acts or omissions or other misconduct and/or liability-producing conduct of Huntsman and/or its officers, agents, servants and/or employees and, therefore, Stolt is entitled to full recovery over and against, and to be indemnified by, or secure contribution from Huntsman for all sums so recovered against Stolt, including but not limited to attorneys' fees, expenses, interest and costs incurred by Stolt in defending the third-party claims and/or pursuing recovery from Huntsman.

## AS AND FOR A FOURTH CROSS-CLAIM
## AGAINST HUNTSMAN

26) Stolt repeats and realleges each and every allegation set forth in paragraphs "1" through "25" of the Cross Claims as if set forth herein at length.

27) Huntsman negligently misrepresented the quality, flash point, propensities, stability, packing, temperature, testing, packaging, stowage, IMDG classification, chemical make-up, and dangers of the cargoes in question without due care to ascertain the truth or accuracy of the statements, in that it represented to the public that the cargoes were safe for shipment in accordance with the IMDG Code aboard an ocean-going vessel.

28) Huntsman knew or should have known that others in the shipping industry would believe such representations to be true and would act in reliance thereupon.

29) If, as has been contended, the Huntsman cargoes caused and/or contributed to the fire and/or explosion aboard the M/V MSC FLAMINIA, then to the extent that any party or parties to this lawsuit other than Stolt have sustained losses and/or damages and/or have been exposed to liability, all of which are expressly denied, such losses, damages and/or exposure to liability are directly attributable to and caused by the strict liability conduct, negligence, fault,

neglect, want of due care, breach of warranties, express or implied, breach of contract, wrongful acts or omissions or other misconduct and/or liability-producing conduct of Huntsman and/or its officers, agents, servants and/or employees, without any fault on the part of Stolt or its agents contributing thereto, and, therefore, Huntsman should be held solely and/or jointly liable to Stolt and/or to all parties who have made or will make claims against Stolt for all liability, losses and damages arising therefrom, including legal fees and disbursements incurred in defense of third-party claims.

30) In the event Stolt is nevertheless held liable to any party to this action, or to any other party to any other proceeding in the United States or abroad arising out of or relating to the subject Incident, said liability being expressly denied by Stolt, then such liability derives in whole or in part from the strict liability conduct, negligence, fault, neglect, want of due care, breach of warranties, express or implied, breach of contract, wrongful acts or omissions or other misconduct and/or liability-producing conduct of Huntsman and/or its officers, agents, servants and/or employees and, therefore, Stolt is entitled to full recovery over and against, and to be indemnified by, or secure contribution from Huntsman for all sums so recovered against Stolt, including but not limited to attorneys' fees, expenses, interest and costs incurred by Stolt in defending the third-party claims and/or pursuing recovery from Huntsman.

## AS AND FOR A FIRST CROSS-CLAIM
## AGAINST HUNTSMAN

31) The Stolt Cargo Interests repeat and reiterate each and every allegation set forth in paragraphs "1" through "30" of the Cross Claims as if set forth herein at length.

32) Stolt Tank Containers B.V., Stolt Tank Containers France SAS, Stolt Nielsen USA, Inc., Stolt Tank Containers Germany GMBH, and National Union Fire Insurance Co. of Pittsburgh, PA, in its capacity as subrogee, as named plaintiffs in 1:13-CV-1610 and as

answering claimants in 1:12-CV-8992 ("Stolt Cargo Interests"), with respect to the claims asserted by the Stolt Cargo Interests in 1:13-CV-1610, and herein, and with respect to claims for contributions in General Average, including those claims for General Average Contribution presently asserted against Stolt Tank Containers, B.V. by CONTI in Docket Documents 127, 131 and 133, assert a counterclaim against Huntsman as follows:

33) The Stolt Cargo Interests have sustained damage, liens, expenses and other costs to Stolt cargo as a result of the M/V MSC FLAMINIA casualty for which the Stolt Cargo Interests have asserted claims in the instant limitation proceeding and herewith assert counterclaims and crossclaims against Huntsman and demand judgment including interest and costs.

34) The Stolt Cargo Interests assert claims, counterclaims and crossclaims, including contingent claims, counterclaims and crossclaims, against Huntsman with respect to the aforesaid damage, and otherwise demand indemnity and/or contribution from Huntsman concerning these liens, security obligations, payments, or future payments to said salvors, including interest, expenses, costs and attorneys fees.

## AS AND FOR A SECOND CROSS-CLAIM
## AGAINST HUNTSMAN

35) The Stolt Cargo Interests repeat and reiterate each and every allegation set forth in paragraphs "1" through "34" of the Cross Claim as if set forth herein at length.

36) Stolt Tank Containers B.V., Stolt Tank Containers France SAS, Stolt Nielsen USA, Inc., Stolt Tank Containers Germany GMBH, and National Union Fire Insurance Co. of Pittsburgh, PA, in its capacity as subrogee, as named plaintiffs in 1:13-CV-1610 and as answering claimants in 1:12-CV-8992 ("Stolt Cargo Interests"), with respect to the claims asserted by the Stolt Cargo Interests in 1:13-CV-1610, and herein, and with respect to claims for

contributions in General Average, including those claims for General Average Contribution presently asserted against Stolt Tank Containers, B.V. by CONTI in Docket Documents 127, 131 and 133, assert a cross-claim against Huntsman as follows:

37)    The Stolt Cargo Interests have incurred liens and have been required to post security, and have or will make payments to salvors in connection with salvage of Stolt cargo which was salvaged as a result of the M/V MSC FLAMINIA casualty which constitute damage to the Stolt cargoes and for which the Stolt Cargo Interests have asserted claims in the instant limitation proceeding and herewith cross-claims against Huntsman.

38)    The Stolt Cargo Interests assert claims, counterclaims and cross-claims, including contingent claims, counterclaims and cross-claims, against Huntsman with respect to the aforesaid damage, and otherwise demands indemnity and/or contribution from Huntsman concerning these liens, security obligations, payments, or future payments to said salvors, including interest, expenses, costs and attorneys fees.

39)    Stolt reserves the right to raise and assert additional cross claims against Huntsman as well as against any party or parties not named herein as future discovery in this action may reveal to be just and proper.

WHEREFORE, Stolt and the Stolt Cargo Interests pray that:

A.   This Court grant judgment in favor of Stolt and the Stolt Cargo Interests and against Huntsman on the Cross-Claims asserted herein;

B.   The Court award Stolt and Stolt Cargo Interests all costs and attorneys' fees of this action; and

C.   The Court grant Stolt and Stolt Cargo Interests such other and further relief as it deems just and proper.

Dated: October 28, 2013
       New York, New York

                           NICOLETTI HORNIG & SWEENEY

                           By: /s/  John A. V. Nicoletti
                              John A. V. Nicoletti
                              Wall Street Plaza
                              88 Pine Street, Seventh Floor
                              New York, New York 10005
                              Tel:  (212) 220-3830
                              Fax: (212) 220-3780
                              E-mail: jnicoletti@nicolettihornig.com
                              NH&S File No.: 28000040 JAVN

                              -and-

                           MENDES & MOUNT LLP

                           By: /s/  Stephen V. Rible
                              Stephen V. Rible
                              750 Seventh Avenue
                              New York, NY 10019
                              Tel: (212) 261-8000
                              Fax: (212) 261-8750
                              E-mail: Stephen.Rible@mendes.com

X:\Public Word Files\28\40\LEGAL\Stolts Crossclaims against Defendant Huntsman (FINAL) s.sa.docx