UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE MSC FLAMINIA )<br>)<br>)<br>_____ )<br>)<br>)<br>THIS DOCUMENT RELATES TO: )<br>ALL ACTIONS )<br>)<br>)<br>)<br>)<br>_____ ) | MASTER FILE 12 CIV. 8892 (AJN)<br><br>**CROSS-CLAIM DEFENDANTS,<br>NEWPORT TANK CONTAINERS,<br>INC., NEWPORT TANK<br>CORPORATION, AND NEWPORT<br>EUROPE B.V.'S MEMORANDUM IN<br>SUPPORT OF THE MOTION<br>TO DISMISS DELTECH'S<br>CROSS-CLAIM** |

NewPort states the following in support of the Motion to Dismiss:

### I.   INTRODUCTION AND RELEVANT STATEMENT OF FACTS

This case arises out of a fire and explosion that occurred on July 14, 2012, on board the MSC Flaminia, a German-flagged container vessel (the "Vessel") during its voyage from the Port of Charleston, South Carolina to the Port of Antwerp, Belgium (the "Flaminia calamity"). (Doc. Nos. 1, ¶ 5; 164, ¶ 11, 218, ¶ 4.) The Flaminia calamity caused the deaths of three crewmembers, several crewmembers have alleged injuries, and many cargos on board the Vessel were damaged and/or lost. (Doc. Nos. 1, ¶ 9; 164, ¶ 12, 218, ¶ 5.) According to eyewitness accounts, the fire and subsequent explosion originated in Hold 4 of the Vessel, and all of the cargo in holds 4, 5 and 6 were destroyed as well as a significant amount of cargo in holds 3 and 7 due to fire, smoke and/or water from the fire hoses used to extinguish the fire. (Doc. Nos. 1, ¶ 8; 222, p. 2, 308, ¶ 19.)

On July 1, 2013, without having first conducted discovery and prior to experts being granted access to holds 4 and 5 of the Vessel, Deltech filed its breach of contract Cross-Claim

against NewPort, MSC Mediterranean Shipping Company S.A. ("MSC"), and Stolt Tank Containers B.V. ("Stolt") (collectively referred to as the "Cross-Claim Defendants") seeking joint and several liability and monetary damages in the amount of $448,306.23, together with indemnification in the event that Deltech is found liable for contribution to the General Average. (Doc. No. 164, ¶ 60.)

The limitation action Plaintiffs, Conti 11. Container Schiffahrts-Gmbh & Co. Kg Ms "MSC Flaminia" and NSB Niederelbe Schiffahrtsgesellschaft MBH & Co. KG. (collectively referred to as the "Vessel Interests") retained Intertek MSG to conduct an independent investigation to determine what, if any, cargo residues were found within the carbon dioxide ("$CO_2$") firefighting system aboard the Vessel. (Doc. Nos. 222, p. 2; 223-1.) According to the May 24, 2013 Intertek report, "significant levels of divinyl benzene ("DVB"), ethyl styrene ("ES") and diethyl benzene ("DEB") and other similar aromatic hydrocarbon was found on the inner surface of samples 'IWF5 Hold 4 AFT' and 'IWF12 Hold 4 FWD.'" (Doc. No. 223-1, p. 2, Section 4.1.) The Vessel Interests and their experts and Cargo Claimants allege that these findings show that the cargo of DVB exploded in Hold 4, and may have caused the fire due to "polymerization and self-heating of the DVB." (*Id.*; Doc. No. 222, p. 3, 308, ¶ 21.) The only DVB cargo that was transported in Hold 4 of the Vessel was the Deltech DVB that was shipped by Stolt in Stolt containers. (*Id.*) Based on that information, the Vessel Interests filed a counterclaim against Deltech and Stolt on May 29, 2013 (Doc. No. 127). Similarly, the Cargo Claimants filed cross-claims against Deltech and Stolt based upon the Intertek report, alleging responsibility for the Flaminia calamity. (Doc No. 169).

Deltech's Cross-Claim against NewPort is purportedly pursuant to the two bills of lading between Deltech and NewPort concerning the shipment of Deltech's chemical product, Para-

Tertiary-Butylstyrene, Stabilized ("TBS") from Baton Rouge, Louisiana to Haverhill, in the United Kingdom ("UK"), in two NewPort ISO tank containers (the "NewPort Bills of Lading"). (Doc. No. 164) True and accurate copies of the NewPort Bills of Lading are collectively attached as Exhibit A.[1] However, the Cross-Claim fails to identify critical elements substantiating Deltech's Cross-Claim against NewPort. Such omitted elements include, but are not limited to: (i) the nature of the product contained in NewPort's ISO tank containers; (ii) where the NewPort containers were stowed on board the Vessel; (iii) the cause of Deltech's purported loss; (iv) any factual basis for Deltech's allegations that its cargo was delivered to NewPort "in good condition;" and (v) evidence substantiating that NewPort's shipment of TBS was the cause of the Flaminia calamity in direct contrast to the investigative report and evidencing presently in the record linking DVB as the cause of the Flaminia calamity.

On January 2, 2014, counsel for NewPort issued correspondence, in accordance with Federal Civil Rule 11, to counsel for Deltech detailing the deficiencies contained in Deltech's Cross-Claim against NewPort, and requesting that Deltech voluntarily dismiss its Cross-Claim against NewPort. A true and accurate copy the January 2, 2014 letter is attached as Exhibit 1 to the Declaration of Nicole Galli, filed contemporaneously with this Memorandum. On January 3, 2014, counsel for Deltech and counsel for NewPort held a brief conversation regarding the January 2, 2014 letter issued by counsel for NewPort.

---

[1] The Court should consider the attached NewPort Bills of Lading in evaluating the sufficiency of Deltech's claim without converting NewPort's 12(b)(6) motion to dismiss into one for summary judgment because the Bills of Lading are expressly referenced in and are central to Deltech's Cross-Claim. (Doc. Nos. 164, ¶¶ 10, 55; 218, ¶ 3.) "When determining the sufficiency of a claim under Rule 12(b)(6), the court is normally required to consider only the allegations on the face of the pleading. However, 'documents that are attached to the complaint or *incorporated in it by reference* are deemed part of the pleading and may be considered.'" *Fireman's Fund Ins. Co. v. AMC USA, Inc.*, No. 11 civ. 7862 (JPO), 2012 U.S. Dist. LEXIS 113968, at *7-8 (S.D.N.Y. Aug. 13, 2012) (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2nd Cir. 2007) (emphasis added)); *Cortec Indus., Inc. v. Sun Holding, L.P.*, 949 F.2d 42, 47-48 (2nd Cir. 1991); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-54 (2nd Cir. 2002) (internal citations omitted); *Duferco Steel v. M/V Kalisti*, 121 F.3d 321, 324 n. 3 (7th Cir. 1997) (citing *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431-32 (7th Cir. 1993) (in ruling on 12(b)(6) motion, a court can consider a bill of lading attached to motion to dismiss that is referenced in but not attached to complaint when it is central to plaintiff's claim)).

Deltech's failure to plead sufficient facts in its Cross-Claim to state a plausible claim for relief against NewPort warrants dismissal. Additionally, Deltech's unsupported legal contentions set forth in the Cross-Claim lack a substantive basis to assert liability against NewPort. Further, Deltech has not indicated that further investigation or discovery will provide the requisite evidentiary support to sustain its Cross-Claim.

Accordingly, NewPort requests that this Court dismiss Deltech's Cross-Claim against NewPort in accordance with Federal Rules of Civil Procedure 11 and 12(b)(6).

## II. LAW AND ARGUMENT

### A. Legal Standard For Dismissal of A Cross-Claim.

#### 1. Failure to State a Claim Under Federal Rule 12(B)(6)

Under Rule 8(a) of the Federal Rules of Civil Procedure, a pleading that states a claim for relief must contain, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Salahuddin v. Cuomo*, 861 F.2d 40, 41-42 (2d Cir. 1988) (explaining the pleading requirements under Federal Civil Rule 8(a)(2)).

In evaluating when to dismiss a cross-claim, a cross-claim should be dismissed under Federal Civil Rule 12(b)(6), when it fails to state a claim. *See* Fed. R. Civ. P. 12(b)(6). A court considering a motion to dismiss may begin by identifying allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Although a complaint need not recount detail factual allegations supporting the asserted claim, it must provide more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007). Similarly, the "'complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory.'" *Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 687 F. Supp. 832, 836 (S.D.N.Y. 1988) (citing *Car*

4

*Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984) (quoting *French Quarter Apartments Ltd. v. Georgia-Pacific Corp.*, 655 F.2d 627, 641 (5th Cir. 1981), *cert. dismissed*, 462 U.S. 1125 (1983)); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation.")

From a fundamental perspective, the facts alleged, if accepted as true, must be sufficient to raise a right to relief that is more than speculative and that contains "'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & Council of Baltimore v. Citigroup, Inc.*, 709 F.3d 129, 135 (2nd Cir. 2013) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face when the plaintiff has pled "'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Fireman's Fund Ins. Co. v. AMC USA, Inc.*, 2012 U.S. Dist. LEXIS 113968, at *7 (S.D.N.Y. Aug. 13, 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The deficient condition of Deltech's Cross-Claim is fatal and warrants dismissal as against NewPort.

    2.    <u>Federal Civil Rule 11 Standard</u>

By presenting a pleading to the court an attorney certifies that to the best of his knowledge, information, and belief, formed after reasonable inquiry under the circumstances, that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). Federal Civil Rule 11 also requires that claims and legal contentions are "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). "[A] claim lacks a

colorable basis when it is utterly devoid of a legal or factual basis." *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 337 (2nd Cir. 1999).

As set forth in this Memorandum in Support, no evidence exists in the record attributing NewPort's transportation of TBS to the Flaminia calamity. Rather, to the contrary, direct evidence, including an investigative report, attributes Deltech's product DVB as the cause of the Flaminia calamity. NewPort did not transport any DVB on the Vessel. (*See*, Exhibit A). Further, the Carriage of Goods by Sea Act, 46 U.S.C. § 30701 Note ("COGSA") preempts Deltech's Cross-Claim for breach of contract against NewPort, thereby also warranting dismissal on substantive grounds.

### B. Deltech's Cross-Claim Should Be Dismissed Because it is Procedurally Deficient.

Deltech's bare assertions of breach of contract against NewPort do not satisfy the *Iqbal* and *Twombly* pleading standards. Deltech's breach of contract claim against NewPort was pled in a conclusory fashion, and Deltech has failed to identify any circumstances for which NewPort could be found liable to Deltech under the NewPort Bills of Lading.

#### 1. No Statement with Particularity

Deltech has not pled facts in its Cross-Claim against NewPort with sufficient particularly to withstand a motion to dismiss as they do not rise above a speculative level. Although Deltech refers to the NewPort Bills of Lading, Deltech fails to expound on what duties, if any, NewPort owed to Deltech that were purportedly breached or unfulfilled by NewPort. The Cross-Claim further fails to identify what, if anything, NewPort should have done to safeguard Deltech's TBS cargo. Deltech's Cross-Claim lacks any substantiation regarding how it purportedly incurred damages in the amount of $448,306.23, and what those purported damages are comprised of. The Cross-Claim also fails to identify the value of the cargo at issue.

With respect to NewPort, among other deficiencies, Deltech's Cross-Claim fails to identify the cargo being transported in NewPort tank containers, fails to identify where the NewPort containers were stored aboard the Vessel, and fails to state a basis for asserting that Deltech's TBS was delivered to NewPort in "good order and condition."

Deltech's failure to state a plausible claim for relief against NewPort in its Cross-Claim is underscored by the fact that Deltech commenced the same kitchen-sink claims against the different cargo interests, including the shippers, consignees, insurance companies, insured parties, and the container companies, each with interests in different products involving varying circumstances. Thus, Deltech's Cross-Claim is ambiguous for two reasons. First, Deltech's Cross-Claim is ambiguous as to the particular allegations that give rise to actionable recourse and liability against NewPort. Second, Deltech's identification of "cargo claimants" as general party defendants is ambiguous in both identifying, with particularity, the specific party defendants to which Deltech seeks redress, and whether NewPort is somehow lumped in with the general category of "cargo claimants." Moreover, Deltech's blanket pleading approach does not provide the proper notice to potential Cross-Claim defendants, or other party defendants, as to whether Deltech seeks liability from such parties. In the event that Deltech's Cross-Claim is intended to also encompass additional causes of action against NewPort, separate and apart from Count 8 of the Cross-Claim, this Motion to Dismiss also addresses those undefined, general allegations.

2. <u>No Causal Connection Between NewPort and the Flaminia Calamity</u>

Deltech's breach of contract claim against NewPort is also unavailing because none of the evidence implicates NewPort as the responsible party (nor does Deltech specifically allege NewPort's responsibility) concerning any damages suffered by Deltech with respect to NewPort's shipment of TBS. Instead, Deltech's Cross-Claim implicitly asserts liability against

7

NewPort by improperly associating NewPort's transportation of TBS with other party defendants' shipment of DVB. According to the fire expert report, DVB residue and its byproducts were found in the $CO_2$ system piping despite the fact that none of NewPort's containers on board the Vessel contained DVB. (Doc. Nos. 13-1; 223-1; *see also* Exhibit A.) Further, Deltech has not demonstrated a connection, let alone made any assertions, between the stowage of NewPort containers carrying Deltech's TBS and the location where the Flaminia calamity occurred on the Vessel.

### 3. Deltech's Inconsistent Positions

Finally, Deltech's breach of contract claims asserted against the Cross-Claim Defendants are irreconcilable. For instance, Deltech alleges that Stolt, which was transporting Deltech's DVB, somehow failed Stolt's obligations under its bills of lading with Deltech and caused $448,306.23 in damages to Deltech's cargo aboard the Vessel. In the same vein, Deltech's Cross-Claim argues the same liability against NewPort despite the fact that NewPort transported a different Deltech product. Deltech fails to plead its general theories in the alternative. Rather, the Cross-Claim improperly asserts blanket joint and several liability against all Cross-Claim Defendants without regard for the divergent interests and differentiating facts surrounding each Cross-Claim Defendant's transportation of different Deltech products.

### C. Deltech's Cross-Claim Should be Dismissed Because it is Substantively Deficient and Lacks Evidentiary Support.

Deltech's Cross-Claim for breach of contact against NewPort is void of any legal or factual basis.

### 1. Deltech's Cross-Claim is Preempted by the Carriage of Goods by Sea Act

Deltech's breach of contract claim must be dismissed because it is preempted by COGSA, which governs "every bill of lading . . . which is evidence of a contract for the carriage

of goods by sea to or from ports of the United States [and] in foreign trade." 46 U.S.C. § 30701 Note. By its terms, COGSA covers "the period from the time when the goods are loaded on to the time when they are discharged from the ship." *Id.*; COGSA § 1(e). Furthermore, the remedies provided in COGSA are <u>exclusive</u>. *Nat'l Auto. Publ'ns, Inc. v. U.S. Lines, Inc.*, 486 F. Supp. 1094, 1099, 1101-02 (S.D.N.Y. 1980) (dismissing plaintiff's common law breach of contract, negligence and wrongful detention of goods claims because COGSA was exclusive remedy). (emphasis added.) Therefore, NewPort's rights and purported liabilities under Deltech's Cross-Claim must be analyzed and determined solely under COGSA, which "'precludes alternative and supplementary liability under state law.'" *Id.* at 1101 (citing *B.F. McKernin & Co. v. U.S. Lines, Inc.*, 416 F. Supp. 1068, 1071 (S.D.N.Y. 1976) (dismissing claims for conversion and breach of contract due to COGSA preemption)).

Here, the transaction between NewPort and Deltech concerned the transportation of Deltech's TBS from the Port of New Orleans to Port Felixstowe, in the United Kingdom, and the damage to cargo on board the Vessel that occurred during the voyage or during the "tackle to tackle" period. 46 U.S.C. § 30701 Note; COGSA § 1(e); *Royal & Sun Alliance Ins. PLC v. Ocean World Lines, Inc.*, 572 F. Supp. 2d 379, 387 (S.D.N.Y. 2008); *Schramm, Inc. v. Shipco Transp., Inc.*, 364 F.3d 560, 564 (4th Cir. 2004). The NewPort Bills of Lading embody and require the application of COGSA to the subject shipments and, indeed, extended its coverage beyond the ordinary tackle to tackle period. (Exhibit A at ¶ 12(a));[2] *Union Carbide Corp. v. M/V*

---

[2] Paragraph 12 of the terms and conditions of the NewPort Bills of Lading specifically states:

> "With respect to sea or water transportation, the [Bill of Lading] shall be subject to the provisions of the Carriage of Goods by Sea Act, of the United States, approved April 16, 1936 . . . The provisions of said act or law (except as otherwise specifically provided for herein) shall also govern before the goods are loaded on and after they are discharged from the vessel while the shipment is in the custody of [NewPort]. Such act or law shall also apply to containers on deck."

(Exhibit A, at ¶ 12).

9

*Michele*, 764 F. Supp. 783, 784 (S.D.N.Y. 1990) (parties contracted to have COGSA apply to the transaction and extend its coverage beyond the normal tackle to tackle scope to the entire period during which the cargo was in defendant's possession).

Consequently, Deltech's breach of contract claim must be dismissed, in accordance with *Nat'l Auto. Publ'ns, Inc.* and *B.F. McKernin & Co.*, because COGSA applies to the shipment of Deltech's TBS and preempts all state and common law claims and alternative theories.

    2.    Fire Exception Under COGSA

Even if the Court were to find that Deltech has adequately pled a COGSA claim, NewPort still cannot be held liable for the loss or destruction of Deltech's cargo resulting from the Flaminia calamity because the cause of the damage falls within one of COGSA's enumerated exceptions to carrier liability.

Pursuant to COGSA § 4(2)(b), NewPort cannot be held responsible for any loss or damage to Deltech's cargo when: "Neither the carrier nor the ship shall be responsible for loss or damage arising or resulting from . . . (b) Fire, unless caused by the actual fault or privity of the carrier." 46 U.S.C. § 30701 Note, COGSA § 4(2)(b). NewPort is also exonerated from liability, under Paragraph 12(a) of the NewPort Bills of Lading, "for any loss or damage to goods occurring at any time (including before loading on or after discharge from the vessel) by reason of any fire whatsoever, [when] such fire [was not] caused by [its] personal design or neglect." (Exhibit A, ¶ 12(a).)

Once a carrier has demonstrated that a loss or damage was caused by fire, the burden of proof shifts back to the shipper to prove that the fire was caused by the fault or privity of the carrier. *Westinghouse Elec. Corp. v. M/V "Leslie Lykes*, 734 F.2d 199, 206 (5th Cir. 1984). Here, it is indisputable that a fire caused the explosion and subsequent loss and damage to cargo

and containers on board the Vessel. While NewPort can satisfy its burden in showing that the cause of the damage or loss stemmed from the fire exception under COGSA, Deltech has not satisfied its reciprocal burden of proof by asserting that the fire was caused by fault or privity of NewPort.

Accordingly, any COGSA claim pled by Deltech must be dismissed for failure to state a claim upon which relief may be granted.

### 3. NewPort's Limitation of Liability

Any liability that could potentially be attributed to NewPort is restricted by the NewPort Bills of Lading and COGSA's limitation of liability provisions. COGSA's limitation of liability for carriers provides:

> "Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier."

46 U.S.C. § 30701 Note, COGSA § 4(5); *Schramm, Inc.*, 364 F.3d at 563-66 (limiting NVOCC's liability to $500 per package). A container containing liquid chemicals constitutes a "package" for purposes of limiting a carrier's liability to $500 per package under COGSA's limitation of liability provision. *See e.g., Stolt Tank Containers, Inc. v. Evergreen Marine Corp.*, 962 F.2d 276, 280 (2nd Cir. 1992) (holding containers constituted COGSA packages where liquid chemicals shipped in Stolt's stainless steel containers could not have been shipped overseas without a container and were not stored in smaller units or drums within each container; inapplicability of the package definition to containers would mean that "COGSA would not apply at all, as no packages would exist" and this "would frustrate COGSA's purpose of creating

predictability for carriers"). *See also Binladen BSB Landscapting v. M.V. "Nedlloyd Rotterdam,"* 759 F.2d 1006, 1013 (2nd Cir. 1984).

Here, Paragraph 14 of the NewPort Bills of Lading expressly and unequivocally provides that NewPort cannot be held liable in any event for loss or damage to or in connection with the transportation of Deltech's cargo "in an amount exceeding $500, per customary freight unit, unless the nature and value of such goods have been declared by [Deltech] before the shipment and inserted on the face of the [bill of lading] and [Deltech] has paid the additional charges on such declared value." (Exhibit A, ¶ 14.) Despite the instructions in the NewPort Bills of Lading, Deltech did not declare the value of the goods on the face of the NewPort Bills of Lading or pay any additional charges based on a declared value for the transportation of the TBS. *Id.* Aside from the express language in the NewPort Bills of Lading, as an experienced shipper, Deltech should have known that excess value must be declared in any standard bill of lading. *Union Carbide Corp.*, 764 F. Supp. at 786 (COGSA $500 per package limitation of liability applicable where carrier's bill of lading did not have a space for shipper to declare excess value).

Accordingly, the damages asserted in Deltech's Cross-Claim are limited by the COGSA's limitation of liability for carriers. 46 U.S.C. § 30701 Note, COGSA § 4(5); *Schramm, Inc.*, 364 F.3d at 566 (4th Cir. 2004); *Union Carbide Corp.*, 764 F. Supp. at 786; (Exhibit A, ¶ 14.)

    4.    <u>Deltech Failed to Contract for a Special Container to Transport Deltech's TBS</u>

Deltech's lack of evidentiary support for its Cross-Claim asserted against NewPort is further highlighted by Deltech's own actions. Assuming *arguendo* that Deltech could assert its breach of contract claim against NewPort, the terms and conditions of NewPort's Bills of Lading expressly provided Deltech with the option to retain a special container with refrigeration, heating, or that was mechanically ventilated. (Exhibit A, ¶ 8.) Notwithstanding this provision in

12

the NewPort bills of lading, Deltech declined to contract for and utilize a special container to transport Deltech's TBS. (*See*, Exhibit A.)

### III. CONCLUSION

For the foregoing reasons and authorities cited herein, NewPort respectfully requests that this Court dismiss Deltech's Cross-Claim in its entirety, with prejudice, against NewPort, and for all other just and appropriate relief.

Respectfully submitted,

BENESCH, FRIEDLANDER, COPLAN
& ARONOFF LLP

By: */s/ Nicole D. Galli*
Nicole D. Galli
One Liberty Place
1650 Market Street, Suite 3611
Philadelphia, Pennsylvania 19103-7301

Stephanie S. Penninger, Indiana Bar No. 25776-49
*Pro Hac Vice Admission Pending*
One American Square, Suite 2300
Indianapolis, Indiana 46282
Telephone: (317) 632-3232
Facsimile: (317) 632-2962
E-mail: spenninger@beneschlaw.com

E. Mark Young, Ohio Bar No. 0074275
*Pro Hac Vice Admission Pending*
200 Public Square, Suite 2300
Cleveland, Ohio 44114
Telephone: (216) 363-4500
Facsimile: (216) 363-4588
E-mail: myoung@beneschlaw.com

*Attorneys for NewPort Tank Containers, Inc.,
NewPort Tankers Corporation, and
NewPort Europe B.V.*

7939493 v2

**CERTIFICATE OF SERVICE**

I hereby certify that on January 6, 2014, a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ *Nicole D. Galli*
Nicole D. Galli