# MONTGOMERY McCRACKEN
ATTORNEYS AT LAW

**Timothy Semenoro**
Admitted in New York, New Jersey

437 Madison Avenue
29th Floor
New York, NY 10022
Tel: 212-867-9500

Direct Dial:  212-551-7793
Fax:  212-599-1759
Email:  tsemenoro@mmwr.com

April 1, 2015

Hon. Shira A. Scheindlin
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
40 Foley Square, Room 1620
New York, NY 10007

Re:   *In re M/V MSC FLAMINIA* – Master File: SDNY No. 12 Civ. 8892 (SAS)

Dear Judge Scheindlin,

We are the attorneys for the Plaintiffs Conti 11. Container Schiffahrts-GMBH & Co. KG MSC "FLAMINIA" ("Conti") and NSB Niederelbe Schiffahrtsgesellschaft MBH & Co. KG ("NSB"), who are the owner and operator of the M/V MSC FLAMINIA in the above-referenced action. We submit this joint letter on behalf of all parties, represented by 23 law firms, to provide an update to the Court on both fact and expert discovery of these consolidated proceedings. As this matter was recently reassigned, we also provide a brief summary overview and note that this matter has been bifurcated between liability and damages.

## Brief Overview

On July 14, 2012, the container ship MSC FLAMINIA suffered an explosion and fire, while in the middle of the Atlantic, during a voyage from Charleston, S.C. to Antwerp, Belgium. Three crew members were killed, the vessel suffered massive structural damage, and a substantial number of the container cargos on board were lost or severely damaged. Overall, damages asserted in these consolidated proceedings exceed $200 Million.

Plaintiffs Conti and NSB declared General Average and retained the services of a salvor to extinguish the fire and rescue the ship. On September 10, 2012, the towed vessel arrived in Wilhelmshaven, Germany for redelivery to her owner. Remaining sound cargo was discharged in Germany and the vessel was eventually towed to Romania for inspection by fire experts and repairs.

Montgomery McCracken Walker & Rhoads LLP

**April 1, 2015**
Page 2

Several different categories of claims resulted from this incident and were filed with the US District Court for the Southern District of New York. These claims can best be organized by claimant/party type: (1) cargo interests, (2) vessel interests, (3) estate and survivors of the Chief Officer, and (4) the owners and shippers of certain chemical cargoes. We acknowledge that additional claims were filed against and on behalf of certain Non-Vessel Operating Common Carriers ("NVOCC"). However, of the remaining NVOCC-related claims, they can either be included within the four primary categories, or are essentially "pass through" and indemnity claims.

(1) <u>Cargo interests:</u>

The various shippers and owners of over 1,700 containers of cargo have filed claims for loss and damage to cargo in the aggregate amount of over US $100 million. The alleged loss and damage is from the explosion and fire, as well as the subsequent firefighting efforts, aboard the MSC FLAMINIA. Subject to corresponding contracts of carriage, these claims have been made against the vessel interests (i.e., owners, managers, and charterers) and certain NVOCCs.

(2) <u>Vessel interests:</u>

On December 7, 2012, the Plaintiffs Conti and NSB, who are the owner and operator of the MSC FLAMINIA respectively, filed a Complaint for Exoneration From or Limitation of Liability pursuant to 46 U.S.C. § 183 et seq. This filing resulted in the consolidation of the existing actions filed by certain cargo interests. Subsequently, the various cargo claimants and NVOCC's filed claims in the limitation action. In response, Plaintiffs Conti and NSB denied certain allegations and invoked several defenses in addition to exoneration and/or limitation under the above mentioned Fire Statute, including the US Carriage Of Goods by Sea Act ("COGSA") fire defense and package limit. Owners and charterers have also filed claims against chemical shippers for damages incurred as a result of the fire which they allege to be in excess of $100 Million.

MSC, as charterer (i.e. long term lessee) of the vessel, and issuer of bills of lading under which all the cargo aboard the vessel was carried, was also named as a defendant in the initial legal actions filed by the cargo interests. MSC also denied certain allegations and alleged several defenses, including the US COGSA fire defense and package limit.

The Plaintiff NSB and charterer MSC have each filed cross-claims for indemnity against each other. Both parties have raised similar defenses to each other's claims.

    (3)  <u>Estate and survivors of the Chief Officer:</u>

  The estate and survivors of the Chief Officer have alleged claims in tort and contract against Plaintiffs Conti and NSB on the basis of certain federal statutes and general maritime law.  In response to these claims of negligence, wrongful death, and survivorship, Plaintiffs Conti and NSB rely on several defenses, including limitation, foreign law, and failure to state a cause of action upon which relief may be granted.

    (4)  <u>Owners and shippers of certain chemical cargoes:</u>

  The investigation of the cause of the explosion and fire on board the MSC FLAMINIA remains on-going.  Plaintiffs' initial investigation has led Plaintiffs and MSC to believe that a particular dangerous chemical cargo, i.e., Divinylbenzene ("DVB"), might be responsible.  Accordingly, the vessel interests, the balance of the cargo interests, the balance of the NVOCCs, and the estate and survivors of the Chief Officer have alleged claims in tort (and, when applicable, in contract) against Deltech, Stolt, and other parties, on the alleged basis that the manufacturer, owner, and shipper failed to properly warn about, and safeguard, this chemical cargo.

  Stolt, Deltech, and the other related parties have denied any liability with respect to these allegations.  Deltech and Stolt have asserted cross-claims and/or counterclaims against NSB/Conti and MSC alleging inter alia that they failed to properly handle and stow dangerous cargo and failed to follow Deltech's instruction to stow its cargo of DVB on deck, away from heat sources.  The vessel interests deny these allegations.

  Additionally, Deltech's preliminary investigation indicates that the vessel interests stowed ten containers of a chemical product called diphenylamine ("DPA"), shipped by Bulkhaul (USA) Inc. on behalf of Chemtura Corporation, over and around Deltech's DVB containers.  Deltech contends that the DPA was shipped at a high temperature.  Deltech also contends that Chemtura and its NVOCC, Bulkhaul, failed to properly identify its cargo, which resulted in it being stored aboard ship in an unsuitable location. Chemtura and Bulkhaul deny these allegations.  Claims were also made against BASF and Monsanto for the chemical cargoes that they shipped aboard the MSC FLAMINIA in Hold No. 4.

**Bifurcation**

  By joint letter request, the parties requested that the subject action be bifurcated on the issues of liability and damages.  On November 12, 2014, this Honorable Court bifurcated discovery and trial on the issues of liability and damages.  See SDNY 12cv8892 docket entry #658.

Montgomery McCracken Walker & Rhoads LLP

**April 1, 2015**
Page 4

### Current Document Discovery and Depositions

As previously reported, the parties have served and responded to hundreds of document demands and interrogatories, and collectively produced thousands of documents, amounting to more than 400,000 pages, not including electronic files. The parties continue making additional requests and producing additional documents.

There are discovery disputes pending that may require the Court's intervention. These include the following: (1) Plaintiff's refusal to produce a report from its consultant, Burgoynes, that documents their examination of the FLAMINIA's CO2 fire suppression system when the FLAMINIA was returned to its owners by the salvor; (2) Deltech's production of documents that were requested during depositions of their witnesses conducted during Sept. 29-Oct 3, 2014, (3) Plaintiffs' production of documents that were requested during depositions of their witnesses on March 3-7, 2014 and Dec 1-5, 2014; and (4) Bulkhaul's production of documents to Stolt.  If these discovery disputes are not resolved in the near future, the respective parties will request the Court's intervention.

Since March of 2014, a total of 31 witnesses have been deposed.  The majority of these witnesses were not from New York.  Most of these depositions have occurred out of state and, in some cases, out of the country.  Coordinating the travel of a dozen law firms to Hamburg, Germany; Charleston, SC; Baton Rouge and New Orleans, LA; and Houston, TX, has been time consuming, but manageable thanks to the cooperation of the various parties.  Following each deposition, there have been the inevitable follow up requests for additional document production, and requests for more depositions.

As of today, an additional 40 depositions have been noticed, or are in the process of being noticed.  At least 14 of the requested witnesses are foreign nationals, many of whom are eyewitnesses from the MSC FLAMINIA and who now sail on other vessels as crew members.  While the various parties are working diligently to schedule these additional depositions, and comply with the various open document demands by the close of fact discovery on June 30, 2015, we do not believe that we will be able to complete discovery by that date.  As set forth in the Expert Discovery section below, there is an additional consideration affecting the timing of fact discovery.

### Discovery for the Siuta Claimants

Document discovery continues.  The depositions of Petitioners' witnesses on choice of law issues will now be scheduled.  It is anticipated that fact discovery on these issues will be concluded by end of September 2015.

Montgomery McCracken Walker & Rhoads LLP

**April 1, 2015**
Page 5

**Expert Discovery**

As we previously explained, over the course of investigating the vessel in the various European shipyards, the parties collected 300+ samples that range in size from scrapings stored in small containers to the remnants of 40 foot long by 8 foot wide ocean cargo containers. Summaries of these samples were circulated for consideration by the respective experts of the parties.

After several weeks of negotiation, the various experts have since agreed upon and executed a joint protocol for metallurgical testing of certain samples. These same experts have been in Denmark[1] since March 18, 2015 and are not expected back until about April 2, 2015. During their time in Denmark, the experts have been confirming and preparing the final selection of samples for both metallurgical and chemical testing.

Following this initial trip to Denmark, the joint testing laboratory in Denmark will assess the total sample set against the requested testing and provide a price quotation for the experts and their respective parties to consider. During this time, the experts will also need to agree on a joint chemical testing protocol. Upon agreement of the parties, the lab can continue its work, which is expected to take from 4 to 8 weeks depending on the total number of samples and the extent of the testing.

At that point, the experts will return to Denmark to review the results, and request and observe subsequent, iterative testing of various samples. Again, depending on the number of samples and types of testing involved, this process could reasonably take an additional few weeks.

This projected testing schedule does not account for the time the experts will need to plan and conduct the testing of the $CO_2$ firefighting system piping and valves and smoke detection tubing that was removed from the MSC FLAMINIA and remains in the custody of a testing laboratory in England. Nor does this schedule consider testing of the metal samples of the heavy fuel oil tank bulkhead that remains in the custody of a third-party contractor in Romania, where repairs to the ship were completed in 2014.

It is anticipated that the results from the testing of samples may lead to conducting additional fact discovery of various parties. Due to the volume of samples and testing requested by the parties, fact discovery cannot be completed by the June 30, 2015 deadline.

---

[1] In 2013, the MSC FLAMINIA was brought to Denmark to remove the debris from the vessel and allow the experts the opportunity to examine the various cargo holds. During that time, liquid samples and some of the debris was designated by the parties' experts for further inspection or testing, which is about to occur in the next few weeks.

Montgomery McCracken Walker & Rhoads LLP

**April 1, 2015**
Page 6

The parties appreciate that Judge Nathan was very strict about having the parties adhere to the current schedule. However, we do not believe the Court meant for parties to be denied discovery they are entitled to for the sake of adhering to deadline proposed well in advance of actual circumstances.

For these reasons, all the parties in this consolidated litigation, other than Chemtura and Bulkhaul, respectfully request that the Court extend the end date for fact discovery to <u>December 31, 2015</u>, so that the remainder of depositions, document discovery, and laboratory testing of samples can be completed.

Chemtura and Bulkhaul have proposed that only a three-month extension of the fact discovery deadline to <u>September 30, 2015</u> is warranted. The other parties note that only one Bulkhaul witness has been deposed so far, no Chemtura witnesses have been deposed yet, and the depositions of Bulkhaul and Chemtura witnesses are anticipated to be scheduled in the coming months.

### **Summary**

The parties continue to cooperate to produce requested documents and information. Hundreds of thousands of pages of documents have already been exchanged, and additional documents are produced on a fairly regular basis. In terms of depositions, a total of 31 depositions have been conducted so far. As many as 40 additional depositions are in the process of being planned and scheduled. A few depositions are set to be taken in New York and depositions for foreign witnesses in Geneva, Switzerland, and Hamburg, Germany, are being coordinated for the months of April and May.

As explained just above, the parties respectfully request that the deadline for fact discover be extended.

Montgomery McCracken Walker & Rhoads LLP

**April 1, 2015**
Page 7

      If there are any questions, please do not hesitate to contact us.  In the event that the Court needs more information concerning the parties' request for an extension of time for fact discovery, the parties respectfully request that a status conference be scheduled so that all parties can be present to answer any questions the Court may have.

      Thank you in advance for your consideration and assistance.

      Respectfully submitted,

      MONTGOMERY MCCRACKEN
      WALKER & RHOADS, LLP

      */s/ Timothy Semenoro*

      Eugene J. O'Connor
      Timothy Semenoro

CC by ECF and E-mail to all counsel of record