UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
IN RE M/V MSC FLAMINIA                       MASTER FILE:
                                             12 Civ. 8892 (SAS)


--------------------------------------------------------X

THIS DOCUMENT RELATES TO:
ALL ACTIONS

--------------------------------------------------------X


# MEMORANDUM OF LAW IN OPPOSITION TO
# MSC'S MOTION TO DISMISS
# STOLT'S AND DELTECH'S AMENDED CROSSCLAIMS


NICOLETTI HORNIG & SWEENEY          GIULIANO MCDONNELL & PERRONE, LLP
Wall Street Plaza                    494 Eighth Avenue, Seventh Floor
88 Pine Street, Seventh Floor        New York, New York 10001
New York, New York 10005             Tel:   (646) 328-0120
Tel:   (212) 220-3830                Fax:   (646) 328-0121
Fax:   (212) 220-3780

*Attorneys for Stolt*                *Attorneys for Deltech*

Of Counsel:                          Of Counsel:

John A.V. Nicoletti                  Joseph J. Perrone
James F. Sweeney                     Timothy J. McDonnell
Robert A. Novak                      Matthew M. Gorden
David S. Wenger

## **TABLE OF CONTENTS**

Table of Authorities ................................................................................................................ ii

Introduction ..............................................................................................................................1

Facts .........................................................................................................................................2

Argument .................................................................................................................................5

I.       Legal Standard On Rule 12(b)(6) Motion To Dismiss .......................................................5

II.      MSC's Motion To Dismiss Is Based On A Straw Man
Fallacy That Stolt And Deltech Have Made Allegations Of Veil Piercing ........................5

III.     Stolt and Deltech Have Alleged Vicarious Liability And Imputation
Based On Agency Grounds Which Does Not Require Veil Piercing .................................6

Conclusion ..............................................................................................................................10

# **TABLE OF AUTHORITIES**

**Cases**

*In re Amaranth Natural Gas Commodities Litig.*,
    587 F. Supp. 2d 513 (S.D.N.Y. 2008) ................................................................................ 6

*Apollo Fuel Oil v. United States*,
    195 F.3d 74 (2d Cir. 1999) ................................................................................................ 9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .......................................................................................................... 5

*Cleveland v. Caplaw Enterprises*,
    448 F.3d 518 (2d Cir. 2006) .............................................................................................. 6

*Cromer Fin. Ltd. v. Berger*,
    2002 WL 826847 (S.D.N.Y. May 2, 2002) ....................................................................... 9

*David Crystal, Inc. v. Cunard S.S. Co.*,
    223 F.Supp. 273 (S.D.N.Y.1963) ...................................................................................... 8

*Espinoza v. Dimon*,
    2015 WL 3684972 (2d Cir. June 16, 2015) ...................................................................... 5

*Farr Man Coffee, Inc. v. P.T. TRIKORA LLOYD*,
    1990 WL 29437 (S.D.N.Y. Mar. 15, 1990) ...................................................................... 8

*Fed. Ins. Co. v. Union Pac. R. Co.*,
    651 F.3d 1175 (9th Cir. 2011) ....................................................................................... 7-8

*Hartford Fire Ins. Co. v. Novocargo USA Inc.*,
    257 F. Supp. 2d 665 (S.D.N.Y. 2003) ............................................................................... 8

*Kirno Hill Corp. v. Holt*,
    618 F.2d 982 (2d Cir. 1980) .............................................................................................. 5

*Leather's Best, Inc. v. S.S. Mormaclynx*,
    451 F.2d 800 (2d Cir. 1971) .............................................................................................. 8

*Mallis v. Bankers Trust Co.*,
    717 F.2d 683 (2d Cir. 1983) .............................................................................................. 9

*N.Y. Marine & Gen. Ins. Co. v. Tradeline (L.L.C.)*,
    266 F.3d 112 (2d Cir. 2001) .............................................................................................. 9

*Reino de Espana v. Am. Bureau of Shipping, Inc.*,
    691 F.3d 461 (2d Cir. 2012) .............................................................................................. 9

*In re S. African Apartheid Litig.*,
   617 F. Supp. 2d 228 (S.D.N.Y. 2009) ................................................................................ 6

*Schramm, Inc. v. Shipco Transp.*, Inc.,
   364 F.3d 560 (4th Cir. 2004) ............................................................................................. 8

*Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*,
   762 F.3d 165 (2d Cir. 2014) .............................................................................................. 7

*Stephens v. Am. Home Assur. Co.*,
   811 F. Supp. 937 (S.D.N.Y. 1993) .................................................................................... 7

*United Arab Republic of Egypt v. M/V Robert E. Lee*,
   1997 WL 403478 (S.D.N.Y. July 17, 1997) ..................................................................... 8

**Other Authorities**

Rands, Domination of a Subsidiary by a Parent,
   32 Ind. L. Rev. 421 (1999) ................................................................................................ 7

Restatement (Third) of Agency § 5.03 (2006) ............................................................................ 9

Harter Act, 46 U.S.C.A. § 30704 ................................................................................................ 8

Fed. R. Civ. P. 12(b)(6) ......................................................................................................... 1, 5

**Introduction**

Counterclaim and Crossclaim Defendants Stolt Tank Containers B.V. and Stolt Nielsen USA, Inc., and Answering Claimants Stolt Tank Containers B.V., Stolt Tank Containers France SAS, Stolt Nielsen USA, Inc., Stolt Tank Containers Germany GMBH, and National Union Fire Insurance Co. of Pittsburgh, PA, in its capacity as subrogee (collectively "Stolt"), and Deltech Corporation, Deltech Europe, Ltd., and National Union Fire Insurance Co. of Pittsburg, PA, in its capacity as subrogee (collectively "Deltech"), submit this memorandum of law in opposition to the motion by Mediterranean Shipping Company, S.A. ("MSC") pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) to dismiss Stolt's fourth amended crossclaim and Deltech's fifth amended crossclaim against MSC (the "Agency Crossclaims").

MSC's motion to dismiss completely misapprehends Stolt's and Deltech's Agency Crossclaims. MSC has created a straw man fallacy – *that Stolt and Deltech are seeking to pierce the corporate veil* of New Orleans Terminal, LLC ("NOT") and thereby hold MSC liable for NOT's acts and omissions and impute NOT's knowledge to MSC. MSC grounds its entire motion on this mischaracterization of Stolt's and Deltech's claims.

It is plainly apparent that Stolt and Deltech have not made any veil piercing claims in the Agency Crossclaims. Stolt and Deltech are not seeking to pierce NOT's corporate veil to reach MSC; to impute NOT's conduct and knowledge to MSC, Stolt and Deltech do not need to pierce NOT's veil. Rather, the Agency Crossclaims allege that MSC should be vicariously liable as a principal for the acts and omissions of NOT as its agent; and that NOT's knowledge concerning matters within the scope of its role as MSC's agent should be imputed to its principal MSC.

The Agency Crossclaims sufficiently allege the requisite agency relationship between MSC and NOT for vicarious liability and imputation of knowledge.  MSC's motion to dismiss does not dispute the sufficiency of the Agency Crossclaims for these purposes.

## Facts

The cause of the July 14, 2012 explosion and resulting fire on the M/V MSC FLAMINIA (the "Vessel") during an Atlantic crossing, leading to three deaths, injuries, and extensive damage to the Vessel and its cargo, has not been ascertained.  Several cargos loaded on the Vessel at NOT's terminal facility in New Orleans have been identified as potentially responsible, alone or in conjunction, for the originating explosion.  In addition, one of the Vessel's port side heated wing fuel tanks at Cargo Hold 4 exploded into the cargo hold – whether that was the originating explosion or an explosion resulting from a preexisting fire has not been determined.  The parties' experts are testing debris samples from the Vessel and the Vessel's smoke detection system which may shed light on the cause of the originating explosion.

As MSC's alludes to in its motion papers (MSC Br. at 2), certain parties have identified three intermodal tank containers of divinylbenzene ("DVB") manufactured by Deltech Corporation and shipped by Stolt Tank Containers, B.V. as potentially involved in the originating explosion.  Deltech and Stolt dispute that DVB was involved in the originating explosion.  If it is ultimately determined that DVB was involved in the originating explosion, Deltech and Stolt contend that fault lies with, among other parties, NOT and MSC for improperly storing and stowing the DVB containers: first, at NOT's terminal facility for 10 days, unsheltered from sunlight in the summer heat of New Orleans and directly above three hot chemical tank containers; and then aboard the Vessel, adjacent to six hot chemical tank containers, in a cargo hold lined with heated fuel tanks.  Deltech and Stolt claim that NOT stored and MSC stowed the

DVB containers in these locations subject to excessive heat conditions despite knowing the particular risks presented by DVB's heat sensitivity.

Because the MSC governing bills of lading for the DVB shipments contain a covenant-not-to-sue which precludes claims against NOT arising from its improper handling and storage at the terminal, Stolt and Deltech have filed claims against MSC only and not against NOT. Stolt's and Deltech's crossclaims against MSC filed in 2013 alleged that MSC should be liable for the acts and omissions of its agents such as NOT. (Doc. No. 325, Stolt's Nov. 7, 2013 Crossclaims, ¶¶ 40-44; Doc. No. 164, Deltech's July 1, 2013 Crossclaims, ¶¶ 29-30.)

As Stolt explained in its April 30, 2015 letter to the Court seeking leave to amend its crossclaims (Doc. No. 708), discovery revealed that the relationship between MSC and NOT extended far beyond an ordinary arrangement between a carrier and an independent terminal facility acting as the carrier's agent for the limited purpose of loading cargo. Documentary evidence and deposition testimony from MSC and NOT witnesses revealed that MSC exercised extensive domination and control over NOT including all of its terminal operations. As Stolt and Deltech have alleged in the Agency Crossclaims:

1. MSC's wholly-owned subsidiary Container Marine Terminals ("CMT") was formed one month before CMT formed NOT with a joint venture partner (*See* Affirmation of John Werner, dated July 10, 2015 ("Warner Aff."), Ex. B, Stolt's Agency Crossclaim, ¶¶56-57; Ex. C, Deltech's Agency Crossclaim, ¶¶52-55.);

2. MSC, through CMT, provided the initial funding for NOT, and owns a majority of NOT (*Id.* Ex. B ¶¶58-59; Ex. C ¶¶56-57.);

3. MSC, through CMT, dominated and controlled the management and operations of NOT (*Id.* Ex. B ¶60; Ex. C ¶58.);

4. NOT's general manager reported to MSC management regarding his administrative duties, including budgeting, accounting, and purchasing; and NOT's operating budgets were discussed with and submitted to MSC for approval (*Id.* Ex. B ¶¶61-62; Ex. C ¶¶59-60.);

5. Claudio Bozzo, the chief executive officer of MSC's US affiliate, Mediterranean Shipping Company (USA) Inc. ("MSC US") was the chairman of NOT's board of directors. (He is now MSC's chief operating officer and remains the chairman of NOT's board of directors.) (*Id.* Ex. B ¶64; Ex. C ¶¶62-63.);

6. NOT's board of directors, which holds meetings at MSC US's New York offices, was composed of at least five MSC executives, comprising a majority of NOT's board (*Id.* Ex. B ¶¶65-66; Ex. C ¶¶64-65.);

7. In consideration for MSC' right to control NOT, MSC has agreed that it and its affiliates would use NOT exclusively to provide all terminal and stevedoring services required by MSC and its affiliates at the Port of New Orleans (*Id.* Ex. B ¶67; Ex. C ¶66.); and

8. At least one employee of MSC, paid by MSC, had offices at NOT and provided services to and for NOT. (*Id.* Ex. B ¶63; Ex. C ¶61.)

MSC's domination and control of NOT and its terminal operations is the subject of further ongoing discovery. Based on these newly-discovered facts, and with the Court's permission, Stolt and Deltech amended their crossclaims against MSC to specifically allege the extensive scope of the relationship between MSC and NOT as principal and agent – a relationship in which MSC dominated and controlled NOT's management and operations including receiving, handling, storing, and loading cargo at its terminal facility. The scope of that agency relationship justifies MSC's vicarious liability for NOT's improper pre-loading handling and storage of the DVB and imputing NOT's knowledge concerning DVB's heat sensitivity, including the potential volatility of DVB if its temperature exceeds 27°C, to MSC.

Stolt and Deltech do not, however, seek to pierce NOT's corporate veil, contrary to the misdirection in MSC's motion to dismiss. They do not need to pierce NOT's corporate veil for vicarious liability and imputation of knowledge. There is no mention of veil piercing in Stolt's April 30 letter to the Court seeking leave to amend its crossclaims or in the filed Agency Crossclaims.

MSC is asking the Court to dismiss a purported veil piercing claim that has never been made on the ground that the allegations supporting that fictitious claim are insufficient. The Court obviously cannot dismiss a claim that has not been made.

## Argument

### I. Legal Standard On Rule 12(b)(6) Motion To Dismiss

On a Rule 12(b)(6) motion to dismiss, "there can be only questions of law; any questions of fact drop out" because the court must "accept all factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor." *Espinoza v. Dimon*, No. 14-1754, 2015 WL 3684972, at *5 (2d Cir. June 16, 2015) (internal quotation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Stolt's and Deltech's Agency Crossclaims easily meet the Rule 12(b)(6) standard. The allegations in the Agency Crossclaims, accepted as true, establish that MSC, as principal, dominated and controlled NOT, as its agent, for purposes of holding MSC vicariously liable for NOT's act and omissions and for purposes of imputing NOT's knowledge to MSC.

### II. MSC's Motion To Dismiss Is Based On A Straw Man Fallacy That Stolt And Deltech Have Made Allegations Of Veil Piercing

MSC's straw-man argument is that Stolt's and Deltech's allegations "seem to be an attempt . . . to craft some type of hybrid veil piercing / vicarious liability claim against MSC." (MSC Br. at 4.) MSC contends that since Stolt and Deltech have "clearly failed to allege the necessary elements of a veil piercing claim" the Agency Crossclaims should be dismissed. (*Id.* at 5.) It is plainly a misdirection for MSC to cite the federal maritime law veil piercing requirements in *Kirno Hill Corp. v. Holt*, 618 F.2d 982 (2d Cir. 1980), then argue that the Agency Crossclaims do not sufficiently allege veil piercing because they do not allege that MSC

5

used NOT to perpetrate a fraud or disregarded NOT's corporate form. (*Id.* at 6-7.)  Stolt and Deltech have not claimed that NOT's corporate veil should be pierced, so of course Stolt and Deltech have not made the necessary factual allegations for veil piercing.

### III. Stolt and Deltech Have Alleged Vicarious Liability And Imputation Based On Agency Grounds Which Does Not Require Veil Piercing

What Stolt and Deltech *have alleged* in the Agency Crossclaims—rather than "hybrid" veil piercing, veil piercing, or "alter ego", an additional straw man claim that has never been made, *see* MSC Br. at 6-8, n. 4—is a principal/agent relationship giving rise to vicarious liability and imputation of knowledge. (*See* Werner Aff. Ex. B ¶¶68-70; Ex. C ¶¶ 67-69.)

MSC does not, and cannot, challenge the legal validity of the Agency Crossclaims.  "It is well established that traditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents ... in the scope of their authority." *In re S. African Apartheid Litig.*, 617 F. Supp. 2d 228, 272 (S.D.N.Y. 2009) (Scheindlin, J.) (quoting *Meyer v. Holley,* 537 U.S. 280, 285 (2003)); *see Cleveland v. Caplaw Enterprises*, 448 F.3d 518 (2d Cir. 2006) (whether landlord could be held vicariously liable for its property manger's actions depended on whether manager was serving as landlord's agent).  To state a claim for vicarious liability, plaintiffs must allege that "the principal manifested an intent to grant the agent authority, the agent agreed, and the principal 'maintain[ed] control over key aspects of the undertaking.'" *In re Amaranth Natural Gas Commodities Litig.*, 587 F. Supp. 2d 513, 546 (S.D.N.Y. 2008) (Scheindlin, J.) (quoting *Commercial Union Ins. Co. v. Alitalia Airlines, S.p.A.,* 347 F.3d 448, 462 (2d Cir. 2003).  These factors have all been established by the allegations in the Agency Crossclaims that MSC through its wholly-owned subsidiary formed, funded, and owns a majority of NOT, and dominated and controlled NOT's management and operations.

6

Vicarious liability of a principal for its agent's conduct does not require veil piercing.  In an often-cited law review article, Professor William Rands explains: "If the subsidiary is acting as the parent's agent, the parent may then be held liable under normal agency principles *without resorting to piercing the corporate veil*. If the subsidiary corporation acts as an agent for the parent corporation, the parent should be liable for the acts of the agent subsidiary within the scope of the agency." Rands, Domination of a Subsidiary by a Parent, 32 Ind. L. Rev. 421, at 443 (1999) (emphasis added); *see Stephens v. Am. Home Assur. Co.*, 811 F. Supp. 937, 956 (S.D.N.Y. 1993) (vacated on other grounds) ("[F]ailure to pierce the corporate veil does not preclude a finding of agency . . ."), citing *Jackam v. Hospital Corp. of Am. Mideast,* 800 F.2d 1577, 1580 (11th Cir. 1986).  Professor Rands quotes Justice Cardozo noting long ago the notion of vicarious liability on agency grounds without piercing the corporate veil in *Bekey v. Third Ave. Ry. Co.*, 155 N.E. 58, 61 (1926): "Dominion may be so complete, interference so obtrusive, that by general rules of agency the parent will be a principal and the subsidiary an agent." (32 Ind. L. Rev. 421, at 443.)  Because of MSC's domination and control of NOT, there is no need to pierce NOT's corporate veil – hence, the Agency Crossclaims allege only that MSC should be vicariously liable for the conduct of its agent NOT but not that NOT's veil should be pierced.

MSC refers to Stolt's and Deltech's covenant not to sue NOT on any basis in Clause 4.2 of the applicable sea waybills issued by MSC (MSC Br. at 6, n. 2).  The covenant not to sue provides further grounds for MSC's liability for NOT's actions.  The reason a covenant not to sue a terminal such as NOT is enforceable and not contrary to public policy (for precluding claims of negligence) is because the clause is viewed as "simply an ordering mechanism" that "concentrates all liability to the cargo owner in the issuing carrier." *Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 182-183 (2d Cir. 2014); *see also Fed. Ins. Co. v. Union*

7

*Pac. R. Co.*, 651 F.3d 1175, 1179-80 (9th Cir. 2011) (requirement that all suits be brought against the carrier "is an enforcement mechanism rather than a reduction of the carrier's obligations to the cargo owner below what COGSA guarantees.") (internal quotation omitted).

Thus, even without MSC's extensive control and domination giving rise to vicarious liability as alleged in the Agency Crossclaims, MSC is in any event responsible for NOT's pre-loading conduct. MSC cannot avoid responsibility for NOT's actions which is the objective of MSC's motion. Until cargo is delivered, "the carrier is liable for its own negligence and that of a stevedore/terminal operator acting as its agent." *Farr Man Coffee, Inc. v. P.T. TRIKORA LLOYD*, 1990 WL 29437, at *9 (S.D.N.Y. Mar. 15, 1990); *United Arab Republic of Egypt v. M/V Robert E. Lee*, 1997 WL 403478, at *3 (S.D.N.Y. July 17, 1997) (carrier "liable for any damage caused by stevedores acting as its agents"); *Leather's Best, Inc. v. S.S. Mormaclynx,* 451 F.2d 800, 811-12 (2d Cir. 1971) (carrier liable for goods in possession of its agent terminal operator); *David Crystal, Inc. v. Cunard S.S. Co.,* 223 F.Supp. 273, 282 (S.D.N.Y.1963) (carrier liable for goods in custody of its stevedore), *aff'd,* 339 F.2d 295 (2d Cir.1964).[1]

While MSC is liable for pre-loading conduct of its agent NOT, the Agency Crossclaims allege a more expansive relationship between MSC and NOT than an ordinary carrier/independent terminal arrangement. The nature of the MSC/NOT relationship in which MSC dominated and controlled NOT's management and operations gives rise not only to vicarious liability, but

---

[1] MSC attempts in Clause 5.1(a) of the sea waybills to disclaim all responsibility prior to loading to extent allowed by applicable law. That clause is invalid under U.S. law. MSC cannot enforce the covenant not to sue, precluding suit against NOT on any grounds, and also disclaim its own responsibility for NOT's pre-loading conduct. The Harter Act, 46 U.S.C.A. § 30704, imposes on the carrier a duty of "due diligence" to care for goods prior to loading. *Schramm, Inc. v. Shipco Transp.*, Inc., 364 F.3d 560, 565 (4th Cir. 2004) (citing *Caterpillar Overseas, S.A. v. S.S. Expeditor,* 318 F.2d 720, 722-23 (2d Cir. 1963)). That duty cannot be waived. *Hartford Fire Ins. Co. v. Novocargo USA Inc.*, 257 F. Supp. 2d 665, 673 (S.D.N.Y. 2003).

8

also to imputation of NOT's knowledge concerning matters within the scope of its responsibilities as MSC's agent to MSC.

Imputation of an agent's knowledge to its principal requires the existence of an agency relationship and that the information at issue concerned matters within the scope of the agency. *Reino de Espana v. Am. Bureau of Shipping, Inc.,* 691 F.3d 461, 473-74 (2d Cir. 2012); *see Apollo Fuel Oil v. United States*, 195 F.3d 74, 76 (2d Cir. 1999) (per curiam) ("In general, when an agent is employed to perform certain duties for his principal and acquires knowledge material to those duties, the agent's knowledge is imputed to the principal."); *Mallis v. Bankers Trust Co.*, 717 F.2d 683, 689–690 (2d Cir. 1983) (same); *N.Y. Marine & Gen. Ins. Co. v. Tradeline (L.L.C.)*, 266 F.3d 112, 122 (2d Cir. 2001);[2] *see also* Restatement (Third) of Agency § 5.03 & cmts. b, c, e (2006) (same). The Agency Crossclaims allege that any knowledge that NOT gained concerning cargo received by NOT for storing and loading, in its capacity as MSC's agent for receiving, storing and loading cargo, should be imputed to MSC.

In sum, the Agency Crossclaims sufficiently allege that MSC dominated and controlled NOT and that NOT acted as MSC's agent with respect to receiving, storing, and loading the cargo onboard the M/V MSC FLAMINIA and receiving information concerning the risks inherent in the cargo. Therefore, not only should MSC be held vicariously liable for NOT's conduct, any knowledge that NOT gained related to risks inherent in the DVB cargo should be imputed to MSC.[3]

---

[2] "[T]here does not appear to be any substantive difference between federal common law principles of agency and New York agency law." *Cromer Fin. Ltd. v. Berger*, No. 00 CIV. 2284 (DLC), 2002 WL 826847, at *4 n.5 (S.D.N.Y. May 2, 2002).

[3] If the Court is inclined to dismiss the Agency Crossclaims—even though MSC has not argued that Stolt's and Deltech's allegations are insufficient to allege vicarious liability and imputation—Stolt and Deltech respectfully request leave to re-plead the Agency Crossclaims.

**Conclusion**

Because the Agency Crossclaims sufficiently allege an agency relationship between MSC and NOT which provides well-established grounds for MSC's vicarious liability for NOT's conduct and imputing NOT's knowledge to MSC, Stolt and Deltech respectfully request that the Court deny MSC's motion to dismiss the Agency Crossclaims.

Dated: New York, New York
July 23, 2015

                                      NICOLETTI HORNIG & SWEENEY

                                      By:   /s/ John A.V. Nicoletti
                                            John A.V. Nicoletti
                                            James F. Sweeney
                                            Robert A. Novak
                                            David S. Wenger
                                            Wall Street Plaza
                                            88 Pine Street, Seventh Floor
                                            New York, New York 10005
                                            Tel:    (212) 220-3830
                                            Fax:   (212) 220-3780
                                            E-mail: jnicoletti@nicolettihornig.com

                                                 -and-

                                      MENDES & MOUNT LLP

                                      By:    s/ Stephen V. Rible
                                            Stephen V. Rible
                                            750 Seventh Avenue
                                            New York, NY 10019
                                            Tel:    (212) 261-8000
                                            Fax:   (212) 261-8750
                                            E-mail: Stephen.Rible@mendes.com

                                     *Attorneys for Stolt*

GIULIANO MCDONNELL & PERRONE, LLP

By: <u>   s/ Joseph J. Perrone</u>
  Joseph J. Perrone
  Timothy J. McDonnell
  Matthew M. Gorden
  494 Eighth Avenue, Seventh Floor
  New York, New York 10001
  Tel: (646) 328-0120
  Fax: (646) 328-0121
  Email: jperrone@gmplawfirm.com

*Attorneys for Deltech*