

**JON WERNER**
E-Mail: jwerner@lyons-flood.com
ADMITTED IN NEW YORK,
NEW JERSEY

LYONS & FLOOD LLP
ONE EXCHANGE PLAZA
55 BROADWAY, SUITE 1501
NEW YORK, NY 10006
TEL  (212) 594-2400
FAX  (212) 594-4589
www.lyons-flood.com

October 22, 2015

**BY CM/ECF**

The Honorable Shira A. Scheindlin
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York

Re:   *In re M/V MSC FLAMINIA*
      U.S.D.C. – S.D.N.Y., 12 Civ. 8892 (SAS) (and consolidated actions)
      Our file:  2549201

Dear Judge Scheindlin,

We represent the claimant and defendant MSC Mediterranean Shipping Company, S.A. ("MSC") in the above captioned matter and write to respond to the letter submitted by counsel for Stolt on Tuesday (Document No. 765) which was ostensibly intended to serve as a response to MSC's October 16, 2015 letter seeking a protective order with respect to notices of deposition of additional MSC representatives served by counsel for Deltech and Stolt (Document No. 764).[1]

Rather than address any of the arguments presented by MSC in its letter regarding proportionality and the cumulative nature of the further depositions sought by Deltech and Stolt, Stolt has instead used its response to make a new request for yet another deposition of a MSC representative, specifically a request that Dirk Vande Velde be produced for a second day of deposition testimony.[2]

In support of this request, Stolt mischaracterizes the circumstances of that deposition, incorrectly describing the length of the deposition, using the number of attorneys present to incorrectly claim that the time allotted for the deposition was insufficient to complete the deposition, and inaccurately asserting that the questioning of Mr. Vande Velde was impeded by "improper leading and speaking objections."

---

[1] The undersigned apologizes for the length of this letter but respectfully submits that the length was necessary in order to fully address the new matters raised by Stolt's response which has gone far afield from the matters raised by MSC's initial letter seeking a protective order.

[2] It should be noted that none of the parties in this case (including Stolt) have issued a notice to take a further deposition of Mr. Vande Velde. The fact that Stolt is only now making this request, some five months after Mr. Vande Velde's deposition was conducted, and in connection with MSC's request for a protective order, suggests that the request may be retaliatory in nature.

In reality, Mr. Vande Velde's deposition consisted of 7 hours and 48 minutes of testimony on the record, of which counsel for Stolt's examination consisted of nearly five hours of questioning (spanning 224 pages out of a total of 381 pages of testimony). A copy of the transcript of Mr. Vande Velde's deposition is annexed hereto as **Exhibit 1**, and an email from the court reporter providing the actual time on the record is annexed hereto as **Exhibit 2**.

There is similarly no basis for the unfounded claim made by Stolt that the deposition of Mr. Vande Velde was impeded in any way, let alone by improper leading and speaking objections. Counsel for Stolt cites to 13 portions of the transcript as evidencing such conduct, and the undersigned respectfully submits that a review of those portions reveals no improper leading or speaking objections.[3] Moreover, even if there were any substance to Stolt's accusations, the frequency of the conduct complained of (13 objections over the course of nearly 8 hours of deposition testimony) obviously could not have seriously impeded the orderly completion of the deposition.

At the close of the deposition of Mr. Vande Velde, counsel for Stolt (who had taken up most of the time questioning Mr. Vande Velde that day) protested that he wanted more time to question the witness, claiming that he had another hour of questioning:

> MR. WERNER: How much more do you have?
>
> MR. NICOLETTI: I do have the entire questioning on the Mediterranean Shipping Company dangerous chemical critical handling procedures. That was the 45 minutes I was referencing. And I have another 10 or 15 minutes on another topic.
>
> MR. FLOOD: So you have another hour?
>
> MR. NICOLETTI: Right.

*See* **Exhibit 1** at pp. 391-392.

Notably, despite counsel for Stolt's representation at the time that he only had another hour of questioning, he is now requesting that Mr. Vande Velde be produced for another full day of testimony. Moreover, although counsel for Stolt now claims that the topic he requires further testimony on is MSC's "knowledge and awareness of hazards of dangerous cargoes" this was not a topic that he claimed he needed more time with respect to during Mr. Vande Velde's deposition. Nor could he have, considering that he questioned Mr. Vande Velde on that very topic for at least 30 pages. *See* **Exhibit 1** at pp. 43-44, 59-61, 74-82, 84-85, 90-91, 108-113, 129-132, and 167-168.

Contrary to the impression which counsel for Stolt is trying to create, none of the other counsel aside from themselves and counsel for Deltech protested the conclusion of the deposition or suggested that they were unable to complete their examination of Mr. Vande Velde

---

[3] A review of the transcript does reveal however, numerous instances where counsel for Stolt was harassing, argumentative, and abusive to Mr. Vande Velde, cutting off his answers and refusing to let him provide context, calling for his testimony to be stricken as non-responsive, *etc. See, e.g.*, **Exhibit 1** at pp. 35, 40, 43, 48, 54, 63, 75, 88, 93, 104, 109, 111-113, 118-119, 122-123, 128, 130, 133, 142, 156, 168, 177, 181, and 191.

in the 9 hours provided.[4] While counsel for 8 parties did question Mr. Vande Velde, the questioning conducted by 6 of those parties amounted to less than 65 pages of testimony. The majority of the questioning was conducted by counsel for Stolt and Deltech, as the below analysis of the transcript demonstrates:

| Party | Pages of testimony |
|---|---|
| Stolt | 224 pages |
| Deltech | 98 pages |
| Cargo interests | 17 pages |
| Bulkhaul | 16 pages |
| BDP | 15 pages |
| Panalpina | 6 pages |
| Chemtura | 9 pages |

Realizing that the 7 hour rule prevented taking a further deposition of Mr. Vande Velde, but nevertheless wishing to continue with his deposition, counsel for Stolt then served a Rule 30(b)(6) notice of deposition seeking production of corporate representatives of MSC to testify with respect to twenty-two topics (fifteen of which related to MSC's dangerous chemical procedures). A copy of Stolt's Rule 30(b)(6) notice of deposition showing the topics identified is annexed hereto as **Exhibit 3**.

The corporate representatives were produced for depositions on September 22, 2015 and September 23, 2015. With respect to the topics relating to the dangerous chemical procedures MSC designated Capt. Dean Kutz as its corporate representative. Counsel for Stolt apparently expected Mr. Vande Velde to have been designated as the corporate representative for these topics, and now accuses MSC of having failed to properly prepare Capt. Kutz to testify knowledgeably regarding the topics identified in the notice of deposition.

However, Stolt provides no support for this accusation, which is wholly unfounded, and notably does not cite to a single question which Capt. Kutz was unable to answer. Instead, Stolt mischaracterizes Capt. Kutz's testimony regarding the preparation he undertook to testify as a Rule 30(b)(6) representative, claiming incorrectly that Capt. Kutz did not have discussions with any MSC representatives to prepare for his testimony. This is completely unsupported by the record since Capt. Kutz clearly testified that he spoke with Mr. Vande Velde and Christopher Downey, Manager of the Planning department of MSC (USA) in preparation for his testifying. *See* pages 22 and 119 of the transcript of Capt. Kutz Rule 30(b)(6) deposition, a copy of which is annexed hereto as **Exhibit 4**.

Stolt is also dismissive of the other preparation undertaken by Capt. Kutz to prepare as a Rule 30(b)(6) representative on behalf of MSC, noting rather dismissively that his preparation was limited to "reviewing prior testimony and exhibits." In point of fact, Capt. Kutz reviewed four large binders of documents, not all of which were exhibits marked during prior depositions:

> Q. I've got two follow-ups, one directly related to your testimony about -- you clarified that in preparing for this deposition you reviewed more than documents marked as exhibits in prior depositions?

---

[4] With the agreement of all counsel, the deposition was scheduled for one day; no one suggested beforehand that a longer period would be needed with this witness. In order to accommodate counsels' requests to go later than 5:00 p.m., Mr. Vande Velde, who was scheduled to make a presentation at a conference in Belgium later that evening, postponed two scheduled flights and ultimately had to cancel his attendance at the conference.

> A. Correct.
>
> Q. Are those documents contained in those four folders?
>
> A. All of them are in those four folders.

*See* **Exhibit 4** at p. 283.

All of this is beside the point since there is no obligation that a corporate representative discuss their planned testimony with other members of an organization or review particular documents in order to validly serve as a Rule 30(b)(6) deponent. There is nothing improper about counsel meeting with a corporate representative such as Capt. Kutz to prepare them to knowledgeably testify regarding the topics noticed. In fact, failure by counsel to do so can form the basis for rejection of a Rule 30(b)(6) representative as being inadequately prepared.

Instead the benchmark for whether a Rule 30(b)(6) representative was appropriately designated is whether or not they were able to knowledgeably answer all the questions put to them during the deposition. *See, e.g., Wultz v. Bank of China Ltd.*, 298 F.R.D. 91 (S.D.N.Y. 2014) (Scheindlin, D.J.); *Crawford v. Franklin Credit Mgmt. Corp.*, 261 F.R.D. 34 (S.D.N.Y. 2009).

Stolt doesn't come anywhere near this standard. All Stolt has to say regarding the substance of Capt. Kutz's testimony, is that he "was unable to respond substantively to many areas of inquiry, including the factual foundations for the responses in his prepared cheat sheet" and that he "was unable to testify concerning MSC's knowledge and awareness of the hazards of dangerous cargoes."

These conclusory statements, which are not supported by even a single citation to Capt. Kutz's testimony, are wholly insufficient to support Stolt's claim that Capt. Kutz was an improperly prepared or designated Rule 30(b)(6) representative. Not only are these statements insufficient as a matter of law, they are completely false and intentionally misleading statements made by Stolt in an unjustified and unwarranted attempt to convince the Court that a further deposition of Mr. Vande Velde should be ordered.

A review of the transcript of Capt. Kutz's deposition reveals not a single instance where Capt. Kutz was unable to answers questions regarding "MSC's knowledge and awareness of the hazards of dangerous cargoes." As a matter of fact that was one of the major topics explored by counsel for Stolt during the Rule 30(b)(6) deposition of Capt. Kutz. *See* **Exhibit 4** at pp. 31-32, 47-50, 54-55, 75-76, 121-122, and 150-195.

For example, with respect the knowledge and awareness of MSC regarding the chemical divinylbenzene (which is largely the focus of Stolt's questioning because it is the product they shipped and which likely caused the casualty), Capt. Kutz as a Rule 30(b)(6) representative of MSC testified as follows:

> Q. Is it your testimony -- I'm going to direct your attention to Exhibit 621, sir. Is it your testimony that prior to June 1, 2012, MSC did not know that DVB, whether it be 55, 63 or 80, required to have contained within it or added to it an inhibitor for maritime transit?
>
> A. No.

Q. Is it your testimony that MSC was unaware that the inhibitor applied to a DVB product was only effective for a certain period of time?

A. We were not aware of that, no.

Q. Is it your testimony that MSC as of June 1st, 2012, was unaware that DVB was heat sensitive?

A. That's correct.

Q. Is it your testimony that MSC was unaware that exposure to heat could limit the effectiveness of the inhibitor? And again, all my questions are prior to June 1st, 2012.

A. That's correct.

Q. Is it your testimony that MSC was unaware that the availability of oxygen within the DVB product could affect the effectiveness of the inhibitor?

A. That's correct.

Q. Is it your testimony that MSC was unaware or did not know that DVB should be aerated regularly to maintain the effectiveness of the inhibitor?

A. That's correct.

Q. Is it your testimony that DVB was subject to auto -- is it your testimony that MSC did not know that DVB could autopolymerize?

A. That's correct.

Q. Is it your testimony that MSC did not know that once autopolymerization started it could not be stopped?

A. That's correct.

Q. Is it your testimony that MSC did not know that autopolymerization was an exothermic process?

A. That's correct.

Q. Is it your testimony that MSC did not know that autopolymerization could result in the release of monomer vapors?

A. That's correct.

Q. Is it your testimony that MSC did not know that autopolymerization could result in an explosion or overpressurization of the tank or container in which it was held?

A. That's correct.

* * *

Q. Let me rephrase it. Is it your testimony that MSC did not know that Deltech had experienced a number of prior incidents involving autopolymerization and/or release of monomer vapors?

A. That's correct.

Q. Is it your testimony that MSC did not know that Deltech had decided not to route shippings via New Orleans during the summer months?

A. That's correct.

>   Q. Is it your testimony that MSC did not know that Deltech had decided not to ship it, meaning DVB, I assume, overseas at temperatures over 21 degrees Celsius?
>
>   A. That's correct.
>
>   Q. Is it your testimony that MSC did not know that Deltech had violated or circumvented its own shipping procedures with respect to the shipments of DVB involved in the casualty?
>
>   A. That's correct, yes.
>
>   Q. Is it your testimony that MSC did not know that DVB should not be exposed to sunlight for extended periods of time?
>
>   A. I'm saying that Stolt failed to and Deltech failed to notify us, yes.
>
>   Q. That's not my question. My question is is it your testimony that as of June 1st, 2012, MSC did not know that DVB should not be exposed to sunlight for extended periods of time.
>
>   A. Yes.
>
>   Q. Is it your testimony that MSC did not know that the time in which DVB was to remain at a loading port or discharge port should be limited?
>
>   A. That's correct. Stolt failed to advise us of that.

*See* **Exhibit 4** at pp. 47-50.

Contrary to Stolt's representation, Capt. Kutz was fully able to testify regarding the factual basis behind these responses, since the basis was exceedingly simple –  MSC's knowledge regarding the casualty shipments of divinylbenzene was limited to the information provided by the shipper of the chemical (Stolt) at the time it was booked:

>   Q. You've already testified that you're prepared to testify on topic 7, so my question is what did MSC know of the chemical properties and chemical characteristics of DVB 80 as of June 1, 2012.
>
>   A. We knew information as provided to us by the shipper in a dangerous goods document.
>
>   Q. And what was that information?
>
>   A. That would be the UN number, the classification, technical name, packing group, flashpoint.
>
>   Q. Anything else?
>
>   A. Whatever else would have been on the dangerous goods document.
>
>   Q. Other than what may have been on the dangerous goods declaration, what did MSC know about the chemical properties and chemical characteristics of DVB 80 as of June 1, 2012?
>
>   A. Nothing.

*See* **Exhibit 4** at p. 32.

- 6 -

Stolt is now seeking to take the depositions of further MSC witnesses on the same topic, clearly in the hope that they will get different answers. The reason this testimony is problematic for Stolt is that Stolt's own dangerous goods manager (who holds a position equivalent to that of Mr. Vande Velde in that company) already admitted that Stolt had failed to pass on safety warnings that it had received from Deltech to MSC at the time the divinylbenzene shipments were booked on the casualty voyage:

> Q. So if Stolt received an instruction "Do not ship if over 27 Celsius," that instruction should be passed on to the ocean carrier because it's a safety warning; is that correct?
>
> MR. NICOLETTI: Objection as to form. You can answer.
>
> THE WITNESS: Yes.
>
> * * *
>
> Q. So sitting here, just so I'm clear, sir, is it or is it not a safety warning, stow away from any heat sources --
>
> MR. NICOLETTI: Objection as to form. You can answer.
>
> BY MR. FLOOD:
>
> Q. -- vessel or other container?
>
> A. Yes, to the stow planner.
>
> Q. I'm sorry?
>
> A. Yes, to the person planning the stowage on the vessel.
>
> Q. It's a safety warning?
>
> A. Yes.
>
> Q. And that should be passed along to the ocean carrier as well?
>
> MR. NICOLETTI: Objection as to form. You can answer.
>
> THE WITNESS: Yes.
>
> * * *
>
> Q. Well, as the HazMat director for Stolt, would you recommend or would you advise Stolt to pass along that instruction --
>
> MR. NICOLETTI: Same objection. You can answer.
>
> BY MR. FLOOD:
>
> Q. -- to the ocean carrier?
>
> A. Yes.
>
> * * *
>
> Q. Sir, I want to put in front of you Exhibit 165. And I'll represent to you, sir – in front of you is Exhibit 165, and I'll represent to you this is the booking request for the three DVB shipments which were loaded aboard the FLAMINIA during the casualty voyage. Okay?
>
> A. Yes.

> Q. Let's take a look at temperature monitoring. Below that it says "If container is greater than 27 Celsius, the ISO container cannot be shipped." Do you see that?
>
> A. Yes.
>
> Q. And I believe you just said that you consider that to be a safety warning; correct?
>
> MR. NICOLETTI: Objection as to form. You can answer.
>
> THE WITNESS: Yes.
>
> BY MR. FLOOD:
>
> Q. And that safety warning, therefore, should have been conveyed by Stolt to MSC; correct?
>
> MR. NICOLETTI: Objection as to form. You can answer.
>
> THE WITNESS: I would have recommended that.
>
> * * *
>
> Q. Is there any other temperature warnings – up top it says Ocean Bill of Lading, and it says "Temperature control instructions. Container to be stowed in stack or below deck to avoid exposure to direct sunlight." And then the next sentence, it says, "Do not stow near heat sources." The sentence "Do not stow near heat sources," is that a safety warning, sir?
>
> MR. NICOLETTI: Objection as to form. You can answer.
>
> THE WITNESS: Yes.
>
> BY MR. FLOOD:
>
> Q. And should that instruction have been passed on to MSC?
>
> MR. NICOLETTI: Same objection.
>
> THE WITNESS: Yes.

*See* transcript of the deposition of John Cario at pages 113-118, a copy of which is annexed hereto as **Exhibit 5**.

    Thus, the only way for Stolt to avoid liability in this case to try to demonstrate that MSC already knew the warnings which Stolt admittedly failed to pass on to MSC at the time of booking. The problem is that while Stolt had a thirteen year history of handling divinylbenzene shipments for Deltech (the manufacturer of the chemical) and knew about the prior autopolymerization incidents that Deltech had experienced in the summer of 2006 when they had previously shipped the product out of New Orleans, knew that the product needed to be kept cool and away from heat sources in order to remain stable, knew that unstable divinylbenzene could present an explosion hazard, and knew that Deltech had specifically requested that the chemical tank not be loaded aboard the vessel if the temperature of the product was at or above 27° Celsius (80° Fahrenheit), MSC had no connection with Deltech and knew none of this.

    The bottom line is that Capt. Kutz was an appropriately designated and adequately prepared representative of MSC under Rule 30(b)(6) and Stolt is unable to demonstrate otherwise. There are no shortcomings with respect to Capt. Kutz's testimony which would justify

a further deposition of Mr. Vande Velde or otherwise undermine the basis for MSC's request for a protective order.

A party is not entitled to continue taking depositions *ad infinitum* until they obtain the favorable testimony or admissions they are hoping for. And now that a Rule 30(b)(6) representative has been produced setting forth MSC's official binding responses with respect to these topics, there is no basis for conducting any further depositions on the same topics since it would clearly just be cumulative to the testimony already repeatedly obtained.

This is demonstrated by the short shrift given to MSC's arguments in favor of its request for a protective order with respect to the noticed depositions of Neill Bishop, Yve Vanlimbergen, and Gianfranco Di Bartolomeo. The few sentences which Stolt devotes in their letter to attempt to justify these depositions fail to provide any substantial opposition to the assertions by MSC that the witnesses noticed lack unique knowledge. Instead they contain a number of inaccuracies regarding the roles of these individuals within MSC, seemingly invented out of whole cloth.

For example, Mr. Bishop is not the head of the Charleston hazardous department. While he is the manager of that department, the department as a whole is supervised by Capt. Kutz. Stolt is silent about the fact that by deposing the assistant manager of the Charleston hazardous department, Kelley Glover, they have already obtained answers to all possible topics they would need Mr. Bishop for.

With respect to Mr. Vanlimbergin, he has never been described by anybody in this case as being "the global leader of the approval process for dangerous cargoes," nor could he be, since in the sentence preceding the one in which Stolt makes that claim, Mr. Vanlimbergen is accurately described as being Mr. Vande Velde's assistant. Having already taken Mr. Vande Velde's deposition there is no justification for also taking the deposition of his assistant and Stolt does not even attempt to provide a justification.

As for Mr. Di Bartolomeo, he is not only not the "head of MSC's computer programming department," but there is no such department within MSC. It is apparent that Stolt has no idea as to what Mr. Di Bartolomeo's role within MSC is, and seems likely that Stolt simply noticed his deposition merely because he was listed among numerous other individuals in MSC's Rule 26 disclosures as someone possessing knowledge potentially relevant to this case. If the goal of noticing Mr. Di Bartolomeo's deposition was to actually gain an understanding of the stowing planning and segregation programs utilized by MSC, then his deposition is cumulative since, as MSC pointed out in its October 16, 2015 letter, numerous other witnesses already testified with respect to the design, operation and parameters of those programs, including a Rule 30(b)(6) corporate representative on those topics.

In summary, Stolt has already heard from multiple MSC representatives regarding all conceivable topics related to the claims and defenses in this case, including **five** witnesses with knowledge concerning dangerous cargo booking and approval procedures. Perhaps more importantly, Stolt has already taken the depositions of two Rule 30(b)(6) representatives of MSC on all topics relating to dangerous cargo procedures and stowing planning and segregation – the very topics that Stolt is now claiming they need testimony from additional MSC representatives regarding. Having obtained MSC's position on these topics via Rule 30(b)(6) representatives, there is no basis to take further cumulative depositions of additional MSC witnesses to probe their knowledge as individuals on these topics.

Incredibly, Stolt is also now, seemingly in retaliation to MSC's request for a protective order, asking for an already produced MSC witness to testify a second time in this case. MSC respectfully submits that Stolt's request is unwarranted and an abuse of discovery procedures, and extends its request for a protective order to ask that Stolt be prohibited from seeking any further testimony from Mr. Vande Velde as well.

The parties, including the undersigned, will be participating in a telephone conference before Your Honor on October 27, 2015 at 5:30 p.m. with respect to a different discovery dispute. Thus, to the extent that Your Honor has any questions with respect to this dispute, the undersigned would be happy to address same during the telephone conference next Tuesday.

Respectfully yours,

**Lyons & Flood, LLP**

By: Jon Werner

Encls.

**VIA E-MAIL**

cc: Chambers of Hon. Shira A. Scheindlin

All counsel of record

U:\FLOODDOC\2549201\Correspondence\Scheindlin 04 ltr.doc