UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: August 30, 2017

IN RE M/V MSC FLAMINIA

12-cv-8892 (KBF)

CORRECTED
OPINION & ORDER*

KATHERINE B. FORREST, District Judge:

Before the Court is a motion for summary judgment in the complex maritime action concerning the explosion and fire aboard the M/V MSC FLAMINIA ("Flaminia"). How and why the explosion occurred, how it was handled, and who should be liable for any monetary loss, are among the issues being litigated in the primary action. The motion that is the subject of this Opinion & Order is brought by a third-party defendant, BDP International Inc. ("BDP"), seeking dismissal of negligence and contract claims asserted against it by Deltech Corporation ("Deltech"), Stolt Tank Containers BV ("Stolt"), and certain cargo interests ("Cargo Interests"). (See, e.g., ECF Nos. 532, 553, 636.)¹ Deltech was the shipper for Divinylbenzene ("DVB") cargo, which some parties argue was a cause of the explosion. Deltech used Stolt to arrange for the transportation of the DVB; BDP had a contractual relationship with Stolt pursuant to which it was involved in the

---

* This Opinion has been edited to reflect the fact that BDP and certain cargo interests had not settled at the time of this Opinion's issuance, or by the time that this corrected Opinion was issued.
¹ There were initially two BDP entities party to this litigation: BDP International, Inc. and BDP International, N.V. BDP International, Inc. is the movant herein; BDP International, N.V. was dismissed from the case in 2014. (ECF No. 630.) Additionally, certain cargo interests also brought claims against BDP, who moved for summary judgment on those claims as well. (ECF No. 904.)

creation of an ocean bill of lading or sea waybill for the DVB; Deltech asserts that it was a third-party beneficiary of that contract. BDP is alleged by both Deltech and Stolt to have failed to ensure that proper stowage instructions for the DVB were included on the sea waybill.

For the reasons set forth below, the Court concludes that there are triable issues of fact with regard to the breach of contract claim brought by Stolt; there are no triable issues, however, with regard to the causation element of the negligence claims brought by Stolt, Deltech, and Cargo Interests.[2] Accordingly, BDP's motion for summary judgment is GRANTED IN PART and DENIED IN PART.

I. FACTS

The following facts are undisputed unless otherwise noted.

A. Facts Relating to the DVB Shipment

In June 2012, Deltech contracted with Stolt as the non-vessel-owning common carrier ("NVOCC") to arrange for shipment of three containers of DVB from Baton Rouge, Louisiana (via the Port of New Orleans) to Antwerp, Belgium aboard the Flaminia. The Flaminia is an ocean carrier chartered by Mediterranean Shipping Co. ("MSC") and operated by NSB NIEDERELBE SCHIFFAHRTSGESELLSCHAFT MBH & CO. kg ("NSB"). At the time of the events at issue, MSC was the charterer and carrier of the cargo on the Flaminia. (See BDP Rule 56.1 Statement of Material Facts ("BDP 56.1") ¶¶ 1-4, ECF No. 900.)

---

[2] Cargo Interests did not oppose this motion.

Deltech initiated this process by sending an initial booking request to Stolt on June 8, 2012; Stolt confirmed the booking three days later, on June 11, 2012. (BDP 56.1 ¶¶ 67-70.) Stolt used BDP to process certain documents associated with the ocean transport, including the ocean bill of lading. (See id. ¶¶ 18, 45.) A bill of lading generally indicates the shipper and cosignee, the "notify" party (usually a destination customs broker), a description of the commodity to be transported, the routing of the cargo (ports of loading, transshipment, and discharge), the gross and net weight of the cargo, its cubic volume, the container number(s), the vessel name and voyage number undertaking the carriage, the date of sailing ("on board date"), and other information. Among the other information that can be included are stowage instructions. (See BDP 56.1 ¶ 9.)

If dangerous goods are being transported, statute requires that a "dangerous goods transport" document be provided. A "Dangerous Goods Declaration" or "DGD" is one type of such document. (See id. ¶¶10-11.) BDP was not engaged to provide the DGD. (Id. ¶ 64.)

Michael Herrara served as customer representative in the booking department of MSC in June and July 2012. (Id. ¶ 12.) Herrara testified that special instructions regarding stowage might be contained in a DGD or would be negotiated "at a higher level" when rates were negotiated. (Dec. of John A. V. Nicoletti Ex. 5 at 91:20-24, ECF No. 920-1.) Herrara also testified that that the Dangerous Goods Department in Antwerp reviews and approves requests to ship dangerous cargo. (BDP 56.1 ¶ 15.) In fact, DVB shipments could not be in-gated at

3

the terminal without the dangerous goods declaration and approval by the Dangerous Goods Department in Antwerp. (Id. ¶ 17.)

Herrara testified that upon receiving the dangerous goods declaration, he input the information "into the system, and the information would be the consignee, the UN number, the hazardous class, the packaging group, the proper shipping name, [and] the weights." (BDP 56.1 ¶ 19.) Once the cargo is booked, "documentation" is dealt with in the Documentation Department. (Id. ¶ 23.)

Mario Gonzalez served as the Manager of MSC's Export Department in June and July 2012. (Id. ¶ 24.) He testified that this department is in charge of preparing bills of lading for the ports of New Orleans in Louisiana. (Id. ¶ 25.) The department is not responsible for receiving DGDs. (Id. ¶ 30.) He further testified that his department first becomes involved with a shipment "[a]fter the container is loaded [at the customer facility] and all the information is available." (Id. ¶ 26.) Gonzalez testified that after receiving a master bill-of-lading instructions, the Export Documentation Department would assign a bill-of-lading number to the shipment "and then they will manifest the bill of lading." (Id. ¶ 27.) After all of the "information is entered into the system, [they] will send a draft bill of lading to the customer for their review." (Id. ¶ 28 (alteration in original).) After the vessel sails, the department sends a final bill of lading to the customer. (Id. ¶ 29.)

Dean Kutz is MSC's Director of Safety, Compliance and Security in the Hazardous Group. (Id. ¶ 36.) The Hazardous Group checks cargo. It does not have the bill of lading when it is reviewing and checking cargo. Hazardous cargo is

4

stowed "in accordance with the requirements of the [relevant statutory code] based on the class and UN number provided by the shipper." (Id. ¶ 37.) Michael C. Deaton of MSC's Hazardous Group testified that when he is preparing a stowage plan, draft bills of lading are not available to him. (Id. ¶ 39.) He further testified that when he is preparing a stowage plan, he does not check bills of lading. (BDP 56.1 ¶ 40.)

Dirk Vande Velde was a dangerous-goods manager at MSC in 2012. (Id. ¶ 41.) He testified that the "dangerous goods declaration is the most important document in the whole transport world" and that "it is the only document that his department wants to see." (Id. ¶ 16.) He also testified that MSC considers all dangerous goods to be heat sensitive when it stows cargo. (Id. ¶ 42.) While a warning that particular cargo was heat sensitive would raise a special concern for him, Vande Velde testified that special stowage instructions would nonetheless not be required. (Vande Velde Dep. at 295:15-296:22, ECF No. 766-1 at 77.)

Vande Velde further testified that the procedure for dangerous cargo would require the placement of a "container in between" the cargo and any potential heat source regardless of whether MSC had received notice that it is heat sensitive, unless the cargo was stored in a closed container, which provides sufficient segregation. (Id. at 296:8-297:9.) This testimony, along with MSC's Dangerous, Chemical and Critical Cargo Handling Procedures (Dec. of James W. Johnson Ex. 12, ECF No. 906-3), demonstrate no material factual difference between Deltech and MSC's policies regarding the storage of heat-sensitive cargo.

5

TyTrinia Breaux served as the documentation coordinator for BDP during June and July 2012. (BDP 56.1 ¶ 44.) That department was responsible for processing bills of lading to send to carriers for Stolt. (See id. ¶¶ 47, 51.) The final bill of lading from the carrier is referred to as a "master bill of lading." (See id. ¶ 58.) The initial step in the creation of a master bill of lading is receipt of instructions from the Stolt customer. (BDP 56.1 ¶ 49.) Breaux testified that if there was a particular stowage instruction on a customer's shipping instruction, it would be manually entered into BDP's system. (Id. ¶ 53.) Once all of the information is entered into the BDP system, the draft bill of lading would be sent to the carrier. (Id. ¶ 55.) Here, that was to MSC. Breaux testified that neither she nor anyone else at BDP to her knowledge had any role in preparing the DGD, and she does not receive a copy of the DGD. (Id. ¶ 64.) In connection with the DVB shipment at issue in this lawsuit, Breaux testified that she received initial shipping instructions from Deltech's freight forwarder, Panalpina. (Id. ¶¶ 85-86.) Those instructions stated "DO NOT STOW NEAR HEAT SOURCES. STOW ABOVE DECK FOR TEMPERATURE MONITORING." (See id. ¶ 91.) She input those instructions into the BDP system and, when the form was complete, she submitted it to MSC. (Id. ¶¶ 87, 91.) The stowage instructions were included on the form she sent to MSC. (Id. ¶ 91.) When MSC sent back to her a master bill of lading, she neglected to notice that the stowage instructions were not included. (Id. ¶ 99.)

Stolt submitted a preliminary DGD relating to the Deltech DVB shipment to MSC on June 20, 2012. (Id. ¶ 77.) Stolt submitted a final DGD on June 26, 2012.

6

(Id. ¶ 80.) The MSC Dangerous Goods Department approved the request to ship the DVB cargo. (Id. ¶ 81.) Herrara testified that Stolt did not request any special treatment for the DVB cargo when it booked transport on the Flaminia. (Dec. of James W. Johnson Ex. 5 at 58:21-24, ECF No. 906-2 at 19.)

The DVB cargo was loaded onto the Flaminia on July 1, 2012 and the vessel sailed the next day. (BDP 56.1 ¶ 117.) On the morning of July 14, 2012, there was an explosion in Flaminia's Hold No. 4. (Id. ¶ 120.)

B. Stolt/BDP Contract

On May 13, 1999, Stolt and BDP entered into a long-term Logistics Alliance Agreement. (Dec. of John A. V. Nicoletti Ex. 10, ECF No. 920-2.) In pertinent part, the agreement provided that Stolt and BDP were "partners" who would each serve different but complementary roles, (id. § 4.7), in providing "logistics services" to the chemical industry. (§ 2.2.) Services would be provided to "mutually agreed customers" and would include, inter alia, freight forwarding and the process of electronic documentation. (§§ 3, 6.1.) Stolt and BDP agreed that, as partners, they would conduct pricing and contractual term discussions in a collaborative manner. (§ 4.5.) They agreed to "present a coordinated approach in dealing with specified and mutually agreed customers." (§ 6.1.)

This alliance agreement was in place at the time that Stolt worked with BDP on the Deltech DVB cargo.

II. RELEVANT LEGAL PRINCIPLES

A. Standard Of Review

7

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party does not bear the ultimate burden on a particular claim or issue, it need only make a showing that the non-moving party lacks evidence from which a reasonable jury could find in the non-moving party's favor at trial. Id. at 322-23.

In making a determination on summary judgment, a court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010). Once the moving party has discharged its burden, the opposing party must set out specific facts showing a genuine issue of material fact for trial. Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted). In addition, "[o]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment[.]" Porter v. Quarantillo, 722 F.3d 94, 97 (2d Cir. 2013) (internal quotation marks and citation omitted).

8

Only disputes relating to material facts—i.e., "facts that might affect the outcome of the suit under the governing law"—will properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (stating that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The Court should not accept evidence presented by the nonmoving party that is so "blatantly contradicted by the record . . . that no reasonable jury could believe it[.]" Scott v. Harris, 550 U.S. 372, 380 (2007); see also Zellner v. Summerlin, 494 F.3d 344, 371 (2d Cir. 2007) ("Incontrovertible evidence relied on by the moving party . . . should be credited by the court on [a summary judgment] motion if it so utterly discredits the opposing party's version that no reasonable juror could fail to believe the version advanced by the moving party.").

B. Breach of Contract

The contract between Stolt and BDP is governed by New York law. To sustain a claim for breach of contract, New York law requires the following three elements: (1) the existence of a contract; (2) breach; and (3) damages resulting from, or caused by, that breach. Nat'l Market Share, Inc. v. Sterling Nat'l Bank, 392 F.3d 520, 525 (2d Cir. 2004). Thus, to defeat BDP's motion for summary judgment on this claim, Stolt and/or Deltech must raise a triable issue as to at least one element.

C. Negligence

9

Under federal maritime law, a negligence claim consists of four elements: (1) the existence of a duty of care owed by the defendant; (2) breach of that duty; (3) a causal connection between the conduct resulting in the breach and plaintiff's injury; and (4) actual loss, injury, or damage.  See Becker v. Poling Transp. Corp., 356 F.3d 381, 388 (2d Cir. 2004) ("[F]ederal maritime law incorporates common law negligence principles generally, and New York law in particular."); Pearce v. United States, 261 F.3d 643, 647 (6th Cir. 2001) (The elements of a negligence action under maritime law are "essentially the same as those under land based common law," i.e., "1) the existence of a duty of care owed by the defendant to the plaintiff; 2) the breach of that duty of care; 3) a causal connection between the offending conduct and the resulting injury, which is called 'proximate cause'; and 4) actual loss, injury or damage suffered by the plaintiff.") (citing 1 Thomas J. Shoenbaum, Admiralty & Maritime Law § 5-2 at 170 (3d ed. 2001)).

Whether a duty exists is a threshold inquiry.  See Eaves Brooks Costume Co. v. Y.B.H. Realty Corp., 76 N.Y. 2d 220, 226 (N.Y. 1990) (citing Strauss v. Belle Realty Co., 65 N.Y.2d 399, 402-03 (N.Y. 1985)).  A court's determination in this regard depends on "a number of factors including, most notably, the foreseeability of the harm suffered by the complaining party." In re Great Lakes Dredge & Dock Co., LLC, 624 F.3d 201, 211 (5th Cir. 2010); (quoting Consol. Aluminum Corp. v. C.F. Bean Corp., 833 F.2d 65, 67 (5th Cir. 1987)).  Courts look to whether the plaintiff was within the zone of foreseeable harm and whether the accident was within the reasonably foreseeable risks.  See Di Ponzio v. Riordan 89 N.Y. 2d 578,

10

583 (1997) (citing Palsgraf v. Long Island R.R. Co., 248 N.Y. 339 (N.Y. 1928)). While foreseeability is generally a question for the factfinder, a court may make the determination when the risk was unforeseeable as a matter of law. See Sanchez v. New York, 99 N.Y.2d 247, 254 (N.Y. 2002). In maritime cases, a harm is considered foreseeable if the harm that occurred is of the general sort that "'might have been anticipated by a reasonably thoughtful person, as a probable result of the act or omission, considering the interplay of natural forces and likely human intervention.'" Great Lakes Dredge & Dock, 624 F.3d at 210 (quoting Consol. Aluminum Corp., 833 F.2d at 68).

In addition to breach of an existing duty, to defeat summary judgment a plaintiff must also raise a triable issue as to causation. That is, to establish a claim for negligence, the breach of the duty must be the legal cause of the harm or injury plaintiff suffered. Great Lakes Dredge & Dock, 624 F.3d at 213-14; see also Donaghey v. Ocean Drilling & Expl. Co., 974 F.2d 646, 649 (5th Cir. 1992). A "legal cause" is more than "but for" causation: the breach must constitute a substantial factor in bringing about the injury. Donaghey, 974 F.2d at 649; see also Thomas v. Express Boat Co., 759 F.2d 444, 448 (5th Cir. 1985).

III. DISCUSSION

As discussed at the outset, Stolt and Deltech have asserted both contractual and tort claims against BDP. The Court reviews them in turn.

A. The Negligence Claims

11

Stolt, Deltech, and Cargo Interests have asserted a variety of negligence-based claims. See ECF No. 553 ¶¶ 21-28 (Stolt's First Cause Action (negligence)); ECF No. 532 ¶¶ 33-37 (Deltech's First Cause of Action (seeking indemnification based on negligence)); id. ¶¶ 38-42 Deltechs's Second Cause of Action (negligence)); id. ¶¶ 49-53 (Deltech's Fourth Cause of Action (strict liability)); ECF No. 636 (Cargo Interests' Claims (various forms of negligence)). Each of these claims fails for the same reason: There is no triable issue of fact with regard to causation. That is, even if this Court were to find triable issues with regard to the existence of a duty of care and breach of that duty, there is no triable issue that such breach was causally related to the casualty aboard the vessel.

No party has raised a triable issue of fact as to whether BDP's failure to ensure that the special stowage instructions were included on the master bill of lading was a cause of the Flaminia casualty. As MSC's Director of Safety, Compliance and Security testified, the MSC Hazardous Group does not have the bill of lading when it is reviewing and checking cargo, and it stows hazardous goods "in accordance with the requirements of the [relevant statutory code] based on the class and UN number provided by the shipper"—not the bill of lading. (BDP 56.1 ¶ 37.) Vande Velde, who served as MSC's dangerous-goods manager during the relevant time period, testified that the DGD—not the bill of lading—"is the most important document in the whole transport world" and that "it is the only document that his department wants to see." (Id. ¶ 16.) See also Vande Velde Dep. at 295:15-296:22. Therefore, even if BDP had a duty to ensure that the heat-related stowage

12

instructions were included on the master bill of lading, on the undisputed facts, its failure to do so made no difference in how the DVB cargo was stored on board the Flaminia.

B. Stolt's Contract Claim

The law is clear that damages resulting from breach of an obligation is an element of any contract claim. See Nat'l Market Share, 392 F.3d at 525. This legal proposition forms the basis for BDP's principle argument in support of summary judgment dismissing the contract claims.

Stolt's contract claim against BDP asserts two separate types of damage arising from BDP's breach: (1) improper stowage of the DVB and thus the casualty aboard the vessel, and (2) deprivation of a defense Stolt might have vis-à-vis other parties in the main action. ECF No. 553 ¶¶ 33-34. For the reasons discussed above, there is insufficient record evidence to support a triable issue on the first argument: There is simply no evidentiary basis to conclude that the omission of the heat warning from the bill of lading contributed in any way to the casualty aboard the vessel. Indeed, the evidence is to the contrary. However, the second argument does have legal and factual support that provide a basis for the claim to proceed.

The contract between Stolt and BDP provides that BDP would perform certain document processing duties in connection with customer assignments. Proper and adequate performance of such duties is implicit in that agreement. Failure to notice the omission of the heat warning from the master bill of lading amounts to a breach of that duty. Had the heat warning been included on the bill of

13

lading, Stolt may have had certain defenses available to it. As Stolt argues, "those failures directly resulted in the instructions not being an express term of the contract of carriage." (Stolt Mem. in Opp. at 13, ECF No. 918 at 18). Had the instructions been on the bill of lading, Stolt may have had a complete (or partial) defense to the claims against it. (Id. at 12.)

Given the Court's conclusion regarding causation (i.e., that the lack of heat warning was not causally related to the casualty), it is frankly unclear how Stolt could expect a defense based on such instructions therein to be successful. That does not mean, however, that the inclusion would not have had value. It is plain that the lack of heat instructions on the bill of lading has provided parties with arguments that they otherwise would not have had in this litigation, and that defending against such arguments has required the expenditure of resources and increased litigation risk. Under such circumstances, the Court finds that Stolt has sufficient support for damages relating to the breach to allow the claim to proceed to trial.

C. Deltech's Contract Claim

Deltech's First and Fifth Causes of Action against BDP (asserted as a third-party claim) assert contact claims. The First Cause of Action is cast as one for indemnification and contribution based on, inter alia, BDP's breach of contract. In this claim, Deltech asserts that the breach of contract, inter alia, caused or contributed to the casualty on board the vessel and that if it is ultimately held liable, then BDP should indemnify or contribute to any sums recovered. (ECF No.

14

532, ¶¶ 33-37.) Deltech neither specifies the contract breached nor its position with regard to it.

Deltech's Fifth Cause of Action claims is cast as a breach of the contract between Stolt and BDP, with Deltech in the position of a third-party beneficiary. (Id. ¶¶ 54-61.) Deltech alleges that if it is found to have liability for the casualty, then BDP's actions in breach caused or contributed to such casualty.

In its papers in opposition to BDP's motion for judgment, Deltech identifies the Stolt/BDP contract "whereby BDP contracted to perform freight-forwarding duties for Stolt" as the operative one, the breach as a failure to properly prepare the bill of lading, and asserts its position as a third-party beneficiary. (Deltech Mem. in Opp. at 5, ECF No. 916.) Deltech argues that BDP's failure to notify Deltech of MSC's elimination of the heat warning from the bill of lading foreclosed Deltech's opportunity to ensure that MSC accepted the warning as a condition of carriage, or, if not, to make alternative carriage arrangements.

As a threshold issue, in order for Deltech to take the first step in avoiding summary judgment on BDP's contract claim, it must raise a triable issue as to whether it is a third-party beneficiary to the agreement BDP had with Stolt. In the absence of such status, Deltech's claim fails to show the required first element: existence of an agreement. See Nat'l Market Share, Inc., 392 F.3d at 525. Based on the record before the Court, there are sufficient issues to raise a triable issue on this question. As the claim fails at the next step of the analysis, the Court does not dwell long on this issue except to note that record evidence supports Deltech's

15

argument that it was a disclosed principle. In addition, the Stolt/BDP contract is cast as an "Alliance Agreement", and explicitly acknowledges that the parties shall work as "Partners" for "mutually agreed customers." (Dec. of John A. V. Nicoletti Ex. 10, ECF No. 920-2 at 3-4.) The contract anticipates that Stolt would accept work from third parties such as Deltech, and utilize BDP as its "partner" in performing such work. Under the totality of circumstances in the record on this motion, the Court concludes that there is a triable issue on this element.

For purposes of this motion at least, BDP does not contest that it failed to adequately perform its duties under its agreement with Stolt. It is the final element of a contract claim, causation of damage, that is dispositive in BDP's favor. For the same reasons as those discussed above with regard to the negligence claims, the record evidence fails to support any argument that the omission of the heat instructions in the bill of lading played any role in the casualty aboard the vessel. That lack of evidence requires dismissal of Deltech's contract claim.

The Court notes that there is an important difference between Stolt's contract claim and Deltech's: Stolt's argument for damages resulting from the breach were cast in two, alternative ways. First, Stolt alleges the contractual breach caused (or contributed) to the casualty—an argument that ultimately fails for lack of support in the record. Second, Stolt alleges separately that the omission impacts its defenses to liability claims from others. As discussed above, it is this type of damage that provides a basis for Stolt's contract claim to proceed. Deltech

has not made a similar allegation. It is for that reason that Stolt's contract claim against BDP survives and Deltech's does not.

IV. CONCLUSION.

For the reasons set forth above, the motion for summary judgment is GRANTED as to all negligence claims by Stolt, Deltech, and Cargo Interests against BDP, GRANTED as to Deltech's contractual claims against BDP, and DENIED as to Stolt's claim that BDP's breach of contract impacted its defenses to liability claims by other parties.

The Clerk of Court is directed to terminate the motion at ECF No. 903.

SO ORDERED.

Dated:   New York, New York
         August 30, 2017

_____
KATHERINE B. FORREST
United States District Judge