UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE M/V MSC FLAMINIA

MASTER FILE: 12 Civ. 8892 (KBF)

THIS DOCUMENT RELATES TO:
ALL ACTIONS

# STOLT'S AND DELTECH'S SUPPLEMENTAL PROPOSED FINDINGS OF FACT

**STOLT'S AND DELTECH'S SUPPLEMENTAL
<u>PROPOSED FINDINGS OF FACT</u>**

**CHAPTER V**

**STOLT PROPERLY VETTED AND APPROVED DELTECH'S DVB FOR CARRIAGE AND DID SO IN A MANNER CONSISTENT WITH OTHER TANK CONTAINER COMPANIES, AND PROPERLY ISSUED DANGEROUS GOODS DECLARATIONS ("DGDS") FOR DVB CONSISTENT WITH DVB DGDS ISSUED BY OTHER TANK CONTAINER COMPANIES**

C.     **STOLT'S PREPARATION AND ISSUANCE OF DGDS**

      i.     **STOLT'S DGDS FOR DELTECH'S DVB WERE CONSISTENT WITH THE DVB DGDS OF OTHER TANK CONTAINER COMPANIES**

            c.     **Suttons' DVB DGD**

1. The Suttons' "Dock Receipts" served as Suttons' DGDs to MSC and other ocean carriers.[1]

2. The Suttons' DVB DGD's sent to MSC all contained the instructions and warnings "CONTAINER(S) TO BE STOWED 'IN STACK' OR BELOW DECK TO AVOID DIRECT SUNLIGHT; DO NOT STOW NEAR HEAT SOURCES."[2]

3. These warnings and instructions should have been entered into MSC's dangerous goods database.[3]

4. Had these warnings and instructions been entered into MSC's dangerous goods database they would have carried over to future shipments.[4]

5. There is a complete lack of evidence that MSC ever acted on the warnings and

---

[1] DTX-0780; DTX-0781; DTX-0782; DTX-0783; and DTX-0784.
[2] DTX-0500.
[3] Vande Velde Dep. Vol. I 268:15 – 269:24.
[4] Vande Velde Dep. Vol. I 268:15 – 269:24.

instructions received in the DVB DGDs either by providing the warnings and instructions to MSC's planners or by providing the warnings and instructions to NOT to properly handle and store the DVB cargoes prior to loading on an MSC vessel.

6. Customer warnings to MSC such as stow away from heat are not provided by MSC to its vessel stowage planners who base their dangerous goods stowage decisions soley on class and UN number.[5]

### d. Leschaco's DVB DGD

7. The Leschaco "Haz Dec/Dock Receipt" served as Leschaco's DGDs to MSC and other ocean carriers.[6]

---

[5] Deaton Dep. 144:16-25.
[6] DTX-0775; DTX-0776 at DTX-0776_0010-0012; DTX-0777 at DTX-0777_0010-0011.

# CHAPTER VI

## MSC KNEW OF THE HAZARDS AND CHARACTERISTICS OF DVB AND HAD AN EXTENSIVE HISTORY WITH DVB PRIOR TO THE MSC FLAMINA VOYAGE

I.   **MSC'S DANGEROUS GOODS DEPARTMENT**

    A.   **MSC's Home Office Dangerous Goods Department In Antwerp.**

    1.   Everything in terms of dangerous goods, whether it be approval or just acceptance for a particular booking, goes through the Antwerp office.[7]

    2.   MSC's home office Dangerous Cargo Department in Antwerp, run by Mr. Vande Velde, oversees the work of MSC (USA)'s hazardous department.[8]

---

[7] Parvin Dep. 117:24 – 120:8.
[8] Parvin Dep. 51:21 – 52:17.

# CHAPTER XI

## MSC'S LIABILITY FOR NOT'S FAILURE TO SAFELY STORE THE DVB AND FOR MSC'S OWN FAILURE IN IGNORING THE SAFETY OF THE DVB WHILE AT NOT

**I.      MSC AND NOT'S PRINCIPAL - AGENT RELATIONSHIP**

    **A.      MSC's Subsidiary (Container Marine Terminals, "CMT") Formed NOT**

1.   Mr. Parvin is the Executive Vice President, Marine Operations for MSC (USA).[9] Prior thereto, Mr. Parvin was Vice President, Marine Operations for eight years and marine operations manager for eleven years.[10]

2.   In July 2012, Mr. Parvin's duties included negotiating contracts with vendors, buying services for the company, overseeing the operation of the company's activities in the various parts of the USA, making sure that on a day-to-day basis it runs safely and efficiently, overseeing a group of managers that take care of the day-to-day business, as the operations team.[11]

3.   As part of Mr. Parvin's duties, he negotiated contracts with NOT which had to be approved by, and were ultimately signed by, MSC S.A. in Geneva.[12]

4.   In July 2012, the managers that reported to Mr. Parvin included, Fabrizio Vaccaro (General Manager, Operations), Chris Downey (Planning Manager), Dean Kutz (Director of Safety and Compliance) and Bobby Stevens (in charge of data collection and reporting).[13]

5.   Mr. Parvin, Mr. Bozzo and Mr. John Mullaney were all involved on behalf of MSC in the formation of New Orleans Terminal ("NOT").[14]

---

[9] Parvin Dep. 12:9 – 13:5.
[10] Parvin Dep. 13:8 – 14:12; 15:21 – 16:3.
[11] Parvin Dep. 19:21 – 20:21.
[12] Parvin Dep. 29:18 – 31:11; 115:3 – 116:11.
[13] Parvin Dep. 21:11 – 22:25.

6.  CMT is a holding company and has no offices.[15]

7.  CMT's business is to own and operate terminals.[16]

8.  Mr. Claudio Bozzo is affiliated with CMT.[17]

**B.  MSC's Subsidiary Is A Majority Owner of NOT**

9.  NOT is owned by CMT (51%) and Ceres (49%).[18] Therefore, MSC, through its holding company CMT, owns a majority interest in NOT.[19]

**E.  MSC Executives Constituted A Majority Of NOT's Board of Managers**

10.  NOT's Board consisted of Mr. Bozzo (MSC), Mr. Formisano (MSC), Mr. Prudenti (MSC), Mr. Burgoyne (Ceres) and Mr. Cashon (Ceres).[20]

11.  The voting on the Board is a straight one man one vote arrangement.[21]

12.  NOT does not have a President, Treasurer or Secretary.[22]

**F.  MSC (USA) Hosted NOT Board Meetings**

13.  Mr. Parvin has attended NOT Board meetings at MSC (USA)'s offices in New York.[23]

**H.  MSC's Control Over NOT's Management, Operations, Budgeting, Accounting and Purchasing**

14.  James Parker is the Vice President of NOT and Kris Calkins is the general manager of NOT.[24]

---

[14] Parvin Dep. 106:18 – 107:9; 114:7-23.
[15] Parvin Dep. 105:11-25.
[16] Parvin Dep. 102:3-22.
[17] Parvin Dep. 103:12 – 104:12.
[18] Parvin Dep. 97:25 – 99:7; 107:14-21.
[19] Parvin Dep. 117:2-7.
[20] Parvin Dep. 108:10 – 109:25; 111:5-13.
[21] Parvin Dep. 111:14-20.
[22] Parvin Dep. 112:11-18.
[23] Parvin Dep. 110:6 – 111:3.
[24] Parvin Dep. 112:5-10.

15. Both James Parker and Kris Calkins of NOT report to Mr. Fabrizio Vaccaro in Mr. Parvin's department at MSC (USA).[25]

16. An MSC employee, Sergio Fedelini, keeps the books for NOT, which are maintained in MSC (USA)'s Charleston office.[26]

## II. MSC ASSUMED LIABILITY PURSUANT TO MSC'S BILL OF LADING CONTRACT WITH STOLT

### A. MSC TOOK CUSTODY AND CONTROL OF THE DVB AT THE TIME OF DELIVERY TO NOT, YET FAILED TO SAFELY CARE FOR THE DVB

17. MSC accepts delivery of cargo as it enters the terminal.[27]

**i. Despite Exercising Control Over Every Other Aspect of NOT's Business, MSC Provides No Instructions to NOT On How To Care For, Handle, Store Or Segregate Dangerous Goods**

18. Despite negotiating the contract with NOT,[28] Mr. Parvin never gave NOT any guidance or instructions as to how to treat shipper's instructions received at the terminal gate.[29]

19. No one at MSC makes sure that NOT is properly storing and handling the cargo to be loaded onto MSC ships.[30]

---

[25] Parvin Dep. 101:4 – 102:2.
[26] Parvin Dep. 134:9-18; 21-25.
[27] Parvin Dep. 124:8-17.
[28] Parvin Dep. 29:18 – 32:22.
[29] Parvin Dep. 124:24 – 125:7.
[30] Parvin Dep. 33:18 – 34:6.

# CHAPTER XII

## MSC VIOLATED SEVERAL OF ITS DANGEROUS GOODS STOWAGE AND SEGREGATION POLICIES AND PROCEDURES IN STOWING THE DVB ON BOARD THE MSC FLAMINIA

### IV. MSC FAILED TO PROPERLY STOW THE HEAT-SENSITIVE DVB ON BOARD THE MSC FLAMINIA

#### A. MSC Improperly Stowed The Heat-Sensitive DVB In Hold 4 With Heated Fuel Oil Tanks

1. Before a vessel is stowed, MSC's vessel planner receives a tank statement from the vessel which informs the MSC planner which fuel tanks aboard the vessel contain fuel and how much fuel is in each tank.[31]

#### E. MSC Violated Its Stowage And Segregation Guidelines In Stowing The MSC FLAMINIA

2. MSC's stowage of dangerous goods in hold 4 of the MSC FLAMINIA violated MSC's dangerous goods stowage and planning guidelines of "spreading of hazardous cargo risk; avoid planning all dangerous cargo in the same hold (do not create a bomb!!!)" and "separate the rows with hazardous cargo by rows with non-hazardous cargo."[32]

3. MSC's planners are expected to follow MSC's internal guidelines for the planning and stowage of dangerous cargo.[33]

### V. MSC'S VESSEL PLANNING AND STOWAGE PROCEDURES

4. MSC treats all Class 9 dangerous goods as interchangeable and, therefore, MSC does not heed any additional instructions for Class 9 cargoes.[34]

---

[31] Parvin Dep. 127:10-128:15.
[32] Parvin Dep. 80:6 – 82:16.
[33] Parvin Dep. 132:19 – 133:18.
[34] Parvin Dep. 142:22 – 143:10. Mr. Parvin has had training in MSC's CASP and stowage systems and planned stowage for MSC from 1988-2005. (Parvin Dep. 17:23 – 18:22; 43:8-15; 44:23-25; 46:4-11).