*Nicoletti Hornig & Sweeney*

WALL STREET PLAZA
88 PINE STREET
SEVENTH FLOOR
NEW YORK, NY 10005-1801
TELEPHONE 212-220-3830
FACSIMILE 212-220-3780
GENERAL@NICOLETTIHORNIG.COM
WWW.NICOLETTIHORNIG.COM

JOHN A.V. NICOLETTI
PARTNER
DIRECT DIAL: 212-220-3837
JNICOLETTI@NICOLETTIHORNIG.COM

August 27, 2018

**VIA ECF**
The Honorable Katherine B. Forrest
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 1950
New York, New York 10007

Re: *In re M/V MSC FLAMINIA*,
Master Case No. 12-cv-8892 (KBF)
NHS File No.: 28000040 JAVN

Dear Judge Forrest:

We are attorneys for Stolt Nielsen USA Inc. and Stolt Tank Containers B.V. ("Stolt"). Together with counsel for Deltech Corp., we write in opposition to the August 24, 2018 letter from counsel for NSB and Conti, concerning disclosure and agency.

NSB/Conti wrongly claim (a) that they did not receive appropriate disclosures and (b) that MSC's knowledge cannot be imputed to NSB/Conti under agency principles. In fact, Stolt and/or Deltech owed no duty of disclosure to NSB/Conti and the disclosures to and knowledge of, MSC is legally imputable to NSB/Conti.

**1. Stolt and Deltech owed no duty to disclose to NSB/Conti**

Stolt and Deltech do not dispute NSB/Conti's initial claim that "prior to the casualty, neither Conti, NSB, nor the crew of the M/V MSC FLAMINIA received any information about the heat sensitive and explosive nature" of the DVB cargo.

But Stolt's and/or Deltech's duty to warn regarding the nature and characteristics of the DVB cargo was owed only to Stolt's Sea Waybill counterparty, MSC, defined as the "Carrier"

NEW JERSEY
505 MAIN STREET, SUITE 106
HACKENSACK, NJ 07601-5928
T 201-343-0970 • F 201-343-5882

ILLINOIS
ONE NORTHBROOK PLACE
5 REVERE DRIVE, SUITE 200, NORTHBROOK, IL 60062
T 847-205-5309 • F 847-205-5310

GEORGIA
4555 MANSELL ROAD, SUITE 300
ALPHARETTA, GA 30022
T 770-521-4234 • F 770-521-4200

by the Sea Waybill. (See DTX-0748_0001 at § 1.) Stolt and Deltech had no duty to provide warnings regarding the nature and characteristics of DVB separately to NSB/Conti, as operator/owner of the MSC FLAMINIA. Indeed, NSB/Conti's August 24, 2018 letter makes no claim that either Stolt or Deltech breached any duty by failing to warn NSB/Conti, separately from the warnings and information Stolt provided to MSC.

*DG Harmony* makes clear that for strict liability under § 4(6) of the Carriage of Goods by Sea Act, 46 U.S.C. § 30701 note ("COGSA"), which makes shippers strictly liable for damages caused by dangerous goods when "the carrier ... has not consented with knowledge" of their dangerousness, "any plaintiff seeking to recover against a shipper in strict liability must first show, as an element of the claim, that the *carrier* did not have such notice." *In re M/V DG HARMONY*, 533 F.3d 83, 94 (2d Cir. 2008) (emphasis added). Similarly, a negligent-failure-to-warn claim turns on whether a shipper breached a duty to a carrier by failing to warn the carrier that "the cargo presented dangers about which the carrier could not reasonably be expected to know." (*Id.*) It is the carrier's knowledge,[1] and in turn the shipper's duty to warn the carrier of information it does not already know, that is determinative of whether a shipper is liable for strict liability or failure to warn.

Neither Stolt nor Deltech had any business or contractual relationship with NSB/Conti and never communicated with NSB/Conti. The Time Charter between Conti and MSC for the MSC FLAMINIA specifically assigned to MSC the duty to provide NSB/Conti with information concerning the dangerous goods cargo to be carried by MSC on the FLAMINIA on behalf of its counterparty shippers. The Conti/MSC Time Charter provides that MSC may carry dangerous goods in ISO tanks "provided same are loaded, stowed, labelled, discharged, and documented in accordance with IMO regulations . . . Every dangerous/hazardous cargo/containers must be accompanied by a container packing certificate and special manifest delivered to vessel's command before loading the relevant containers/cargo." (DTX-0674_0014, cl. 78.)

Thus, to the extent that NSB/Conti received information concerning the DVB cargo, all of that information came directly through MSC, to which Stolt putatively owed duties of disclosure. Stolt fulfilled that duty. Stolt had no duty to separately disclose to NSB/Conti anything beyond its disclosures to MSC.

**2. MSC's knowledge of DVB's properties and characteristics is imputable to NSB/Conti**

The contract of carriage, MSC's Sea Waybill (DTX 0748_0003), specifies and confirms that MSC is indeed NSB/Conti's agent:

[1] Here, the carrier MSC's knowledge is imputable to NSB/Conti, see discussion *infra*.

**1. DEFINITIONS**

**Carrier:** means MSC Mediterranean Shipping Company S.A.

***

**Subcontractor:** includes, but is not limited to the owners, charterers and operators of the vessel …

***

**4. SUBCONTRACTING AND INDEMNITY**

**4.2** … In entering into this contract, the Carrier, to the extent of such terms and conditions, does so on its own behalf and also as **agent** and trustee for such servants, agents and Subcontractors. (Emphasis added)

Moreover at trial, MSC's industry practice expert, Michael Daum confirmed that for SOLAS disclosure purposes, MSC was NSB/Conti's agent, which obviated any need for Stolt to make SOLAS disclosures to NSB/Conti:

Q. Now, under SOLAS I believe the information has to get to the captain or its agent concerning the stowage; is that correct?
A. Yes.
Q. Now in dealing with a charted (sic) vessel -- do you understand what a charted (sic) vessel is?
A. Sure.
Q. We have the vessel owner and then we have the common carrier. And in this case the common carrier is MSC, the vessel owner is Conti managed by NSB. You understand that?
A. Yes.
Q. Isn't it true that Stolt will have complied with SOLAS if it gives the appropriate stowage instructions to MSC?
A. I would say so, yes.
Q. So there need not be any direct communication from Stolt to NSB or Conti; is that correct?
A. Yes.
Q. That so long as Stolt provides the appropriate stowage instruction to MSC, Stolt has complied with SOLAS; is that correct?
MR. O'CONNOR: Objection.
THE COURT: I will allow it.
THE WITNESS: I would say so, yes.
Q. In fact, in these types of situations MSC is the agent of the vessel owner; is that correct?

A. That is --
MR. O'CONNOR: Objection.
THE COURT: Hold on. All right. I'll allow it.
THE WITNESS: I would say yes.

(Trial Transcript p. 1865 L:17-p. 1866 L:21).

Q. I just have a couple of questions for you. I thought in your testimony earlier today you said that you thought that MSC was an agent of the vessel owner?
A. That was my understanding of more or less what MSC's role was, as far as their activities in regards of receiving instructions to the vessel.

(Trial Transcript p. 1888 L:25-p. 1889 L:5).

NSB Conti readily concedes, as it must, that "…[a]s a general proposition under US law, the knowledge of an agent can be imputed to its principal when the agent is acting within the scope of its employment". (August 24, 2018 Letter - ECF 1562 at 7.)[2] Therefore, the knowledge (including disclosures made) of the agent MSC, is imputed to NSB/Conti, as principals. Here, the hazards and dangers of DVB were fully and repeatedly disclosed to MSC,[3] as NSB/Conti's agent. As such, MSC's knowledge (of the DVB disclosures made) is imputed to NSB/Conti.

While NSB/Conti alleges that "the MSDS for Deltech's DVB was not delivered to the MSC FLAMINIA" (August 24, 2018 Letter - ECF 1562 at 7), NSB/Conti's own expert, Captain Brian Hall, testified at trial that the MSC FLAMINIA could readily access MSDSs for any dangerous cargo that was being carried (See Trial Transcript p. 1948 L:14-21; p. 1950 L:3-12).

[2] *See also In re M/V MSC FLAMINIA*, No. 12-CV-8892 (SAS), 2015 WL 4939609, at *2 (S.D.N.Y. Aug. 19, 2015) (quoting *Apollo Fuel Oil v. United States*, 195 F.3d 74, 76 (2d Cir. 2009)); *New York Univ. v. First Fin. Ins. Co.*, 322 F.3d 750, 753 (2d Cir. 2003) ("The general rule is that knowledge acquired by an agent acting within the scope of his agency is imputed to his principal and the latter is bound by such knowledge although the information is never actually communicated to it."); *Reino de Espana v. Am. Bureau of Shipping, Inc.*, 691 F.3d 461, 473-74 (2d Cir. 2012) (imputation requires establishing an agency relationship and that information was within scope of the agency); *Mallis v. Bankers Trust Co.,* 717 F.2d 683, 689 n. 9 (2d Cir.1983) ("It is a basic tenet of the law of agency that the knowledge of an agent . . . is imputed to the principal."); *Cromer Fin. Ltd. v. Berger*, 245 F. Supp. 2d 552, 560 (S.D.N.Y. 2003); *Veal v. Geraci,* 23 F.3d 722, 725 (2d Cir.1994). As a result, a principal may "be charged with notice of facts that an agent knows or has reason to know." *FLAMINIA*, 2015 WL 4939609, at *2 (quoting Restatement (Third) of Agency § 5.03 cmt. a (2006)); *American Industries Corp. v. M.V. Margarite*, 1982 A.M.C. 2167 (S.D.N.Y. 1980) (importer charged with knowledge of forwarding agent); *Caterpillar Overseas v. SS Havtroll*, 333 F. Supp. 783 (S.D.N.Y. 1972) (shipper charged with knowledge of forwarding agent).

[3] See Stolt and Deltech's Findings of Fact (ECF 1539-1) at Chapters VI and VII.

Accordingly, the DVB MSDS hazardous information was readily available to the MSC FLAMINIA, should the ship's Captain or officers so wish or choose to inform themselves.

To summarize, Stolt and/or Deltech owed no duty of disclosure to NSB/Conti. That duty was owed by NSB/Conti's agent MSC, to whom Stolt had made full and repeated disclosures and whose knowledge of DVB's hazardous characteristics was known to MSC through said disclosures and otherwise.

We thank the Court for its attention herein, and we remain,

Respectfully yours,
NICOLETTI HORNIG & SWEENEY

By: s/John A.V. Nicoletti
John A.V. Nicoletti

cc: All counsel
VIA ECF