# MONTGOMERY McCRACKEN
ATTORNEYS AT LAW

| | | |
|---|---|---|
| Timothy Semenoro<br>Admitted in New York, New Jersey | 437 Madison Avenue<br>New York, NY 10022<br>Tel: 212-867-9500 | Direct Dial:   212-551-7793<br>Fax:   212-599-1759<br>Email:   tsemenoro@mmwr.com |

October 4, 2023

Hon. Sarah L. Cave
United States Magistrate Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:   In re M/V MSC FLAMINIA – Master File: SDNY No. 12 Civ. 8892 (GBD)(SLC)

Dear Magistrate Judge Cave,

We are the attorneys for the Plaintiffs Conti 11. Container Schiffahrts-GMBH & Co. KG MSC "FLAMINIA" ("Conti") and NSB Niederelbe Schiffahrtsgesellschaft MBH & Co. KG ("NSB"), who are the owner and operator of the M/V MSC FLAMINIA, in the subject Limitation action.

We submit this joint letter in accordance with Your Honor's August 24, 2023 Telephone Conference Scheduling Order (D.E. 1738). Each party's position is stated in the respective sections below, beginning with Conti, NSB, and MSC's position (Section I), followed by Stolt's position (Section II), and Deltech's position (Section III).

I.   Conti, NSB, and MSC's Position

   a)   Status of Exchange of Documents and Information

Following the telephone conference conducted on August 24, 2023, Conti, NSB, and MSC provided updated claims schedules identifying, with particularity, all of the damages being claimed, as well as calculations of pre-judgment interest with respect to each item of damages. Claims supports for the new items of damages claimed by Conti and NSB were also produced. MSC has provided the proofs of payments to Conti, as well as the container leasing contracts that were requested. In sum, all of the materials requested by counsel for Stolt during the August 24, 2023 telephone conference have now been provided.

Page 2

    b)    Issues Raised by Stolt

Real Party in Interest

Conti, NSB, and MSC have already identified to Stolt the identity of every insurer that might receive any amounts to be paid by Stolt. As acknowledged by Stolt, Conti, NSB, and MSC represent themselves and their underwriters, as confirmed by the ratification letters already provided to Stolt. As such, under basic concepts of subrogation, they are entitled to recover 100% of the principal and interest awarded to themselves and their ratifying underwriters. Stolt's continued references to relatively small deductibles is irrelevant and, even if they were, appear inaccurate.

Moreover, MSC has made voluntary payments to Conti / NSB based on the U.K. Arbitration Award. MSC and Conti / NSB have been completely transparent about these payments of both principal and associated interest. MSC has already provided documentary proof of each payment in their updated claim summaries provided to Stolt. Likewise, Conti / NSB's updated claims summary provided to Stolt has the line items for which payment has been received from MSC removed.

To be clear Conti / NSB's liability underwriters currently have a retention of $8 Million for future claims. As a matter of fact, this retention amount cannot include the nearly $150 million Conti / NSB and their underwriters already paid in the past to various vendors, service providers, and governments as a result of the harm cause by Stolt and Deltech. An underwriter's retention for future claims is irrelevant here.

Conti / NSB's Entitlement to Damages Outside the UK Award

Conti / NSB claims damages outside UK award are actually $12.7 million plus interest of over $5.2 million. Conti / NSB have already explained to Stolt that any payments by Stolt must be made to them, and portions of those funds will then be distributed back to their various underwriters as per insurance contract obligations. As to whether MSC and Conti / NSB are entitled to these costs, a significant portion was spent to address Stolt's excessive discovery into the actions of Conti / NSB's insurance brokers and underwriters. And, more importantly, the September 10, 2018 phase 2 liability opinion from Judge Forrest states that Conti is entitled to full indemnification under the terms of the Sea Waybill. Under Clause 15.2, indemnification includes all loss, damages, expenses, and costs, including all reasonable legal expenses. As such, Stolt must pay these expenses too.

Entitlement to Prejudgment Interest

The Court applied New York law when holding that "MSC, along with its subcontractors Conti and NSB, are entitled to full indemnification from Stolt and Deltech under the terms of the Sea Waybill."

Page 3

New York law provides that prejudgment interest "shall be recovered upon a sum awarded because of a breach of performance of a contract," CPLR § 5001(a), "at the rate of nine per centum per annum," CPLR § 5004. "These provisions 'impose[ ] an affirmative mandate on trial courts,' and leave 'no discretion not to award prejudgment interest under New York law.'" In re Sept. 11 Litig., 802 F.3d 314, 343 (2d Cir. 2015) (quoting Gussack Realty Co. v. Xerox Corp., 224 F.3d 85, 93 (2d Cir. 2000) (per curiam)).

The fact that Conti, NSB, and MSC received payments from their respective underwriters with respect to the majority of the damages being claimed does not affect their entitlement to prejudgment interest. See, e.g., Gibbs v. Hawaiian Eugenia Corp., 966 F.2d 101, 106 (2d Cir. 1992) ("The general rule is that an insurer's right to subrogation attaches, by operation of law, on paying an insured's loss. ... At that time, the insurer is subrogated in a corresponding amount to the insured's right of action against any other person responsible for the loss, and the insurer succeeds to all the procedural rights and remedies possessed by the insured.") (emphasis added).

c) Request for Settlement Conference

During the July 25, 2023 conference before Judge Daniels, he stated "I would like to refer you to Magistrate Judge Cave for two things——one, settlement discussions, so if you can engage in fruitful settlement discussions short of having to prepare for trial, then obviously that would be preferable." See attached transcript at pp. 12-13.

Judge Daniels further added that any settlement conference should be conducted "as early as possible" and that "to only start thinking about that in October is probably a little late," adding that he "would like to see some indication of whether or not it is likely or unlikely that there will be a settlement by the end of the year" failing which he expected "the parties to be preparing themselves for trial." See attached transcript at pp. 15-16.

Due to the number of party representatives and their locations in Europe, the earliest a settlement conference can reasonably be held is in December 2023. Conti, NSB, and MSC therefore respectfully request that Your Honor schedule a settlement conference at a convenient date in December 2023. The settlement conference should be face-to-face between principals authorized to conclude this matter.

II. Stolt's Position

a) Status of Claimed Damages and Projected Stolt Payments

The damages claimed by MSC and Conti/NSB and ratified by their respective insurers are:

(1) The estimated amount awarded against MSC to Conti/NSB in the London Arbitration, which is between $150 and $165 million depending upon the currency exchange rates on the date of payment.

Stolt is in the process of collecting proceeds from its insurers and should be in the position to pay some $150 million or more for the principal amounts awarded – no interest – on or about October 21, 2023. Because MSC and Conti/NSB have a less than .0025% interest in these proceeds and, although requested, neither has identified which ratifying insurer and/or excess insurer are entitled to receive the payments, Stolt will pay the money into Court.

The payment of the amounts owed under the U.K. Arbitration has been further complicated by some reported interim payments by MSC's insurers to Conti/NSB's insurers. As previously reported to the Court, the MSC and Conti/NSB primary insurers have a limited retention of $8 million. Amounts paid by insurers in excess of the $8 million retention was passed on to a common excess insurer, the Pool of P&I Clubs in London. We have requested proof of payment between MSC and Conti/NSB insurers but have received only copies of e-mails from MSC's solicitor, Guy Mills, advising that MSC's insurer have or will make payments to satisfy, in part, the U.K. Award.

(2) MSC and Conti/NSB have both claimed damages outside of the U.K. Award. MSC's claim is in the approximate sum of $30 million and Conti/NSB's claim is in the approximate sum of $12 million. Stolt is in the process of reviewing and vetting MSC's and Conti/NSB's claimed damages and, if verified as valid claims, Stolt will make payments to the appropriate insurers. Again, but for small deductibles, the insurers of MSC and Conti/NSB, respectively are the real parties in interest. We note that the majority of damages claimed by Conti/NSB relate to costs in prosecuting the U.K. Arbitration or defending against MSC's Limitation Action in London. Stolt will seek a ruling from the Court on whether such costs are recoverable under the U.S. indemnity order.

(3) MSC and Conti/NSB and more accurately their respective insurers seek interest in an amount in excess of $100 million. Bearing in mind that MSC and/or Conti/NSB are only entitled to indemnity, the interest claimed far exceeds the actual loss of use of the money over the last 10 years. Stolt will be challenging by motion the interest claimed and who is entitled to collect that interest.  As shown by the above citations proffered by MSC and Conti, the question of interest is a legal issue which Stolt will present by motion. After paying the substantive claim amounts, Stolt will seek the Court's permission to file a motion on the amount owed for interest.

b) Stolt's Position on Mediation

Stolt respectfully declines to participate in a mediation based on past experience with the insurer's representative of Conti/NSB. In all prior mediations, MSC and Conti/NSB representatives have demanded 100% of the damages plus exorbitant sums in interest.  At the present time, the MSC and Conti interest seek interest in excess of 100 million dollars. Stolt is challenging that amount on a legal basis and mediation will be fruitless in light of that ongoing demand. Further, Deltech seeks mediation, but has not offered to increase its

contribution to settlement beyond 13 million dollars. Recall, Deltech was found 55% responsible for all damages and when the 100-million-dollar interest claim is added raises the total 275 million dollars or more.   (N.B. For the sake of completeness, Stolt agreed to indemnify Deltech up to the limit of its remaining insurance which is 133 million dollars.  However, that indemnity obligation only arises after Deltech pays the initial 13 million dollars.) Once again, Deltech's steadfast position does not allow for a meaningful mediation."

Stolt believes the open issues to be addressed are legal in nature and can be resolved by motion practice.

c) Stolt's Position on Settlement Conference

A settlement conference is premature at this stage. First, Stolt is in the process of paying the principal amounts owed under UK Arbitration Award, which is in the sum of approximately 150 to 165 million dollars. We have already collected 101 million dollars.  Stolt is also in the process of vetting the validity of claims for damages outside of that award which MSC's and Conti's Underwriters have submitted. To the extent payable, Stolt will also pay those amounts which it deems valid. Once these principal amounts are paid to the real parties in interest or paid into court, this will narrow and identify the remaining disputes, which principally involve MSC's and Conti's demand for 100 million dollars in interest. As for Deltech, although jointly and severally liable, it refuses to pay the agreed 13 million dollars and has shown no inclination to pay anything further to resolve the case. In fact, over the last several years, Deltech has made attempts to make Deltech judgment proof.

d) Stolt/Deltech Agreement

In 2017, Stolt and Deltech entered into a settlement agreement with the cargo interests, whose cargo was lost or damaged in the July 2012 incident. To settle the cargo claims, Stolt and Deltech made payments to the cargo interest in the sum of approximately $77 million of which Deltech's insurer contributed $25 million with the majority of the balance paid by Stolt's insurers.

As part of that Agreement, Deltech agreed to pay $13 million towards any judgment or settlement with respect to claims by MSC and/or Conti/NSB. In return for the actual payment, Stolt, with the consent of its insurers, agreed to indemnify Deltech up to the remaining limits of the insurance proceeds - $133 million as of this writing.

Stolt considers its projected payment of some $150 million towards the principal sums awarded in the U.K. Arbitration to be a partial satisfaction of any judgment or, at minimum, a reasonable settlement of the claim.

Page 6

Stolt has demanded that Deltech pay the $13 million under the aforesaid Agreement. Deltech refuses to make that payment.

By virtue of Deltech's refusal to pay, Stolt seeks the Court's permission to file a motion requiring Deltech to pay the $13 million or to void Stolt's obligation to indemnify Deltech.

III.     Deltech's Position

Deltech and Stolt did indeed enter into a Settlement and Indemnification Agreement on or about July 11, 2017. See Phase 2 Exhibit PX-432. As part of that Agreement, Stolt agreed "to indemnify and hold Deltech harmless from and against any and all settlements, awards and/or judgments, except for punitive damages, that may be entered against Deltech in the Flaminia Litigation or any related proceeding, after payment by Deltech Insurer of the remaining policy limits under the Deltech Policies and after payment by Deltech US of the sum of $12 million." Phase 2 Exhibit PX 432 at Section IV(A). Per Section IV(B), Stolt's duty to indemnify Deltech is limited to '$201 million, plus the amount of the Deltech Contribution Amount specified in Section II.B.[$25 million], less the payments made by Stolt's Insurers under the Cargo Claims Settlement Agreement, less the cost of Stolt's defense in the Flaminia litigation." Phase 2 Exhibit 432 at Section IV(B). Further, Stolt and Deltech both agreed "that it will not settle or offer to settle any claim or admit any liability with respect to any claim in the Flaminia Litigation without the prior written consent of the other, which consent will not be unreasonably withheld. Stolt and Deltech each agree to promptly send to the other, and consult with, if requested, all settlement demands or offers received by them in the Flaminia Litigation."

No judgment has yet entered in this matter against Stolt or Deltech, so there is no present obligation for either party to pay any damages. Stolt's "projected payment of some $150 million towards the principal sums awarded in the U.K. Arbitration" would not resolve any of Conti's or MSC's claims against Stolt and Deltech. Deltech stands ready and willing to pay $13 million—$1 million in remaining insurance money, plus another $12 million—as part of any reasonable settlement which would release Deltech of the claims against it or to resolve any judgment entered against it. To that end, Deltech does not object to mediation.

                                              Respectfully submitted,

                                              MONTGOMERY MCCRACKEN
                                              WALKER & RHOADS, LLP

                                              /s/ Timothy Semenoro

                                              Eugene J. O'Connor
                                              Timothy Semenoro

CC by ECF to all counsel of record